IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FOUNDRY NETWORKS, INC., | ) | |
|    a Delaware Corporation, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| v. | ) | C.A. No. 06-470-SLR |
| | ) | |
| ALCATEL USA RESOURCES, INC. | ) | |
|    a Delaware Corporation, | ) | |
| ALCATEL INTERNETWORKING, INC. | ) | |
|    a California Corporation | ) | |
| COMPAGNIE FINANCIÈRE ALCATEL | ) | |
|    a French Corporation, and | ) | |
| ALCATEL S.A., | ) | |
|    a French Corporation, | ) | |
| | ) | |
|       Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION OF DEFENDANTS
ALCATEL AND COMPAGNIE FINANCIÈRE ALCATEL**

OF COUNSEL
Robert W. Kantner
Mary L. Scott
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6500

G. Irvin Terrell
Rufus W. Oliver III
Scott Partridge
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
(713) 229-1234

Dated: October 11, 2006

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

ATTORNEYS FOR DEFENDANTS ALCATEL
AND COMPAGNIE FINANCIÈRE ALCATEL

065537.1001

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   NATURE AND STAGE OF THE PROCEEDING........................................... 2

III.  STATEMENT OF FACTS ............................................................................. 2

    A.   Foundry's Jurisdictional Allegations. .......................................... 2

    B.   Alcatel (France)'s Lack of Contacts with Delaware and the United
          States. ........................................................................................ 3

    C.   CFA's Lack of Contacts with Delaware and the United States. ................. 5

    D.   The Operations of Alcatel Resources and AII. .......................................... 6

IV.   ARGUMENT ................................................................................................ 7

    A.   Federal Circuit law applies to the determination of personal
          jurisdiction in this case, because Foundry's antitrust action
          depends on substantial questions of federal patent law. ............................ 7

    B.   Foundry has the burden of proving that this court has personal
          jurisdiction over Alcatel (France) and CFA............................................. 10

    C.   Alcatel (France) and CFA are not subject to personal jurisdiction
          under Section 12 of the Clayton Act. ....................................................... 11

          1.   To establish personal jurisdiction under Section 12 of the
              Clayton Act, Foundry must show that Alcatel (France) and
              CFA are inhabitants of, may be found in, or transact
              business in Delaware................................................................. 11

          2.   Foundry cannot show that Alcatel (France) or CFA are
              inhabitants of, may be found in or transact business in
              Delaware. ................................................................................. 17

          3.   Foundry also cannot satisfy the service of process provision
              of Section 12 of the Clayton Act because Alcatel (France)
              and CFA do not have sufficient contacts with the United
              States. ...................................................................................... 18

              a)   Foundry cannot show that Alcatel (France) or CFA
                  have sufficient contacts to subject them to specific
                  jurisdiction. ................................................................ 19

b)      Foundry cannot show that Alcatel (France) and CFA have the necessary "continuous and systematic" contacts for general jurisdiction. ....................21

D.      Foundry cannot establish personal jurisdiction under the Delaware long-arm statute. ...................................................................... 23

1.      Foundry cannot satisfy any of the requirements of the Delaware long-arm statute. ........................................................... 24

a)      Alcatel (France) and CFA do not have contacts with Delaware sufficient to establish specific jurisdiction under Delaware's long-arm statute. ................................. 25

b)      Alcatel (France) and CFA do not have contacts with Delaware sufficient to establish jurisdiction under the general jurisdiction clause of the Delaware long-arm statute. ........................................................................26

2.      Foundry cannot establish personal jurisdiction over Alcatel (France) or CFA on an agency or other vicarious theory. ............ 27

E.      Exercising jurisdiction over Alcatel (France) and CFA would offend traditional notions of fair play and substantial justice................... 29

V.      CONCLUSION................................................................................................ 31

DB02:5555363.1

065537.1001

# TABLE OF AUTHORITIES

## CASES

Page

*Aro Mfg. Co., v. Auto. Body Research Corp.,*
    352 F.2d 400 (1st Cir. 1965),
    *cert. denied*, 383 U.S. 947, 865 S. Ct. 1203 (1966)................................................17

*Asahi Metal Indus. Co., Ltd. v. Superior Court*,
    480 U.S. 102, 107 S. Ct. 1026 (1987)..............................................................29, 30

*BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.,*
    229 F.3d 254 (3d Cir. 2000)............................................................................19, 29

*Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"*
    283 F.3d 208 (4th Cir. 2002),
    *cert. denied*, 537 U.S. 822, 123 S. Ct. 102 (2002)................................................22

*Bearry v. Beech Aircraft Corp.,*
    818 F.2d 370 (5th Cir. 1987) ...............................................................................22

*Bellaire Gen. Hosp. v. Blue Cross Blue Shield*,
    97 F.3d 822 (5th Cir. 1996 ) ................................................................................13

*Burger King Corp. v. Rudzewicz*,
    471  U.S. 462, 105 S. Ct. 2174 (1985)...............................................................22, 29

*C.R. Bard Inc. v. Guidant Corp.,*
    997 F. Supp. 556 (D. Del. 1998)...........................................................................28

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800, 108 S. Ct. 2166 (1988)..................................................................7, 9

*Chrysler Corp. v. General Motors Corp.,*
    589 F. Supp. 1182 (D.D.C. 1984)........................................................................17

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.,*
    948 F. Supp. 338 (D. Del. 1996)..........................................................................25

*Conwed Corp. v. Nortene, S.A.,*
    404 F. Supp. 497 (D. Minn. 1975).......................................................................21

*Cumberland Truck Equip. Co. v. Detroit Diesel Corp.,*
    401 F. Supp. 2d 415 (E.D. Pa. 2005) ...................................................................16

065537.1001

*Dalton v. R&W Marine, Inc.*,
    897 F.2d 1359 (5th Cir. 1990) ............................................................21

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005)....................................................11, 14, 23

*Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*,
    89 F.3d 519 (8th Cir. 1996) ............................................................20

*Eastman Kodak Co. of New York v. Southern Photo Materials Co.*,
    273 U.S. 359, 47 S. Ct. 400 (1927).....................................................13

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*,
    907 F.2d 911 (9th Cir. 1990) ............................................................20

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000)....................................................11, 15

*Go-Video, Inc. v. Akai Elec. Co.*,
    885 F.2d 1406 (9th Cir. 1989) ............................................11, 12, 14, 15

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*,
    149 F.3d 1382 (Fed. Cir. 1998)........................................................24

*Hale Propeller, L.L.C. v. Ryan Marine Products, Ltd*,
    98 F. Supp. 2d 260 (D. Conn. 2000)....................................................10

*Hart Holding Co., Inc. v. Drexel Burnham Lambert, Inc.*,
    1992 WL 127567 (Del. Ch. May 18, 1992)..........................................27

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408, 104 S. Ct. 1868 (1984)............................................19, 21

*Hildebrand v. Steck Mfg. Co.*,
    279 F.3d 1351 (Fed. Cir. 2002)........................................................10

*Hynson v. Carmon Lincoln Mercury*,
    2006 WL 2065148 (Del. Com. Pl. July 26, 2006)..................................27

*ICT Pharm., Inc. v. Boehringer Ingelheim Pharm., Inc.*,
    147 F. Supp. 2d 268 (D. Del. 2001)....................................................10

*In re Auto. Refinishing Paint Antitrust*,
    358 F.3d 288 (3d Cir. 2004)............................................11, 12, 15, 16

iv

*In re Indep. Serv. Orgs. Antitrust Litig. ("In re ISO"),*
    203 F.3d 1322 (Fed. Cir. 2000)...................................................................9

*Intel Corp. v. Silicon Storage Tech., Inc.,*
    20 F. Supp. 2d 690 (D. Del. 1998)............................................................27

*International Shoe Co. v. Washington,*
    326 U.S. 310, 66 S. Ct. 154 (1945)......................................................18, 29

*Mgmt. Insights, Inc. v. CIC Enters., Inc.,*
    194 F. Supp. 2d 520 (N.D. Tex. 2001) ...........................................14, 15, 18

*Monsanto v. Syngenta Seeds, Inc.,*
    __ F. Supp. 2d __,
    2006 WL 2246894 (D. Del. Aug. 4, 2006) ..............................10, 23, 24, 26, 29, 30

*Morse v. Republican Party,*
    517 U.S. 186, 116 S. Ct. 1186 (1996)......................................................12

*Nobelpharma AB v. Implant Innovations, Inc.,*
    141 F.3d 1059 (Fed. Cir. 1998)...............................................................10

*Pratt v. Paris GasLight & Coke Co.,*
    168 U.S. 255, 18 S. Ct. 62 (1897)..............................................................7

*Reach & Assocs., P.C. v. Dencer,*
    269 F. Supp. 2d 497 (D. Del. 2003).................................................25, 26, 27

*Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods., Inc.,*
    1991 WL 129174 (D. Del. July 10, 1991) ................................................26

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998)..................................................18, 19, 20, 25, 26

*Silent Drive, Inc. v. Strong Indus., Inc.,*
    326 F.3d 1194 (Fed. Cir. 2003)..........................................................10, 19

*Telcordia Tech., Inc. v. Alcatel S.A.,*
    2005 WL 1268061 (D. Del. May 27, 2005).....................3, 10, 19, 20, 22, 28, 29

*United States v. Nat'l City Lines,*
    334 U.S. 573, 68 S. Ct. 1169 (1946)......................................................13, 14

*United States v. Scophony Corp. of America,*
    333 U.S. 795, 68 S. Ct. 855 (1948)........................................................17, 18

*Wadsworth v. Johnson,*
     235 F.3d 959 (5th Cir. 2000) ................................................................................15

## STATUTES

10 *Del. C.* § 3104(c) (2006) .......................................................................................24, 26

Clayton Act, 15 U.S.C. § 22 (2000)...................................11, 12, 13, 14, 15, 16, 17, 18, 23

28 U.S.C.A. § 1295(a)(1) (West 2006).........................................................................7, 10

28 U.S.C.A. § 1338  (West 2006).................................................................................7, 10

28 U.S.C.A. § 1391 (West 2006).............................................................12, 14, 15, 16, 23

Fed. R. Civ. P. 4(k)(2)..................................................................................................22

## MISCELLANEOUS

*Webster's Third New International Dictionary  (Unabridged)* 2283 (1986)....................12

DB02:5555363.1                                                                                   065537.1001

## I.    PRELIMINARY STATEMENT

More than a year after Alcatel USA Resources, Inc. ("Alcatel Resources") and Alcatel Internetworking, Inc. ("AII") filed a patent infringement case against Foundry Networks, Inc. ("Foundry"), Foundry filed this antitrust case against Alcatel Resources, AII and their indirect parent companies, Alcatel S.A. ("Alcatel (France)")[1] and Compagnie Financière Alcatel ("CFA"). Foundry's antitrust case concerns the same patents that are the subject of the patent case. Foundry alleges that the Defendants – operating as a "single entity" under the control of Alcatel (France) or CFA – monopolized or attempted to monopolize "the technology market for user authentication for port-based network access to LANs" by failing to disclose the '830 and '090 patent applications and patents to the members of a standard-setting working group of the Institute of Electrical and Electronics Engineers, Inc. (the "IEEE"), by failing to license those patents to Foundry on reasonable terms and by suing Foundry for infringement of the patents.

Alcatel (France) and CFA are holding companies organized under the laws of France. They do not manufacture or sell products anywhere in the world. They are not registered to do business in Delaware or elsewhere in the United States. They are not "present" in Delaware or the United States for jurisdictional purposes. Although Foundry has defined and refers to all the Defendants collectively as "Alcatel", the Defendants are separate entities that observe corporate formalities. Each of the Defendants maintains its own books and records and neither Alcatel nor CFA direct the day-to-day activities of Alcatel Resources or AII.

---

[1] Alcatel's correct name is "Alcatel", but it is sometimes referred to by others as "Alcatel S.A." To avoid confusion with the other Defendants, Alcatel will be referred to as "Alcatel (France)."

065537.1001

There is no basis for subjecting Alcatel (France) and CFA to the Court's jurisdiction. They should be dismissed from this action for lack of personal jurisdiction.

## II.   NATURE AND STAGE OF THE PROCEEDING

Foundry filed its original Complaint (D.I. 1) on August 1, 2006 and its Amended Complaint (D.I. 20) on August 18, 2006. None of the Defendants has answered. The Parties stipulated that Defendants would have until October 11, 2006 to answer or otherwise respond to the Amended Complaint.

Alcatel Resources and AII, which do not contest personal jurisdiction, have jointly filed a motion to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim. Subject to their motion to dismiss under Rule 12(b)(2) and in the event their motion is denied, Alcatel (France) and CFA join in the Rule 12(b)(6) motion.

## III.   STATEMENT OF FACTS

### A.   FOUNDRY'S JURISDICTIONAL ALLEGATIONS.

Under applicable law, a plaintiff must allege facts with reasonable particularity to establish personal jurisdiction. The sum total of Foundry's allegations regarding Alcatel (France) and CFA in the Amended Complaint, however, are as follows:

> 7.      Defendant Alcatel Paris [CFA] is a French corporation with its principal place of business at 54, rue La Boetie, 75008, Paris, France. Upon information and belief, Alcatel Paris is the ultimate parent entity of Alcatel USA Resources and Alcatel Internetworking. Alcatel Paris does business in the United States.

> 8.      Defendant Alcatel S.A. is a French Corporation with its principal place of business at 54, rue La Boetie, 75008, Paris, France. It is affiliated with Alcatel Paris, Alcatel USA Resources, and Alcatel Internetworking. Alcatel S.A. does business in the United States.

> 9.      Upon information and belief, Alcatel USA Resources, Alcatel Internetworking, Alcatel Paris and

065537.1001

> Alcatel S.A. have functioned as a single entity under the control of Alcatel Paris and/or Alcatel S.A. (collectively "Alcatel France") with respect to the conduct alleged in this Complaint.  For that reason all the Alcatel entities are collectively referred to in this Complaint as 'Alcatel.'

(D.I. 20, Amended Complaint, ¶¶ 7-9).

Foundry's conclusory allegations are woefully inadequate to justify this Court's assertion of personal jurisdiction over either Alcatel (France) or CFA.  In *Telcordia Technologies v. Alcatel*, 2005 WL 1268061 (D. Del. May 27, 2005), Judge Sleet granted Alcatel (France)'s motion to dismiss a patent case in which the plaintiff alleged that Alcatel (France) was subject to this Court's jurisdiction because Alcatel (France) and Alcatel USA, Inc. ("Alcatel"), the direct parent of Alcatel Resources and AII, were "closely knit together, effectively operating as one."  Moreover, Judge Sleet ruled that given such a conclusory allegation, it would be inappropriate for the court to allow the plaintiff to conduct a "fishing expedition" in discovery in order to construct a basis for personal jurisdiction.  Judge Sleet's admonition that a plaintiff may not rely on "bare allegations" to justify the assertion of personal jurisdiction or to conduct a fishing expedition to construct a basis for personal jurisdiction is a generally-accepted legal principle and supports the immediate dismissal of Foundry's claims against Alcatel (France) and CFA.

**B.    ALCATEL (FRANCE)'S LACK OF CONTACTS WITH DELAWARE AND THE UNITED STATES.**

Alcatel (France) is a société anonyme organized under the laws of France, with its principal place of business in Paris, France. (Declaration of Philippe Boivin ¶ 3,

Appendix, Tab 1) ("Boivin Decl.").[2]  A société anonyme is a joint stock company which has its capital divided into shares.  (*Id*.).

Alcatel (France) is a holding company, which owns stock and other ownership interests in various subsidiaries throughout the world, either directly or indirectly. (Boivin Decl. at ¶ 4).  Alcatel (France) is the ultimate parent company of all Alcatel companies.  Alcatel (France) does not manufacture, sell, advertise, or trade goods or import goods into the United States.  (*Id*. at ¶¶ 8-10).  Although securities of Alcatel (France) are listed on the New York Stock Exchange as American Depository Receipts ("ADRs"), Alcatel (France) does not maintain any offices or other facilities in the United States and is not registered to do business anywhere in the United States. (*Id*. at ¶¶ 7, 11-12).  Alcatel (France) has never paid taxes in the United States, and it has never had a mailing address or telephone listing in the United States.  (*Id*. at ¶¶ 19-20).  Alcatel (France) does not own any property in the United States other than legal interests in U.S. patents.  (*Id*. at ¶ 18).

On May 10, 2005, several Alcatel entities, including Alcatel (France), Alcatel Canada, Inc., Alcatel N.V., Alcatel Sel Aktiengesellschaft, and AII assigned their legal interests in a total of nine patents to Alcatel Resources.  (Boivin Decl. at ¶ 26).  Two of those patents – the '830 and '090 patents – are express subjects of Foundry's antitrust claims and were assigned to Alcatel Resources by Alcatel (France) and AII.[3]  Alcatel (France) and the other assignors assigned the patents to Alcatel Resources to streamline

---

[2] The Boivin Declaration and other factual material supporting this motion are attached for ease of reference.

[3] Both Alcatel (France) and AII had legal interests in the '830 patent.

the patent case by having all of the patents to be asserted against Foundry owned by one entity. None of the assignments were signed in Delaware. (*Id.* at ¶¶ 28-29).

## C.   CFA'S LACK OF CONTACTS WITH DELAWARE AND THE UNITED STATES.

CFA is a société par actions simplifiée organized under the laws of France, with its principal place of business in Paris, France. (Boivin Decl. at ¶ 31). A société par actions simplifiée is a simplified stock company with limited liability. (*Id.*).

CFA is a wholly-owned subsidiary of Alcatel (France). CFA is a holding company, which holds direct and indirect ownership interests in various subsidiaries throughout the world. (Boivin Decl. at ¶ 32). CFA does not manufacture, sell, advertise, or trade goods or import goods into the United States. (*Id.* at ¶¶ 33-35). CFA does not maintain any offices or other facilities in the United States and is not registered to do business anywhere in the United States. (*Id.* at ¶¶ 37-38). CFA has never paid taxes and it has never had a mailing address or telephone listing in the United States. (*Id.* at ¶¶ 44-45).

Prior to the filing of the patent infringement case against Foundry, AII and the other original owners of the patents attempted to negotiate a settlement with Foundry. David Hawkes, an employee of CFA who specializes in intellectual property licensing, participated in those settlement negotiations. (Declaration of Eric Lucas ¶ 3, Appendix, Tab 2). As set forth below, a foreign defendant's participation in settlement negotiations is not considered a personal jurisdiction contact.

### D.   THE OPERATIONS OF ALCATEL RESOURCES AND AII.

As stated above, Alcatel (France) owns CFA. CFA, in turn, owns Alcatel USA.[4] Alcatel USA owns Alcatel Resources and AII. (Boivin Decl. ¶¶ 5-6).

Alcatel (France) and CFA do not direct the day-to-day activities of Alcatel Resources or AII. Daily decisions and operations are handled at the local level by the officers and managers of Alcatel Resources and AII. (Declaration of Richard P. Campbell ¶ 7, Appendix, Tab 3) ("Campbell Decl."). None of the officers and directors of Alcatel (France) are officers or directors of Alcatel Resources or AII. (Boivin Decl. ¶ 23). CFA has only one officer, a President, and no directors. CFA's President is not an officer or director of Alcatel (France), Alcatel Resources, or AII. (Boivin Decl. ¶ 32). None of the officers or directors of Alcatel Resources or AII is also an officer or director of Alcatel (France) or CFA. (Boivin Decl. ¶¶ 24, 32).

Alcatel Resources and AII finance their business from their own operations (Campbell Decl. ¶ 5). To the extent external financing is needed, Alcatel Resources and AII obtain it from Alcatel USA Sourcing, LP, which is an indirect subsidiary of Alcatel USA. (*Id.*).

Alcatel (France), CFA, Alcatel Resources, and AII maintain their own corporate and financial records. Although for certain reporting purposes the financial results of Alcatel Resources, AII, and Alcatel USA, Inc. are consolidated with CFA's and Alcatel (France)'s financial results, each entity maintains its own separate financial records. Alcatel (France), CFA, Alcatel Resources and AII each files its own tax return. (Boivin Decl. ¶¶ 21, 46); (Campbell Decl. ¶ 3).

---

[4]   Two other Alcatel companies, Alcatel Participations and Alcatel Canada, Inc., own Alcatel USA.

## IV.    ARGUMENT

### A.    FEDERAL CIRCUIT LAW APPLIES TO THE DETERMINATION OF PERSONAL JURISDICTION IN THIS CASE, BECAUSE FOUNDRY'S ANTITRUST ACTION DEPENDS ON SUBSTANTIAL QUESTIONS OF FEDERAL PATENT LAW.

Pursuant to 28 U.S.C. § 1295(a)(1), the Court of Appeals for the Federal Circuit has exclusive jurisdiction of an appeal from a final decision of a district court of the United States if the jurisdiction of the district court was based, in whole or in part, on Section 1338 of Title 28. 28 U.S.C.A. § 1295(a)(1) (West 2006). Section 1338(a), in turn, provides that district courts "shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ." 28 U.S.C.A. § 1338(a) (West 2006).

In interpreting Section 1338's precursor, the Supreme Court of the United States "held long ago that in order to demonstrate that a case is one 'arising under' federal patent law 'the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 807-08, 108 S. Ct. 2166, 2173 (1988) (quoting *Pratt v. Paris GasLight & Coke Co.*, 168 U.S. 255, 259, 18 S. Ct. 62, 64 (1897). In *Christianson*, the Supreme Court added that whether a claim arises under patent law must be determined from the plaintiff's statement of its own claim. *Christianson*, 486 U.S. at 809, 108 S. Ct. at 2174. Finally, the Supreme Court stated that the success of the plaintiff's (antitrust) claim must be dependent upon the resolution of a patent law question. *Christianson*, 486 U.S. at 810, 108 S. Ct. at 2174-75.

As stated in Foundry's Amended Complaint, (D.I. 20), Foundry's antitrust claim focuses directly on Alcatel's alleged enforcement of its patents, on the proper

construction of those patents, and on Alcatel's alleged efforts to magnify the economic

power conferred by those patents.    Foundry alleges:

- On March 15, 2000, while the 802.1 Working Group of the IEEE was deliberating [on an industry-wide standard for an authentication protocol for port-based network access to LANs], Alcatel filed an application for what later became the '830 patent. (Paragraph 21).

- Alcatel now claims that the '830 patent application and subsequently issued '830 patent have a scope that would render them essential to practicing the 802.1X standard . . . . (Paragraph 21).

- At its July 10-14, 2000 meeting, the 802.1X Working Group formally adopted a patent policy [requiring a participant] to disclose patents and patent applications that the participant believes covers technology described in [a proposed or approved] 802.1 standard . . . . (Paragraph 23).

- Alcatel did not disclose its '830 patent application to the working Group . . . or provide the assurance letter required under Clause 6 of the IEEE Bylaws. (Paragraph 24).

- One week after the 802.1 Working Group had adopted the 802.1X standard, Alcatel secretly filed [the '090 patent application], . . . [which] was a continuation of the '830 patent application . . . . (Paragraph 28)

- [T]he '090 patent application was designed prior to the IEEE's adoption of the 802.1X standard and prosecuted by Alcatel with the specific intent of subsequently filing patent infringement cases against users of the 802.1X standard and holding them up. (Paragraph 28)

- If the IEEE had been aware of Alcatel's ['830 and '090] patent applications and of Alcatel's contention that the resulting patents had a scope that rendered them essential to user-authentication technology that conforms to the 802.1X standard, the IEEE would not have been able to include Alcatel technology in the 802.1X standard unless Alcatel had first provided reasonable and non-discriminatory . . . assurances and an opportunity for licensing negotiations . . . . (Paragraph 31).

- After the IEEE issued the 802.1X standard and after that standard began to emerge as the industry standard, Foundry made sunk-cost investments to implement the standard in its products. (Paragraph 36).

- In April 2002, Alcatel . . . [finally] disclosed . . . the '830 patent [to Foundry, asserted that] Foundry's practice of the 802.1X standard

8

infringed its patent . . . [and refused to] license to Foundry on reasonable terms. (Paragraph 38).

- Foundry responded to Alcatel's threat of patent infringement by informing Alcatel that . . . [Alcatel's failure to disclose the '830 patent application and patent to the IEEE meant that] Alcatel could not enforce the patent against [Foundry] . . . . (Paragraph 39).

- [T]he IEEE adopted a revised standard known as 802.1X REV. Alcatel knew that the IEEE was considering the revised standard and . . . that [Alcatel] would subsequently claim that . . . user-authentication technology that conform[ed] to the 802.1XREV standard [would] infringe the '090 patent that resulted from the '090 patent application[, but] . . . did not disclose the '090 patent application to the IEEE nor provide the assurances required by the IEEE Bylaws . . . . (Paragraph 43).

- As construed by Alcatel, the '090 patent is essential to practicing the 802.1X REV standard as well as the original 802.1X standard with regard to user-authentication. (Paragraph 44).

- Alcatel USA Resources . . . [contends in the patent case against Foundry] that [the] '830 and '090 patents are essential to practicing the 802.1X standards. (Paragraph 45).

(D.I. 20, Amended Complaint).

From the foregoing, it is clear that this case "necessarily depends on resolution of substantial question[s] of federal patent law," *Christianson,* 486 U.S. at 808-09, 108 S. Ct. 2174, for at least two reasons. First, Foundry's Amended Complaint requires that this Court construe the '830 and '090 patents and determine whether those patents are "essential" to compliance with the IEEE standards as Foundry alleges in paragraph 44. Second, in order for Foundry's antitrust claim to succeed, Foundry must establish that Alcatel has lost the protection normally afforded a patent holder in the exercise of the right to exclude that is conferred by the patent. *In re Indep. Serv. Orgs. Antitrust Litig.* *("In re ISO"),* 203 F.3d 1322, 1325 (Fed. Cir. 2000). "Whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws

9

is to be decided as a question of Federal Circuit law." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998).

Thus, Foundry's case does "arise under federal patent law" within the meaning of Section 1338 of Title 28. Therefore, pursuant to Section 1295(a)(1) of Title 28, the Federal Circuit will have exclusive jurisdiction of an appeal from this Court's final judgment in this case and this Court must evaluate Alcatel (France)'s and CFA's objections to personal jurisdiction based on Federal Circuit law. *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). (The Federal Circuit applies Federal Circuit law to questions of personal jurisdiction.)

**B.    FOUNDRY HAS THE BURDEN OF PROVING THAT THIS COURT HAS PERSONAL JURISDICTION OVER ALCATEL (FRANCE) AND CFA.**

When personal jurisdiction has been challenged, the plaintiff bears the burden of alleging and proving sufficient facts to make a case for jurisdiction. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). The Federal Circuit relies on the "relevant state'[s] law governing the quantum of evidence required to prove personal jurisdiction." *Hale Propeller, L.L.C. v. Ryan Marine Products, Ltd*, 98 F. Supp. 2d 260, 262 (D. Conn. 2000). Under Delaware law, Foundry must establish with "reasonable particularity" that Alcatel (France) and CFA have sufficient minimum contacts with the forum to permit the exercise of jurisdiction. *Monsanto v. Syngenta Seeds, Inc.*, __ F. Supp. 2d __, 2006 WL 2246894, *5 (D. Del. Aug. 4, 2006); *Telcordia Tech., Inc. v. Alcatel S.A.*, 2005 WL 1268061, *2 (D. Del. May 27, 2005); *ICT Pharm., Inc. v. Boehringer Ingelheim Pharm., Inc.*, 147 F. Supp. 2d 268, 271 (D. Del. 2001). Foundry has not done that; indeed, other than its conclusory allegation that the Defendants operate as a single entity under the control of Alcatel (France) or CFA, Foundry has not alleged

any facts to support this Court's exercise of personal jurisdiction over Alcatel (France) or

CFA.

> **C.    ALCATEL (FRANCE) AND CFA ARE NOT SUBJECT TO PERSONAL JURISDICTION UNDER SECTION 12 OF THE CLAYTON ACT.**
>
> 1.    To establish personal jurisdiction under Section 12 of the Clayton Act, Foundry must show that Alcatel (France) and CFA are <u>inhabitants of, may be found in, or transact business in Delaware.</u>

Section 12 of the Clayton Act states:

> Any suit, action or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22 (2000).  Clearly, Section 12 has two parts:  the part before the semicolon

addresses venue; and the part after the semicolon provides for worldwide service of

process and, therefore, the exercise of personal jurisdiction "in such cases."

Four Federal Circuit Courts have split evenly over the question whether service of

process is available under Section 12 only in cases satisfying the section's venue

provision.  The District of Columbia Circuit and the Second Circuit have held that

Section 12's service of process provision is available only when the section's venue

provision is satisfied.  *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343,

1351 (D.C. Cir. 2000); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 424-25 (2d

Cir. 2005).  The Ninth Circuit and the Third Circuit, on the other hand, have held that

Section 12's service of process provision is independent of, and therefore does not

require satisfaction of, the section's venue provision.  *Go-Video, Inc. v. Akai Elec. Co.*,

885 F.2d 1406, 1413 (9th Cir. 1989); *In re Auto. Refinishing Paint Antitrust*, 358 F.3d

11

288, 296-297 (3d Cir. 2004).[5]    Under the Ninth and Third Circuits' construction, the general venue statute, Section 1391 of Title 28, can supplant the venue portion of Section 12. *Go-Video*, 885 F.2d at 1413; *Auto. Refinishing*, 358 F.3d at 296-97.

The Federal Circuit has not ruled on the issue whether Section 12's service of process provision is subject to or independent of Section 12's venue provision. Therefore, this Court must decide whether the "subject to" holding of the District of Columbia and Second Circuits or the "independent of" holding of the Ninth and Third Circuits is the correct holding and, therefore, the rule most likely to be adopted by the Federal Circuit.  For the following reasons, the "subject to" holding of the District of Columbia and the Second Circuits is the correct holding.

First, the express language of Section 12 – particularly the phrase "in such cases" in the service of process provision or second part of Section 12 – clearly and unambiguously supports the "subject to" holding of the District of Columbia and Second Circuits.  The phrase "in such cases" plainly refers to those cases that satisfy the provision in the first part of Section 12.  "When words in a statute are not otherwise defined, it is fundamental that they 'will be interpreted as taking their ordinary, contemporary, common meaning.'"  *Morse v. Republican Party*, 517 U.S. 186, 254, 116 S. Ct. 1186, 1222-23 (1996) (citation omitted).  As the Second Circuit pointed out in *Daniel*, the "common meaning of the word 'such' is 'having a quality already or just specified'; 'of this or that character, quality, or extent: of the sort or degree previously indicated or implied'; or 'previously characterized or described: aforementioned.'" *Daniel*, 428 F.3d at 424 (*citing Webster's Third New International Dictionary*

---

[5] In *Automobile Refinishing*, the Third Circuit basically reviewed and adopted the Ninth Circuit's reasoning in *Go-Video*.

12

*(Unabridged)* 2283 (1986). Therefore, the phrase "in such cases" in the second part of Section 12 refers back to the suits, actions and proceedings described in the first part of Section 12. As the Second Circuit pointed out in *Daniel*, this construction of Section 12 is supported by the Supreme Court's discussion of a previous version of the section:

> [A]s applied to suits against corporations for injuries sustained by violations of the Anti-Trust Act, [Section 12's] necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business'—although neither residing nor 'found' therein—*in which case the process may be issued to and served* in a district in which the corporation either resides or is 'found.'

*Eastman Kodak Co. of New York v. Southern Photo Materials Co.*, 273 U.S. 359, 372-373, 47 S. Ct. 400, 403 (1927) (emphasis added).

A second reason why the "subject to" construction of the second part of Section 12 is correct is that while it is not necessary to consider legislative history unless a statute is ambiguous, the available legislative history of Section 12 supports the "subject to" construction.[6] As the Supreme Court has noted, while Congress intended the Clayton Act "to provide broader and more effective relief, both substantively and procedurally, for persons injured by violations of its antitrust policy," it was, quite careful about expanding venue, rejecting several broader proposals than this one enacted in Section 12. *United States v. Nat'l City Lines*, 334 U.S. 573, 581, 68 S. Ct. 1169, 1174 (1946). The available

---

[6] Another reason why the "subject to" construction is necessary is because requiring satisfaction of the Section 12 venue provision is the only thing that arguably makes the nationwide service of process provision consistent with due process. *See Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 826 (5th Cir. 1996 )("We fail to apprehend how personal jurisdiction can be separated from due process by Congressional enactment of nationwide service of process provisions.").

13

legislative history supports Congress' intent to "fix[ ] the limits within which [the parties] could claim advantage in venue and beyond which neither could seek it." *Nat'l City Lines*, 334 U.S. at 588, 68 S. Ct. at 1177. Prior to the addition of the service of process clause, one member of the House voiced concern that service might not be possible in some of the places where the expanded antitrust venue could obtain. Another representative stated that service of process could be dealt with later, if necessary, in "subsequent legislation." *Go-Video, Inc.,* 885 F.2d at 1410. It was the Senate that added the service of process provision and it added that provision to Section 12. *Id.* Indeed, the Senate added the service of process provision to the very sentence that contained the venue provision. In *Go-Video*, the Ninth Circuit characterized this as "happenstance" or "convenience." *Id.* The better view of this legislative history is that expressed by the Second Circuit in *Daniel*, namely that the available legislative history does not support "now divorcing Section 12's venue and process provisions with an expanded general venue statute enacted decades later, [28 U.S.C. § 1391], an application that could not have been in the minds of any of the enacting legislators." *Daniel*, 428 F.3d at 425.

In addition to the foregoing affirmative reasons to adopt the "subject to" construction of the second part of Section 12, there are other reasons why the "independent of" construction initially adopted by the Ninth Circuit and later adopted by the Third Circuit is wrong.

First, the "independent of" construction of the service of process provision of Section 12 renders the venue provision of Section 12 superfluous and unnecessary to the section as a whole. *See Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 531 (N.D. Tex. 2001) ("Indeed, it seems quite unreasonable to presume that Congress

would intentionally craft a two-pronged provision with a superfluous first clause, ostensibly to link the two provisions with the 'in such cases' language, but nonetheless fail to indicate clearly anywhere that it intended the first clause to be disposable."). It is a elementary rule of statutory construction that courts must read one part of a statute in such a way that does not render another part superfluous. *Wadsworth v. Johnson*, 235 F.3d 959, 963 (5th Cir. 2000).

Second, the practical result from the "independent of" construction of the service of process provision of Section 12 makes no sense when applied in the context of other general venue provisions. As the District Court pointed out in *Management Insights,* if the "independent of" construction of Section 12 adopted in *Go-Video* and *Automotive Refinishing* is applied to Section 1391(c), another general venue statute that provides that defendant corporations reside for purposes of venue in any judicial district in which the defendant is subject to personal jurisdiction at the time the action commenced, the inquiry into venue and jurisdiction under the antitrust national contacts test becomes "circular and monolithic." *Mgmt. Insights,* 194 F. Supp. 2d at 532; 28 U.S.C.A. § 1391 (West 2006). The venue inquiry collapses into the personal jurisdiction inquiry and under the national contacts test a domestic corporation defendant could be sued in any judicial district in the United States without regard to whether the defendant had any contact whatsoever with that judicial district. *Id.* (describing situation in which a Texas plaintiff could hale an Alaska corporate defendant into a Texas court even though the defendant had no dealings at all in Texas).

Finally, in *Automotive Refinishing*, the Third Circuit posited that the D.C. Circuit's conclusions in *GTE New Media Services* derived from the fact that the case

involved a domestic corporation rather than a foreign corporation. *Auto. Refinishing*, 358 F.3d at 296-97. Relying on the domestic corporation versus alien corporation distinction noted by the Third Circuit and the aberrant result identified by the District Court in *Management Insights* when the Third Circuit rule is applied to Section 1391(c), the District Court for the Eastern District of Pennsylvania has now held that in cases involving domestic corporations, the venue provisions of Section 12 must be satisfied before a plaintiff is entitled to rely on the national contacts analysis provided under the service of process provision of Section 12. *See Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 422-24 (E.D. Pa. 2005). Because the underlying premise of the Third Circuit's holding that Section 1391(d) can supplant the venue provision in Section 12 relied on the interpretation of "in such cases," there now exists the untenable situation – at least for certain districts in the Third Circuit – where the same words in the same statutory provision have two different meanings, the application of which depends entirely on where the defendant in the action is located.[7] The language of Section 12 does not support this approach.

In short, the better-reasoned construction of the phrase "in such cases" in the service of process part of Section 12 of the Clayton Act is that the phrase refers back to,

---

[7] *See Auto. Refinishing*, 358 F.3d at 293 ("The dispute centers on whether the jurisdiction provision operates independently from the venue provision, specifically, whether 'in such cases' in the second clause refers to 'any suit, action, or proceeding under the antitrust laws against a corporation' or only to antitrust actions against corporations brought in a judicial district in which the corporation is either an 'inhabitant,' 'may be found' or 'transacts business.' If the first interpretation is adopted, plaintiffs can rely on 28 U.S.C. § 1391(d) [the Alien Venue Statute] which provides for venue in antitrust actions against foreign corporations 'in any district' and on the second clause of Section 12 for personal jurisdiction over defendants based on a minimum contacts analysis considering their contacts with the United States as a whole. If the second interpretation prevails the service provision is only effective when, pursuant to Section 12's first clause, the action is brought in a district where the defendant resides, is found or transacts business.").

and renders the service of process part of Section 12 subject to, the venue part of Section 12. Therefore, this Court must determine whether Foundry can satisfy the venue provision of Section 12.

<div align="center">

2.    Foundry cannot show that Alcatel (France) or CFA are inhabitants of, may be found in or transact business in Delaware.

</div>

For venue to be proper under Section 12, Foundry must show that Alcatel (France) and CFA (1) are inhabitants of Delaware, (2) may be found in Delaware, or (3) transact business in Delaware. 15 U.S.C. § 22.

A corporation is an "inhabitant" of a district if it is incorporated in the state in which the district is found. *Aro Mfg. Co., v. Auto. Body Research Corp.*, 352 F.2d 400, 404 (1st Cir. 1965), *cert. denied*, 383 U.S. 947, 865 S. Ct. 1203 (1966). Alcatel (France) and CFA are organized under the laws of France. (Boivin Decl. ¶¶ 3, 31). Therefore, they are not inhabitants of this district.

A corporation may be "found" in a judicial district if it has "presence" and "continuous local activities" in the district. *Chrysler Corp. v. General Motors Corp.*, 589 F. Supp. 1182, 1195 (D.D.C. 1984). To show that Alcatel (France) and CFA may be "found" in this district, Foundry must show that Alcatel (France) and CFA carry on their business in Delaware. Foundry cannot make this showing. Alcatel (France) and CFA do not maintain any offices or other facilities in Delaware, and they are not registered to do business in Delaware. (Boivin Decl. ¶¶ 11-12, 36-37). Alcatel (France) and CFA do not manufacture, sell, or advertise goods in Delaware. (*Id.* ¶¶ 8-10, 33-35). Accordingly, neither Alcatel (France) nor CFA can be "found" in Delaware.

The Supreme Court construed the phrase "transacts business," as used in Section 12 of the Clayton Act, to refer to "the practical, everyday business or commercial concept

<div align="center">17</div>

of doing or carrying on business 'of any substantial character.'" *United States v.*
*Scophony Corp. of America*, 333 U.S. 795, 807, 68 S. Ct. 855, 862 (1948). A corporation
is considered to be transacting business when substantial business activities are ongoing
in the district "with continuity of character, regularity, contemporaneous with the service
and not looking toward cessation of business." *Mgmt. Insights,* 194 F. Supp. 2d at 532-
33 (citation omitted). As shown by the Declaration of Philippe Boivin, Alcatel (France)
and CFA do not "transact business" in Delaware within the meaning of that phrase in
Section 12 of the Clayton Act.

Since Foundry cannot show that Alcatel (France) or CFA are subject to the venue
provision of Section 12 of the Clayton Act, Foundry cannot establish personal
jurisdiction over Alcatel (France) or CFA pursuant to that section and the Court should
dismiss Alcatel (France) and CFA.

     3.     Foundry also cannot satisfy the service of process provision of
           Section 12 of the Clayton Act because Alcatel (France) and CFA
           do not have sufficient contacts with the United States.

Even if Foundry could satisfy the venue provision of Section 12 of the Clayton
Act, Foundry cannot establish that this Court has personal jurisdiction over Alcatel
(France) or CFA under Section 12 because Alcatel (France) and CFA do not have
sufficient contacts with the United States such that this Court's assertion of personal
jurisdiction over Alcatel (France) and CFA would comport with the Due Process Clause
of the 5th Amendment. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d
1355, 1358, n.* (Fed. Cir. 1998). The jurisdictional analysis under the 5th Amendment is
guided by the due process limitations developed by the United States Supreme Court in
*International Shoe v. Washington* and its progeny. *Id.*

The Federal Circuit uses three factors to determine whether personal jurisdiction can be asserted consistent with due process: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair'." *Silent Drive*, 326 F.3d at 1201-02. The first two factors relate to the minimum contacts analysis and the third factor relates to the requirement that the exercise of jurisdiction be fair and reasonable. *Id.* at 1202.

A plaintiff may satisfy the "minimum contacts" requirement either by showing that the Court has specific jurisdiction over the defendants or by showing that the Court has general jurisdiction over the defendants. *See Red Wing*, 148 F.3d at 1358.

<div style="margin-left:2em">

a)    Foundry cannot show that Alcatel (France) or CFA have sufficient contacts to subject them to specific jurisdiction.

</div>

Specific jurisdiction over a nonresident defendant is proper only when the defendant's contacts with the forum arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 1872 (1984); *Silent Drive*, 326 F.3d at 1203; *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000). Even assuming that Foundry's sole jurisdictional allegation against Alcatel (France) and CFA, namely that these Defendants "do business in the United States" (D.I. 20, Amended Complaint ¶¶ 7-8) is true, it would not be sufficient to establish specific jurisdiction. To establish specific jurisdiction, Foundry must show that its cause of action arises from purposeful acts in the United States by Alcatel (France) and CFA. When assessing whether a defendant has purposely invoked the benefits and protections of a forum, courts must examine the character of the activity in the forum and whether there is a substantial

connection between the plaintiff's claim and that activity. *Telcordia Tech., Inc. v. Alcatel S.A.*, 2005 WL 1268061, *5 (D. Del. May 27, 2005). Alleging that Alcatel (France) and AII "do business in the United States" does not establish a substantial connection to Foundry's claim.

As stated above, Alcatel (France) and CFA are holding companies; they do not design, manufacture or sell any products. In particular, Alcatel (France) and CFA do not design, manufacture or sell any products or provide any services in the United States. Therefore, Foundry cannot show that Alcatel (France) or CFA "do business in the United States" or have purposely invoked the benefits and protections of the law of the United States.

Moreover, Foundry cannot show that there is a substantial connection between any activities of Alcatel (France) or CFA in the United States and Foundry's claims in this case. The unsuccessful settlement discussions between Alcatel entities owning the patents-in-suit and Foundry, in which David Hawkes, an employee of CFA participated, are irrelevant to the jurisdictional analysis because they were settlement discussions. The Federal Circuit and other American courts have consistently disregarded "unsuccessful settlement discussions as 'contacts' for jurisdictional purposes.'" *Red Wing Shoe,* 148 F.3d at 1361 (analogizing three cease and desist and patent licensing letters to settlement offers and concluding they do not justify personal jurisdiction in part because of the public policy favoring settlements); *see also, Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 524-25 (8th Cir. 1996) (settlement negotiations not typically recognized as "contacts" for jurisdictional purposes); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) ("Significant

20

consideration of post-accident investigation and settlement contacts would deter good faith attempts by insurers to settle."); *Conwed Corp. v. Nortene, S.A.*, 404 F. Supp. 497, 504 (D. Minn. 1975) (settlement meeting over patent infringement claims did not constitute transaction of business for Minnesota long-arm statute because of public policy favoring settlement and the "courts' traditional aversion to 'jurisdictional traps.'").

When the settlement talks failed, Alcatel, along with four of its subsidiaries, including AII, which also is a plaintiff in the Patent Litigation, assigned their interests in nine patents to Alcatel Resources so the patent infringement case could proceed in an orderly and streamlined fashion. (Boivin Decl. ¶¶ 26-28). Alcatel (France)'s assignment of the '830 and '090 patents to Alcatel Resources does not establish specific jurisdiction. As Alcatel Resources is the plaintiff in the Patent Litigation, any recovery will naturally be paid to Alcatel Resources. Alcatel Resources can either use the money directly or use the money to satisfy its obligations to other Alcatel entities just as it would use any revenues it receives.

> b)  Foundry cannot show that Alcatel (France) and CFA have the necessary "continuous and systematic" contacts for general jurisdiction.

General jurisdiction exists only when the defendant has "continuous and systematic general business contacts" with the forum. *Helicopteros*, 466 U.S. at 415-16, 104 S. Ct. at 1872-73. This type of jurisdiction subjects a defendant to suit within the forum regardless of the subject matter of the suit. "In this situation, the forum state has no direct interest in the specific cause of action asserted. Accordingly, contacts of a more extensive quality and nature are required." *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361-62 (5th Cir. 1990).

To establish general jurisdiction, Foundry must show a substantial connection between Alcatel (France) and CFA and the United States. *See Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77, n.18, 105 S. Ct. 2174, 2184, n.18 (1985)) (finding no general jurisdiction because contacts were not "substantial"). That Foundry has alleged nothing more than Alcatel (France) and CFA "do business in the United States" is enough by itself to defeat Foundry's case for jurisdiction. *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory*," 283 F.3d 208, 215 (4th Cir. 2002), *cert. denied*, 537 U.S. 822, 123 S. Ct. 102 (2002) (jurisdiction cannot be supported by vague, unsubstantiated claims).

In fact, the question whether Alcatel (France) has the necessary contacts for general jurisdiction already has been answered by a Delaware federal court under a national contacts test. *See Telcordia*, 2005 WL 1268061. In the *Telcordia* case, Judge Sleet examined Alcatel (France)'s contacts with the United States under Rule 4(k)(2), which requires a nationwide contacts analysis. Judge Sleet held that Alcatel (France)'s contacts with the United States, whether measured singly or in combination, "are not 'continuous and systematic' so as to give rise to general jurisdiction." *Telcordia*, 2005 WL 1268061, *5-6 ("[T]he record evidence demonstrates that Alcatel S.A. lacks sufficient contacts with the United States as a whole to satisfy due process.").

Similarly, CFA is a holding company that does not manufacture or import goods that are sold in the United States. (Boivin Decl. ¶¶ 33-35). It also does not maintain any offices or other facilities in the United States and it is not registered to do business here. (*Id.* at ¶¶ 36-37). CFA does not own property in the United States. (*Id.* at ¶ 43). Like

22

Alcatel (France), CFA does not pay taxes or have a mailing address or telephone listing. (*Id.* at ¶¶ 19-20, 44-45).

In short, Foundry cannot support general jurisdiction over either Alcatel (France) or CFA and exercising general jurisdiction in the absence of the necessary substantial, continuous and systematic contacts would violate the due process protections of the 5th Amendment.

### D.    FOUNDRY CANNOT ESTABLISH PERSONAL JURISDICTION UNDER THE DELAWARE LONG-ARM STATUTE.

In *Daniel v. American Bd. of Emergency Med.*, the Second Circuit Court of Appeals stated that its holding that the service of process provision of Section 12 of the Clayton Act was not applicable because the plaintiff could not satisfy the venue requirements of Section 12, did not mean that the general venue statute 28 U.S.C. § 1391 was not available to plaintiffs in antitrust actions. 428 F.3d 408, 427 (2d Cir. 2005). Paragraph (d) of Section 1391 provides that an alien may be sued in any district, but the plaintiff must still effect service and establish that the district court has personal jurisdiction over a foreign defendant. 28 U.S.C.A. § 1391 (West 2006). In *Daniel*, the Second Circuit stated that if a plaintiff relies on Section 1391, the plaintiff is required to use other service of process provisions to secure personal jurisdiction. In other words, Foundry may not rely on the nationwide service of process provision in Section 12 and, thus, may not rely on the national contacts test under Section 12 for jurisdiction.

To establish personal jurisdiction over Alcatel (France) and CFA under a general venue statute like Section 1391(d), this Court must first determine whether there is a statutory basis for jurisdiction under Delaware's long-arm statute and then determine whether the exercise of jurisdiction would comport with due process. *Monsanto*, 2006

WL 2246894, *5.  In cases involving a long-arm statute that is not co-extensive with the federal due process clause, the Federal Circuit applies the law of the relevant state and the federal courts sitting in that state to interpret the long-arm statute.  *See Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1385-86 (Fed. Cir. 1998).

        1.    **Foundry cannot satisfy any of the requirements of the Delaware long-arm statute.**

Delaware's long-arm statutes provides that a court may not exercise personal jurisdiction over a nonresident unless the nonresident, in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>
> (5) Has an interest in, uses or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 *Del. C.* § 3104(c) (2004).  The Delaware Courts have interpreted subsections (c)(1) - (3) and (5) - (6) of the long-arm statute as conferring specific jurisdiction and subsection (c)(4) as conferring general jurisdiction.  *See e.g., Monsanto*, 2006 WL 2246894, *7-8.

24

Foundry has failed to make any specific allegations against either Alcatel (France) or CFA that satisfy any of the provisions of the Delaware long-arm statute.

> a)    Alcatel (France) and CFA do not have contacts with Delaware sufficient to establish specific jurisdiction under Delaware's long-arm statute.

Specific jurisdiction under Delaware's long-arm statute requires that an act actually occur in Delaware. *See e.g., Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 503 (D. Del. 2003) ("[F]or a court to exercise jurisdiction under Subsections (c)(1) and (c)(3), some act must actually occur in Delaware."); *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 948 F. Supp. 338, 343 (D. Del. 1996) ("'[F]or a defendant to commit an act in Delaware and be subject to subsection (c)(3) . . . , the defendant[s], or an agent of the defendant, must be present in Delaware when the deed is done.'").

Foundry's only jurisdictional allegation specifically targeted against Alcatel (France) and CFA is that these Defendants "do business in the United States." (D.I. 20, Amended Complaint ¶¶ 7-8). Even taken as true, this allegation fails to allege any contacts that occurred in Delaware.

Alcatel (France) and CFA actually have no contacts with Delaware that would subject them to jurisdiction there. Both of them are holding companies that do not transact business in Delaware. (Boivin Decl. ¶¶ 4, 13-17, 38-42). Neither of them maintain any offices or other facilities in Delaware and they are not registered to do business there. (*Id.* at ¶¶ 11-12, 36-37). They do not own property or pay taxes in Delaware. Neither of these Defendants has ever had a mailing address or telephone listing in Delaware. (*Id.* at ¶¶ 20, 45).

The unsuccessful settlement discussions mentioned above did not take place in Delaware (Lucas Decl. ¶ 3); but even if they had occurred in Delaware, under *Red Wing*

<div align="center">25</div>

*Shoe* and the other authorities cited above, those discussions do not constitute relevant contacts for personal jurisdiction purposes.

Finally, Alcatel (France)'s assignment of the '830 and '090 patents does not satisfy the Delaware long-arm statute, because the assignment occurred outside of Delaware and therefore, does not constitute an act that "actually occur[red] in Delaware." *Reach*, 269 F. Supp. 2d at 503; *Monsanto*, 2006 WL 2246894, *7.

In short, there is nothing to support the Court's exercise of jurisdiction over either Alcatel (France) or CFA under the specific jurisdiction provisions of the Delaware long-arm statute.

> b)     Alcatel (France) and CFA do not have contacts with Delaware sufficient to establish jurisdiction under the general jurisdiction clause of the Delaware long-arm statute.

Subsection (c)(4) provides the only basis for general jurisdiction under the Delaware long-arm statute. *Monsanto*, 2006 WL 2246894, *6. Again, Foundry's allegation that Alcatel (France) and CFA "do business in the United States" does not satisfy Foundry's burden of demonstrating a jurisdictional basis under this Subsection.

General jurisdiction under Subsection (c)(4) is appropriate only when a defendant:

> Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; . . .

10 *Del. C.* § 3104(c)(4) (2004). General jurisdiction requires contacts that "are so extensive and continuing" that it is fair and reasonable to require the defendant to appear and defend itself against a claim when the claim arose outside the state. *See Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods., Inc.*, 1991 WL 129174 (D.

26

(D. Del. July 10, 1991). The standard for exercising general jurisdiction in Delaware is a difficult hurdle and rarely met. *See e.g., Reach*, 269 F. Supp. 2d at 505 ("While seemingly broad, the standard for general jurisdiction is high in practice and not often met."); *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 699 (D. Del. 1998) (cases of general jurisdiction extremely rare).

Neither Alcatel (France) nor CFA, both holding companies, solicits any business in Delaware, engages in persistent conduct in Delaware, or derives substantial revenues from services or things used or consumed in Delaware. (Boiv. Decl. ¶¶ 15-17, 40-42). The absence of such contacts between Alcatel (France) or CFA and Delaware necessarily precludes the exercise of general jurisdiction.

> 2.   Foundry cannot establish personal jurisdiction over Alcatel (France) or CFA on an agency or other vicarious theory.

Rather than allege any specific act of Alcatel (France) or CFA, Foundry has resorted to a "group pleading" approach based on a very global, conclusory allegation that all the Defendants "have functioned as a single entity under the control of [CFA] or [Alcatel (France)]." (D.I. 20, Amended Complaint at ¶ 9). It is unclear – but immaterial – whether Foundry's intent is to allege personal jurisdiction under a single enterprise, an alter ego, or an agency theory. Foundry's allegation of personal jurisdiction fails under all of these theories.

If Foundry has intended to plead a "single enterprise" theory, that theory is not recognized in Delaware. *See Hart Holding Co., Inc. v. Drexel Burnham Lambert, Inc.*, 1992 WL 127567, *10 (Del. Ch. May 18, 1992) ("The so-called enterprise theory of personal jurisdiction . . . does not represent the law in Delaware."); *Hynson v. Carmon*

*Lincoln Mercury*, 2006 WL 2065148, \*2 (Del. Com. Pl. July 26, 2006) (court found no law to support a "single entity" theory of liability).

If Foundry has attempted to plead an alter ego theory, Foundry has omitted a crucial element – that there was "fraud or inequity in the use of the corporate form . . ." *Telcordia*, 2005 WL 1268061, \*2 (finding there can be no jurisdiction under an alter ego theory without allegations or evidence of fraud); *C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556, 559 (D. Del. 1998) (same). Without this, Foundry has not alleged an alter ego theory. (*See* D.I. 20, Amended Complaint at ¶ 9).

If Foundry has attempted to plead an agency theory, it still cannot establish personal jurisdiction. In the *Telcordia* case, Judge Sleet found in favor of Alcatel (France) on agency as to Alcatel USA, Inc., the parent of Alcatel Resources and AII. *See Telcordia*, 2005 WL 1268061, \*3-4. Alcatel (France) and CFA are even further removed from Alcatel Resources and AII.

As Judge Sleet acknowledged in *Telcordia*, the relevant factors for the agency theory are "the extent of overlap of the officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business." *Telcordia*, 2005 WL 1268061, \*2.

While there was a minor overlap in officers as between Alcatel (France) and Alcatel USA, Inc. in *Telcordia*, Alcatel (France), CFA, Alcatel Resources, and AII have no overlapping officers or directors. (Boivin Decl. ¶¶ 23-24, 32). Alcatel (France) and CFA do not provide financing for Alcatel Resources or AII. (Campbell Decl. ¶ 5). Alcatel (France) and CFA do not direct the day-to-day management of Alcatel Resources and AII. (Campbell Decl. ¶ 7). Alcatel Resources and AII maintain their own financial

information and file their own taxes. (*Id.* at ¶ 5, 7). Finally, Alcatel (France) and CFA are both holding companies and neither is "involved in manufacturing or production activities [with Alcatel Resources and AII] . . . acting as the . . . distributor or sales agent." *Monsanto*, 2006 WL 2246894, *6; *see also*, *Telcordia*, 2005 WL 1268061, *4 (noting that *Telcordia* was not a case where Alcatel "manufacture[d] a product and use[d] an independent distributor to sell its product."). As a result, Alcatel Resources and AII are not agents of Alcatel (France) or CFA.

### E.   EXERCISING JURISDICTION OVER ALCATEL (FRANCE) AND CFA WOULD OFFEND TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE.

Given the absence of any alleged meaningful contacts between Alcatel (France) and CFA and Delaware or the United States, this Court need not consider the second requirement of the due process analysis – namely, whether it would be fair or reasonable to require Alcatel (France) and CFA to defend a suit in Delaware. *See Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S. Ct. 154, 160 (1945). This second requirement has not been met in any event.

A determination of fairness requires a balancing of several factors: the burden on the defendant; the interests of the forum state; the plaintiff's interest in obtaining relief; "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantial social policies." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033 (1987) (citation omitted); *BP Chemical*, 229 F.3d at 260. "In cases involving foreign parties, the Supreme Court has stated that '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the

29

international field.'" *Monsanto Co.,* 2006 WL 2246894, *5 (quoting *Asahi*, 480 U.S. at 115 (1987)).

Alcatel (France) and CFA are foreign holding companies that do not do business in Delaware or anywhere else in the United States, except through direct and indirect subsidiaries. To require these Defendants, neither of which has any contacts with Delaware, to defend themselves in this litigation, is unfair and unreasonable, considering there are two other defendants – AII, which had approximately $176,000,000 in revenues in 2005, and Alcatel Resources – that have not disputed jurisdiction and are able to respond to any judgment entered against them.

30

## V.    CONCLUSION

Foundry has alleged no basis for the exercise of personal jurisdiction over Alcatel (France) or CFA, two French organizations under any jurisdictional analysis.  Nor can it. In addition to Foundry's deficient pleading, the Declarations of Philippe Boivin, Eric Lucas, and Richard Campbell establish the absence of meaningful contacts with the State of Delaware and the United States sufficient to support personal jurisdiction.  Foundry's claims against Alcatel (France) and CFA should be dismissed pursuant to Rule 12(b)(2).

Respectfully submitted,

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

ATTORNEYS FOR DEFENDANTS ALCATEL AND
COMPAGNIE FINANCIÈRE ALCATEL

OF COUNSEL
Robert W. Kantner
Mary L. Scott
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6500

G. Irvin Terrell
Rufus W. Oliver III
Scott Partridge
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
(713) 229-1234

Dated:    October 11, 2006

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on October 11, 2006, I caused to be electronically

filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which

will send notification that such filing is available for viewing and downloading to the following counsel

of record:

>Philip A. Rovner, Esquire
>Potter Anderson & Corroon LLP
>1313 N. Market Street
>Wilmington, DE 19801

I further certify that on October 11, 2006, I caused a copy of the foregoing document to be served

by hand delivery on the above-listed counsel of record and on the following non-registered participants in

the manner indicated:

**BY E-MAIL ON OCTOBER 11, 2006**
**AND U.S. MAIL ON OCTOBER 12, 2006**

William L. Anthony, Esquire
*wanthony@orrick.com*
Matthew H. Poppe, Esquire
*mpoppe@orrick.com*
Michael F. Heafey, Esquire
*mheafey@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
650-614-7400

Garret G. Rasmussen, Esquire
*grasmussen@orrick.com*
Antony P. Kim, Esquire
*akim@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
Washington Harbour
3050 K Street, N.W.
Washington, DC 20007-5135
202-339-8400

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>Josy W. Ingersoll (No. 1088)
>*jingersoll@ycst.com*
>John W. Shaw (No. 3362)
>*jshaw@ycst.com*
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, Delaware 19801
>(302) 571-6600

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FOUNDRY NETWORKS, INC., <br> a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ALCATEL USA RESOURCES, INC. <br> a Delaware Corporation, <br> ALCATEL INTERNETWORKING, INC. <br> a California Corporation <br> COMPAGNIE FINANCIÈRE ALCATEL <br> a French Corporation, and <br> ALCATEL S.A., <br> a French Corporation, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 06-470-SLR <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF PHILIPPE BOIVIN IN SUPPORT
OF ALCATEL (FRANCE)'S MOTION TO DISMISS**

I, Philippe Boivin, declare as follows:

1.    My name is Philippe Boivin.  I am over the age of eighteen years, of sound mind, and competent in all respects to make this Declaration.  I have personal knowledge of the following facts.

2.    I am employed by Compagnie Financière Alcatel ("CFA").  My title is Deputy General Counsel and I perform legal services for both CFA and Alcatel ("Alcatel (France)"), erroneously called "Alcatel SA" by the Plaintiff.

3.    Alcatel (France) is a société anonyme, organized under the laws of France and has its principal offices located at 54, rue La Boétie, 75008 Paris, France.  A société anonyme is a joint stock company whose capital is divided into shares.

1

4.    Alcatel (France) is a holding company that holds direct and indirect ownership interests in both Alcatel-related entities and entities that but for Alcatel's minority interest have no other corporate affiliation with Alcatel.

5.    Alcatel (France) owns CFA, which in turn owns Alcatel Participations. Both CFA and Alcatel Participations are organized under the laws of France. Alcatel Participations owns approximately ninety-nine percent of Alcatel USA, Inc.    The remaining interest in Alcatel USA, Inc. is owned by a Canadian corporation that is indirectly owned by Alcatel (France).

6.    Alcatel USA, Inc. wholly owns Alcatel USA Resources, Inc. ("Alcatel Resources") and Alcatel Internetworking, Inc. ("AII").

7.    Alcatel (France) is listed on the New York Stock Exchange as an American Depository Receipt.

8.    Alcatel (France) does not manufacture any goods in the United States or anywhere else in the world.

9.    Alcatel (France) does not sell, advertise or trade goods in the United States or anywhere else in the world.

10.    Alcatel (France) does not import any goods into the United States.

11.    Alcatel (France) does not maintain any offices or any other facilities in the United States.

12.    Alcatel (France) is not registered to do business anywhere in the United States.

13.    Alcatel (France) does not transact any business or perform any character of work or service in Delaware.

2

14.     Alcatel (France) has not contracted to supply services or things in Delaware;

15.     Alcatel (France) does not solicit business in Delaware.

16.     Alcatel (France) does not engage in persistent conduct in Delaware.

17.     Alcatel (France) does not derive substantial revenues from services or things used or consumed in Delaware.

18.     Other than its legal interests in patents, Alcatel (France) does not own any property in the United States.

19.     Alcatel (France) has never paid taxes in the United States.

20.     Alcatel (France) has never had a mailing address or telephone listing in the United States.

21.     Alcatel (France) does not share corporate records with CFA, Alcatel Resources or AII.  Although Alcatel (France) is required by the French Autorité des Marchés Financiers and the United States Securities and Exchange Commission to prepare consolidated financial statements for it and its subsidiaries, including CFA, Alcatel Resources and AII, Alcatel (France) maintains separate financial information relating solely to it as a separate legal entity.

22.     Alcatel (France) conducts board of directors meetings at least annually, and these meetings are not combined with board of directors meetings for Alcatel Resources or AII.  CFA does not have a board of directors.

23.     No one on Alcatel (France)'s board of directors is also on the board of directors or is an officer of Alcatel Resources or AII.  No officer of Alcatel (France) is also on the board of directors or is an officer of Alcatel Resources or AII.

3

24.    No officer or director of Alcatel Resources or AII is an officer or director of Alcatel (France).

25.    Alcatel (France) files its own tax return, separate from any tax return filed by any United States affiliate, including Alcatel Resources and AII.

26.    On or about May 10, 2005, Alcatel (France) and four of its indirect subsidiaries assigned their interests in the following patents to Alcatel Resources:

| Assignor | Patent |
|---|---|
| Alcatel (France) | 6,339,830 |
| | 6,874,090 |
| | 6,865,153 |
| Alcatel Internetworking, Inc. | 6,339,830 |
| Alcatel N.V. | 5,301,192 |
| | 5,461,615 |
| | 5,506,840 |
| Alcatel Canada, Inc. | 6,697,329 |
| | 6,882,647 |
| Alcatel Sel Aktiengesellschaft | 5,521,923 |

27.    The patents in the preceding paragraph comprise the patent portfolio ("Patent Portfolio) that is the subject of the patent infringement action brought by Alcatel Resources against Foundry Networks, Inc. ("Patent Litigation").

28.    The patents were assigned so the Patent Portfolio could reside in one entity and thus streamline the litigation.

29.    None of the assignments were signed in Delaware.

30.    Alcatel (France) has four (4) employees, all of whom reside outside the United States.

4



31.     CFA is a société par actions simplifiée, organized under the laws of France with its principal offices located at 54, rue La Boétie, 75008 Paris, France. A société par actions simplifiée is a simplified stock company with limited liability.

32.     CFA is a holding company that holds direct and indirect ownership interests in various subsidiary companies throughout the world. CFA is headed by a President, Olivier Calemard. It has no other officers and there are no directors. Mr. Calemard is not an officer or director of Alcatel (France), Alcatel Resources or AII.

33.     CFA does not manufacture any goods in the United States or anywhere else in the world.

34.     CFA does not sell, advertise or trade goods in the United States or anywhere else in the world.

35.     CFA does not import any goods into the United States.

36.     CFA does not maintain any offices or any other facilities in the United States.

37.     CFA is not registered to do business anywhere in the United States.

38.     CFA does not transact any business in Delaware.

39.     CFA has not contracted to supply things in Delaware

40.     CFA does not solicit business in Delaware.

41.     CFA does not engage in persistent conduct in Delaware.

42.     CFA does not derive substantial revenues from services or things used or consumed in Delaware.

43.     CFA does not own any property in the United States.

44.     CFA has never paid taxes in the United States.

45.    CFA has never had a mailing address or telephone listing in the United States.

46.    CFA does not share corporate records with Alcatel (France), Alcatel Resources, or AII.  Although CFA's financial results are consolidated with all the subsidiaries of Alcatel (France) for reporting purposes, CFA prepares and maintains separate financial information relating solely to it as a separate legal entity.

47.    CFA files its own tax return, separate from any tax return filed by any United States affiliate, including Alcatel Resources and AII.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Executed on __October 10, 2006__

6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FOUNDRY NETWORKS, INC., a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 06-470-SLR |
| ALCATEL USA RESOURCES, INC. a Delaware Corporation, ALCATEL INTERNETWORKING, INC. a California Corporation COMPAGNIE FINANCIÈRE ALCATEL a French Corporation, and ALCATEL S.A., a French Corporation, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF ERIC LUCAS IN SUPPORT
OF THE MOTION TO DISMISS OF ALCATEL AND
COMPAGNIE FINANCIÈRE ALCATEL**

I, Eric Lucas, declare as follows:

1.      My name is Eric Lucas.  I am over the age of eighteen years, of sound mind, and competent in all respects to make this Declaration.  I have personal knowledge of the following facts.

2.      I am employed by Alcatel USA Resources, Inc. ("Alcatel Resources").  I am the Assistant General Counsel, Director of Patent Licensing and I am responsible for licensing intellectual property in the United States.

3.      David Hawkes, an employee of CFA specializing in intellectual property licensing, participated in settlement negotiations concerning a dispute over the patents that are the subject of the patent case, Civil Action No. 05-418-SLR.  The settlement negotiations, which

1

I understand did not take place in Delaware, did not lead to a resolution of the dispute with Foundry.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Executed on _October 11, 2006_

_____

Eric Lucas

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FOUNDRY NETWORKS, INC.,<br>a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-470-SLR |
| | ) | |
| ALCATEL USA RESOURCES, INC.<br>a Delaware Corporation, | ) | (JURY TRIAL DEMANDED) |
| ALCATEL INTERNETWORKING, INC.<br>a California Corporation | ) | |
| COMPAGNIE FINANCIÈRE ALCATEL<br>a French Corporation, and | ) | |
| ALCATEL S.A.,<br>a French Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF RICHARD P. CAMPBELL IN SUPPORT
OF ALCATEL S.A.'S AND COMPAGNIE
FINANCIÈRE ALCATEL'S MOTION TO DISMISS**

I, Richard P. Campbell, declare as follows:

1.   My name is Richard P. Campbell.  I am over the age of eighteen years, of sound mind, and competent in all respects to make this Declaration.  I have personal knowledge of the following facts.

2.   I am employed by Alcatel USA Resources, Inc. ("Alcatel Resources").  I am the Vice President, Tax for Alcatel Resources and also for Alcatel Internetworking, Inc. ("AII").

3.   Alcatel Resources' and AII's financial results are consolidated with Alcatel USA, Inc.'s financial results for financial reporting purposes; however, Alcatel Resources and AII each maintain their own separate financial information.

*RPC 10/10/06*

1

4.    Alcatel Resources and AII file a consolidated federal income tax return as subsidiaries of Alcatel USA, Inc. and that return is separate from any tax return filed by Alcatel (France) or CFA.  Alcatel Resources and AII each also file state income tax returns, which are separate from Alcatel USA, Inc., Alcatel (France) and CFA.

5.    Alcatel Resources and AII each finance their business from their own operations. To the extent financing is needed, they obtain it from Alcatel USA Sourcing, LP, which is a partnership that is wholly owned indirectly by Alcatel USA, Inc.

6.    AII's revenues as of December 31, 2005 were approximately $176 million.

7.    Alcatel (France) and CFA do not direct the day-to-day activities of Alcatel Resources or AII.  Daily decisions and operations are handled at the local level by the officers and managers of Alcatel Resources and AII.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Executed on   10/10/06

Richard P. Campbell

2