IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FOUNDRY NETWORKS, INC.,<br>a Delaware Corporation,<br><br>Plaintiff,<br>v.<br><br>ALCATEL USA RESOURCES, INC.<br>a Delaware Corporation,<br>ALCATEL INTERNETWORKING, INC.<br>a California Corporation<br>COMPAGNIE FINANCIÈRE ALCATEL<br>a French Corporation, and<br>ALCATEL S.A.,<br>a French Corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 06-470-SLR |

**OPENING BRIEF OF DEFENDANTS ALCATEL USA RESOURCES, INC.
AND ALCATEL INTERNETWORKING, INC. IN SUPPORT OF THEIR
MOTION TO DISMISS AMENDED COMPLAINT**

OF COUNSEL
Robert W. Kantner
Mary L. Scott
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6500


G. Irvin Terrell
Rufus W. Oliver III
Scott Partridge
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
(713) 229-1234

Dated: October 11, 2006

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

ATTORNEYS FOR DEFENDANTS
ALCATEL USA RESOURCES, INC. AND
ALCATEL INTERNETWORKING, INC.

# Table of Contents

Page

Table of Contents ................................................................................................... i

Table of Authorities ............................................................................................. iii

I.     NATURE AND STAGE OF THE PROCEEDING ............................................... 1

II.    SUMMARY OF ARGUMENT .......................................................................... 2

III.   STATEMENT OF FACTS ................................................................................ 4

IV.   ARGUMENT .................................................................................................... 8

     A.    Foundry's Antitrust Claim is Time-Barred. ............................................... 8

          1.    Foundry complains of alleged conduct by Alcatel occurring more than four years prior to filing suit. .......................................... 9

          2.    Foundry admits that it was aware of Alcatel's alleged concealment of the '830 patent, and of its alleged consequences, more than four years before suit. ............................ 9

          3.    By April 2002, not only was the '090 patent application a matter of public record, but Foundry knew that Alcatel claimed "substantially similar" rights. ......................................... 10

          4.    According to the Amended Complaint, the IEEE adopted the revised standard with actual knowledge that Alcatel asserted rights "substantially the same" as those covered by the '090 application. ...................................................................................... 11

          5.    Foundry's claim that it was "first damaged" three years after it discovered Alcatel's alleged wrongdoing is unavailing. ........... 12

          6.    Foundry's claim for injunctive relief is barred, if not by limitations, by laches ................................................................. 14

     B.    Foundry Does Not Allege Facts Sufficient to Show that it Suffered Antitrust Injury Necessary to Establish Standing. ................................... 15

          1.    Foundry's alleged injury flows from Alcatel's exercise of valid patent rights, which is exempt conduct under the antitrust laws. ............................................................................... 15

          2.    No illegal tying is alleged to deny Alcatel antitrust immunity. ...... 17

3.    No *Walker Process* fraud or sham litigation is alleged to deny Alcatel antitrust immunity. ...........................................................19

4.    Public policy considerations dictate against contravening *In re ISO* to expose alleged failures to disclose patent applications to private antitrust liability. .......................................20

5.    FTC law does not support finding antitrust injury........................21

C.    The Amended Complaint Should be Dismissed for Failure to Allege a Relevant Market. ..................................................................................... 24

1.    A plaintiff's failure to allege a relevant market with reference to the rule of reasonable interchangeability is grounds for dismissal.....................................................................................24

2.    Foundry makes no attempt to allege a relevant market with reference to the rule of reasonable interchangeability. ..................25

D.    Foundry's Fraud Claims are Time-Barred. ............................................. 26

1.    Nondisclosure of the '830 Patent Application................................27

2.    Nondisclosure of the '090 Patent Application................................27

3.    Assurance to the IEEE regarding the '830 Patent ..........................29

E.    Alternatively, the Court Should Decline to Exercise Jurisdiction Over Foundry's Fraud Claim. .......................................................................... 30

V.    CONCLUSION.................................................................................................... 31

# Table of Authorities

## CASES

Page

*Abbott Labs. v. Teva Pharms. USA, Inc.,*
    432 F. Supp. 2d. 408 (D. Del. 2006) ...................................................................16

*Am. Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974) .........................................................................................8

*Beatrice Foods Co. v. FTC,*
    540 F.2d 303 (7th Cir. 1976) ...........................................................................23

*Biagro W. Sales Inc. v. Helena Chem. Co.,*
    160 F. Supp. 2d 1136 (E.D. Cal. 2001) ...............................................................6

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,*
    140 F.3d 494 (3d Cir. 1998) ............................................................................19

*Brown Shoe Co. v. United States,*
    370 U.S. 294 (1962) .......................................................................................25

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977) ..................................................................................2, 15

*Buck v. Hampton Township Sch. Dist.,*
    452 F.3d 256 (3d Cir. 2006) ..........................................................................6, 21

*Cal. Dental Ass'n v. FTC,*
    224 F.3d 942 (9th Cir. 2000) ...........................................................................22

*California v. American Stores Co.,*
    495 U.S. 271 (1990) .......................................................................................14

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
    479 U.S. 104 (1986) .......................................................................................15

*Cetel v. Kirwan Fin. Group, Inc.,*
    460 F.3d 494 (3d Cir. 2006),
    *cert. denied,* 419 U.S. 1110 (1975) ...................................................................8

*Christianson v. Colt Industries Operating Corp.,*
    486 U.S. 800 (1988) .......................................................................................16

iii

*City of Pittsburgh v. West Penn Power Co.*,
    147 F.3d 256 (3d Cir. 1998)....................................................................................15

*E.I. duPont de Nemours & Co. v. FTC*,
    729 F.2d 128 (2d Cir. 1984).....................................................................................22

*Fisher Bros. Sales, Inc. v. United States*,
    46 F.3d 279 (3rd Cir. 1995) ..............................................................................13, 14

*Globespanvirata, Inc. v. Texas Instruments, Inc.*,
    No. 03-2854 (GEB), 2006 WL 543155 (D.N.J. March 3, 2006) ...........................17

*Gordon v. Lewiston Hosp.*,
    423 F.3d 184 (3d Cir. 2005)....................................................................................18

*Gorman Towers, Inc. v. Bogoslavsky*,
    626 F.2d 607 (8th Cir. 1980) ..................................................................................30

*Holiday Matinee, Inc. v. Rambus, Inc.*,
    118 Cal App. 4th 1413 (Cal. Ct. App. 2004) .........................................................16

*Holloway v. Bristol Myers Corp.*,
    485 F. 2d 986 (D.C. Cir. 1973) ..............................................................................22

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
    126 S. Ct. 1281 (2006)............................................................................................19

*In re Dean Witter P'ship Litig., No. Civ. A. 14816*,
    1998 WL 442456 (Del. Ch. Jul. 17, 1998),
    *aff'd*, 725 A.2d 441 (Del. 1999) ............................................................................29

*In re Dell Computer Corp.*,
    121 F.T.C. 616 (1996)............................................................................................21

*In re Indep. Serv. Orgs. Antitrust Litig. ("In re ISO")*,
    203 F.3d 1322 (Fed. Cir. 2000),
    *cert. denied*, 531 U.S. 1143 (2001)................................................................16, 19

*In re Rambus, Inc.*,
    No. 9302, 2006 WL 2330117 F.T.C. July 31, 2006 ...........................21, 22, 23, 24

*In re Union Oil Co.*,
    No. C-4144, 2006 WL 2003349 F.T.C. July 27, 2005 ...........................................21

DB02:5555419.1    065537.1001

*Ingram Corp. v. J. Ray McDermott & Co.,*
    698 F.2d 1295 (5th Cir. 1983) .............................................................30

*Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.,*
    518 F.2d 913 (9th Cir. 1975) ...............................................................14

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde,*
    466 U.S. 2 (1984)..............................................................................18

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,*
    677 F.2d 1045 (5th Cir. 1982),
    *cert. denied,* 459 U.S. 1105 (1983).........................................................8

*Klehr v. A.O. Smith Corp.,*
    521 U.S. 179 (1997)............................................................................9

*Moore Corp. Ltd. v. Wallace Computer Servs., Inc.,*
    907 F. Supp. 1545 (D. Del. 1995)........................................................15

*Morse v. Lower Merion Sch. Dist.,*
    132 F3d 902 (3d Cir. 1997)................................................................13

*Nobelpharma AB v. Implant Innovations, Inc.,*
    141 F.3d 1059 (Fed. Cir. 1998)......................................................16, 19

*Pastore v. Bell Tel. Co. of Pa.,*
    24 F.3d 508 (3d Cir. 1994)..................................................................25

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
    124 F.3d 430 (3d Cir. 1997)...........................................................25, 26

*Schering-Plough Corp. v. FTC,*
    402 F.3d 1056 (11th Cir. 2005),
    *cert. denied,* 126 S. Ct. 2929 (2006)....................................................22

*SmithKline Corp. v. Eli Lilly & Co.,*
    575 F. 2d 1056 (3d Cir.),
    *cert. denied,* 439 U.S. 838 (1978)........................................................24

*Spectrum Sports, Inc. v. McQuillan,*
    506 U.S. 447 (1993)............................................................................24

*Teachers' Ret. Sys. of La. v. Aidinoff,*
    900 A.2d 654 (Del. Ch. 2006)..................................................27, 28, 30

DB02:5555419.1                                                  065537.1001

*U.S. Philips Corp. v. Int'l Trade Comm'n,*
    424 F.3d 1179 (Fed. Cir. 2005)...................................................................17, 18

*United Mine Workers v. Gibbs,*
    383 U.S. 715 (1966)...............................................................................30

*Van de Walle v. Salomon Bros., Inc.,*
    733 A.2d 312 (Del. Ch. 1998)...................................................................28

*Walker Process Equipment, Inc., v. Food Machinery & Chemical Corp.,*
    382 U.S. 172 (1965)...........................................................................19, 24

*Walker v. W. Mich. Nat'l Bank & Trust,*
    324 F. Supp. 2d 529 (D. Del. 2004)...........................................................27

*Weinberger v. Retail Credit Co.,*
    498 F.2d 552 (4th Cir. 1974) ..................................................................14

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    401 U.S. 321 (1971)................................................................................9

## STATUTES

Del. Code Ann. tit. 10, §§ 8106, 8121 (2006) ...................................................27

Sherman Act, 15 U.S.C. § 2 (2000) ...........................................1, 4, 6,16, 17, 22

Clayton Act § 4, 15 U.S.C. § 15 (2000)...........................................................15

15 U.S.C. § 15b (2000) .................................................................................8

15 U.S.C. §16(i) (2000) .................................................................................8

Clayton Act §16, 15 U.S.C. § 26 (2000)...........................................................15

15 U.S.C. §§ 45(l) .......................................................................................23

FTC Act § 5, 15 U.S.C. § 45 (2000) .................................................................22

FTC Act § 5(b), 15 U.S.C. § 45(b) (2000)..........................................................23

FTC Act § 13(b), 15 U.S.C. § 53(b) (2000)........................................................23

FTC Act § 19(b), 15 U.S.C. § 576(b) (2000).......................................................23

35 U.S.C. § 122(b)(1) .....................................................................................6

DB02:5555419.1                                                      065537.1001

# MISCELLANEOUS

David J. Teece & Edward F. Sherry, *Standards Setting and Antitrust,* 87 Minn. L.
Rev. 1913, 1964 (2003) ........................................................................................20

*To Promote Innovation: The Proper Balance of Competition and Patent Law and
Policy*, A Report by the Federal Trade Commission, October 2003, at A-24 .......21

II Phillip E. Areeda, Herbert Hovenkamp & Roger D. Blair, Antitrust Law ¶ 320g at
237 (2d ed. 2000) ................................................................................................14

United States Patent No. 6,874,090 ...................................................................................6

I.    **Nature and Stage of the Proceeding**

On August 1, 2006, Plaintiff Foundry Networks, Inc., ("Foundry") commenced

this action by filing its Complaint (D.I. 1, Complaint), charging Defendants with one

count of violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (2000), and one count

of common-law fraud.  Named as Defendants are Alcatel USA Resources, Inc. ("Alcatel

Resources") and Alcatel Internetworking, Inc. ("AII"), who have filed the instant Motion

to Dismiss, and two French corporations that are indirect parents of Alcatel Resources

and AII, Compagnie Financiére Alcatel ("CFA") and Alcatel S.A. ("Alcatel France").

The gist of Plaintiff's claims, as described in more detail below, is that Defendants,

allegedly in violation of the bylaws of an industry trade association, failed to disclose the

fact that they had applied for patents relating to a standard being considered by the

association, until after the standard had been adopted and the patents had issued, and then

sued Plaintiff for infringement when it refused to accept the licensing terms offered by

Defendants.   On August 16, 2006, Foundry filed an Amended Complaint. (D.I. 20,

Amended Complaint). On September 19, 2006, the parties filed a stipulation (D.I. 26,

Stipulation to Extend Time) that Defendants could have until October 11, 2006, in which

to file responsive pleadings; and this stipulation was approved by the Court on September

20, 2006.  Alcatel Resources and AII are today filing a Motion to Dismiss the Amended

Complaint pursuant to Rules 12(b)(6).   The two French corporations are filing a separate

Motion to Dismiss for Lack of Personal Jurisdiction.

The infringement suit referred to in Foundry's Amended Complaint is pending

before this Court.  In *Alcatel USA Resources, Inc. and Alcatel Internetworking, Inc. v.

Foundry Networks, Inc.*, C. A. No. 05-418-SLR (the "infringement suit"), Alcatel

Resources and AII accuse Foundry of infringing nine patents, including the two patents at issue in the instant suit.

## II.    Summary of Argument

A.    For any of the following reasons, Plaintiff's antitrust claim should be dismissed for failure to state a claim.

1.    The Amended Complaint shows on its face that Foundry's federal antitrust damage claim is barred by the four-year statute of limitations, and that its antitrust claim for injunctive relief is barred, if not also by limitations, then by laches. According to the Amended Complaint, more than four years before filing suit, Foundry not only had actual knowledge that Alcatel asserted patent rights with regard to technology that could be used to comply with the industry standard, but also asserted the same position that it asserts here, *i.e.*, that Alcatel's alleged failure to comply with the association bylaws precluded enforcement of the patents against Foundry. The Court may, and should, disregard Foundry's conclusory allegation that it suffered no injury for more than three years after becoming aware of what it says is Alcatel's wrongful conduct.

2.    Foundry fails to allege facts sufficient to show the presence of "antitrust injury," thus depriving it of standing to bring suit. Rather than constituting "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful,"[1] Foundry's alleged injury is attributable to Alcatel's exercise of its valid intellectual property rights, conduct that cannot give rise to antitrust liability except in a narrow, specific set of circumstances. Foundry has not alleged these exceptional circumstances, nor do the facts alleged warrant crafting a new exception.

---

[1] *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

DB02:5555419.1                                                                                      065537.1001

3.     Foundry fails to adequately allege a relevant market.   Third Circuit precedent requires that an antitrust plaintiff define a relevant market with reference to the principle of reasonable interchangeability of use, *i.e.*, the principle that a relevant market includes all products that are reasonably interchangeable with one another.   Foundry, however, has merely asserted that the market relevant for purposes of this action consists of a certain type of authentication technology, and has made no effort to allege whether reasonably interchangeable substitutes exist.

B.     Foundry's common-law fraud claims are barred by Delaware's three-year statute of limitations.  Foundry's claim that Alcatel failed to disclose its '830 patent and application is barred by the fact that Foundry had actual knowledge of the alleged failure to disclose more than four years before filing suit.  Its claim for alleged nondisclosure of Alcatel's '090 patent and application is barred by the fact that, once having discovered the alleged failure to disclose the '830 patent, Foundry was under a duty of reasonable investigation, and the most rudimentary investigation would have disclosed the '090 application more than four years before suit was filed.  As for the claim that Alcatel made misleading statements in a January 2003 "assurance letter" to IEEE, Foundry was already well aware of Alcatel's actual licensing policy since Alcatel had already allegedly demanded an unlawful package license from Foundry, and limitations on this claim would have run, at the latest, months before suit was filed.

C.     Alternatively, when the Court dismisses Foundry's federal antitrust claim, it should decline to exercise supplemental jurisdiction over Foundry's common law fraud claim.  None of the considerations that have been recognized in extraordinary cases as justifying the discretionary exercise of federal jurisdiction over a state law claim after

3

dismissal of a federal claim—such as considerations of judicial economy, convenience and fairness or the existence of important federal policies—justifies continuing these claims in a federal forum.

## III.    Statement of Facts

Foundry's Amended Complaint asserts two theories:    first, that Alcatel[2] monopolized or attempted to monopolize an alleged market consisting of technology for "user authentication for port-based network access to LANs" (D.I. 20, Amended Complaint Intro) in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (2000) (D.I. 20, Amended Complaint ¶ 50-78); second, that Alcatel committed common-law fraud (D.I. 20, Amended Complaint ¶ 79-89).    Both theories focus primarily on Alcatel's alleged failure to make timely disclosure of the fact that it had applied for patents covering technology related to a proposed industry standard, until after the standard had been adopted and the patents had issued.    Thereafter, Foundry alleges, Alcatel demanded that Foundry license its patents and, when Foundry refused, Alcatel sued for infringement.[3]

According to Foundry, Alcatel's duty to disclose the existence of its patent application arose from Clause 6 of the Standards Board Bylaws of the Institute of Electrical and Electronics Engineers ("IEEE") Standards Association, which is quoted in

---

[2]  The Amended Complaint refers indiscriminately to all four Defendants as simply "Alcatel."

[3]  The Amended Complaint also takes a gratuitous swipe at Alcatel's proposed merger with Lucent Technologies. (*see* D.I. 20, Amended Complaint ¶ 49).  Since Foundry, however, does not allege any particulars that would be required to mount a legitimate challenge of this proposed merger, such as why the transaction is allegedly anticompetitive, what markets would be affected, and how Foundry would be harmed, the reference to the Lucent merger appears to serve no purpose other than providing ostensible grounds for otherwise improper discovery requests.

4

the Amended Complaint (D.I. 20, Amended Complaint ¶ 16) and which provides that IEEE standards "may include the known use of patent(s), including patent applications, provided the IEEE receives assurance from the patent holder or applicant with respect to the patents essential for compliance with both mandatory and optional portions of the standard." (D.I. 20, Amended Complaint ¶ 16). The "assurance" referred to in the bylaw is a letter from the holder of such an "essential" patent (or applicant, if the patent has not yet issued) that either (1) disclaims intent to enforce the patent against persons using the patent to comply with the standard, or (2) offers a license to the patent on reasonable and nondiscriminatory ("RAND") terms, without compensation or at reasonable royalty rates. (D.I. 20, Amended Complaint ¶ 16).

Foundry alleges that, in March 2000, while an IEEE working group was deliberating with respect to a standard to govern authentication protocol for port-based network access, Alcatel filed an application for what would later become the so-called '830 patent (one of the Alcatel patents at issue in the infringement litigation between Alcatel and Foundry), and that although one or more Alcatel employees were aware of this application and "participated" in some manner in the deliberations of the IEEE working group, Alcatel did not disclose the fact that it had applied for this patent, allegedly in violation of Clause 6 of the IEEE bylaws and of a "patent policy" adopted by the working group that "confirmed the applicability" of Clause 6. (D.I. 20, Amended Complaint ¶¶ 21-24). On June 14, 2001, before the '830 patent had issued, the working group adopted IEEE Standard 802.1X. (D.I. 20, Amended Complaint ¶ 26). One week later, Foundry alleges, Alcatel "secretly" applied for a continuation of the '830 patent application. This application, which would eventually mature into Alcatel's '090 patent

(also at issue in the infringement case pending before this Court), had "substantially the same" specifications and claims as the '830 patent and patent application, according to the Amended Complaint. (D.I. 20, Amended Complaint ¶ 28; *see also* ¶ 42).

On January 15, 2002 (six months after the IEEE adopted the 802.1X standard), the first of the two Alcatel patents in dispute in this case (the '830 patent) issued. (D.I. 20, Amended Complaint ¶ 37). Shortly thereafter, in April 2002, Foundry alleges that Alcatel accused Foundry of infringing the patent and demanded that Foundry take a license.[4] (D.I. 20, Amended Complaint ¶ 38). According to Foundry, Alcatel was unwilling to consider licensing this patent except as part of a package containing other patents. (*Id.*) Foundry characterizes this as "tying" and "exclusionary conduct" to support its Sherman Act § 2 claim. (D.I. 20, Amended Complaint ¶¶ 69-70). Foundry alleges that it responded to this alleged demand by telling Alcatel that, "no matter what claims were included in the '830 patent," its failure to disclose the '830 patent application prior to adoption of the 802.1X standard, allegedly as required by the IEEE bylaw, precluded Alcatel from enforcing the patent against Foundry. (D.I. 20, Amended Complaint ¶ 39).

---

[4] That same month, on April 4, 2002, the United States Patent and Trademark Office (USPTO) published Alcatel's '090 Patent Application. *See* United States Patent No. 6,874, 090 (Infringement Suit, D.I. 1, Complaint Ex. G), reflecting publication of the patent application by USPTO on April 4, 2002 (federal law requires the USPTO to publish all patent applications 18 months after they are filed, unless the applicant undertakes not to seek patent protection in a foreign jurisdiction that requires publication of applications 18 months after filing; 35 U.S.C. § 122(b)(1), (b)(2)(B)(i) (2000)). This Court may take judicial notice of the '090 Patent Application's publication date, and Movants request that the Court do so. *See, e.g., Buck v. Hampton Township Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (holding that, '[i]n evaluating a motion to dismiss, [a court] may consider . . . 'matters of public record'") (citation omitted); *see also Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1143 (E.D. Cal. 2001) (taking judicial notice of patents).

Early the following year, on January 13, 2003, according to the Amended Complaint, Alcatel belatedly sent an "assurance letter" to the IEEE with respect to its '830 patent, informing the IEEE of the issuance of the patent and expressing Alcatel's "purported willingness to license the . . . patent on reasonable terms." (D.I. 20, Amended Complaint ¶ 40). Alcatel, however, allegedly never disclosed or sent any assurance with respect to its subsequently issued '090 patent (issued March 29, 2005), notwithstanding the IEEE's adoption of a revised standard, 802.1X REV, in 2004. (D.I. 20, Amended Complaint ¶¶ 43-44).

According to Foundry, "within one year" after its adoption by the IEEE, the 802.1X standard became "the industry standard for the Technology Market." (D.I. 20, Amended Complaint ¶ 33). At that point, according to the Amended Complaint, industry members were "locked-in" to the standard, in the sense that the authentication technology they incorporated into their products had to conform to the standard. (D.I. 20, Amended Complaint ¶ 35).

The following summary of the foregoing chronology may assist the Court:

| | |
|---|---|
| 3/15/00: | Alcatel files application for '830 patent (D.I. 20, Amended Complaint ¶ 21). |
| 6/14/01: | IEEE adopts standard 802.1X (D.I. 20, Amended Complaint ¶ 26). |
| 6/21/01: | Alcatel files application for '090 patent (D.I. 20, Amended Complaint ¶ 28). |
| 1/15/02: | '830 patent issues (D.I. 20, Amended Complaint ¶ 37). |
| 4/02: | Alcatel accuses Foundry of infringing '830 patent; offers license; Foundry tells Alcatel that alleged nondisclosure precludes enforcement (D.I. 20, Amended Complaint ¶¶ 38-39). |

| 4/2/02: | USPTO publishes '090 patent application (Infringement Suit, D.I. 1, Complaint Ex. G.). |
| 1/13/03: | Alcatel sends "assurance letter" to IEEE regarding '830 patent (D.I. 20, Amended Complaint ¶ 40). |
| 2004: | IEEE adopts revised 802.1X standard (D.I. 20, Amended Complaint ¶ 43). |
| 3/29/05: | '090 patent issues (D.I. 20, Amended Complaint ¶ 44). |
| 6/21/05: | Alcatel sues Foundry for infringement (D.I. 20, Amended Complaint ¶ 45). |
| 8/1/06: | Foundry files the instant suit (D.I. 1, Complaint). |

IV.    **Argument**

A.    **Foundry's Antitrust Claim is Time-Barred.**

Unless the statute of limitations is tolled, private antitrust damage claims must be filed within four years after they accrue. Clayton Act, § 4b, 15 U.S.C. § 15b (2000). Foundry filed this suit on August 1, 2006. It does not allege that the statute of limitations was tolled in any manner.[5] Accordingly, if Foundry's antitrust damage claim accrued earlier than August 1, 2002, it is barred by limitations. Generally, a private antitrust damage claim accrues when the defendant "commits an act that injures a plaintiff's

---

[5] The statute of limitations applicable to private antitrust claims can be tolled by (a) the pendency of a government enforcement action challenging the conduct on which the private claim is based, *see* 15 U.S.C. §16(i) (2000); (b) fraudulent concealment of the alleged wrongful conduct from a plaintiff who, in the exercise of reasonable diligence, would not have discovered it, *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 508 (3d Cir. 2006), *cert. denied*, 419 U.S. 1110 (1975); (c) conduct by defendant that induces plaintiff to refrain from filing suit until after limitations has run ("equitable estoppel"), *e.g., Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974); (d) threats of unlawful conduct by defendant that prevent plaintiff from filing on time ("duress"), *e.g., Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982), *cert. denied,* 459 U.S. 1105 (1983); or (e) the filing of a class action on behalf of a purported class that includes plaintiff, *e.g., Am. Pipe & Constr. Co.,414 U.S. 538*. The Amended Complaint contains no allegations of any such facts, and makes no claim that the statute of limitations has been tolled in any manner.

065537.1001

business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971); *accord Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190-91(1997).

### 1.    Foundry complains of alleged conduct by Alcatel occurring more than four years prior to filing suit.

The Amended Complaint alleges that Alcatel's wrongful conduct with respect to the patent application that matured into the '830 patent occurred more than four years prior to commencement of suit: according to Foundry, Alcatel violated the antitrust laws by failing to disclose, prior to the IEEE's adoption of the 802.1X standard, the fact that it had filed the application. (D.I. 20, Amended Complaint ¶ 55). The Amended Complaint alleges that that standard was adopted on June 14, 2001, more than five years before Foundry filed suit. (D.I. 20, Amended Complaint ¶ 26). The '830 patent issued on January 15, 2002, again more than four years before suit was filed. (D.I. 20, Amended Complaint ¶ 37). Thus, by a point in time more than four years prior to the filing of this suit, Alcatel's alleged failure to disclose its '830 patent application, the adoption of the standard allegedly as a result of the alleged failure to disclose, and Alcatel's alleged achievement of monopoly (or "near monopoly") power through issuance of the '830 patent had all taken place.

### 2.    Foundry admits that it was aware of Alcatel's alleged concealment of the '830 patent, and of its alleged consequences, more than four years before suit.

Foundry alleges that in April 2002 Alcatel disclosed the '830 patent to Foundry, accused it of infringement and demanded what Foundry contends were unreasonable licensing terms. (D.I. 20, Amended Complaint ¶ 38). What is more, Foundry claims that it responded to Alcatel's license demands "by informing Alcatel that *no matter what claims were included in the '830 patent*, Alcatel could not enforce the patent against it

given Alcatel's failure to comply with the IEEE Bylaws prior to the IEEE's adoption of the standard." (D.I. 20, Amended Complaint ¶ 39) (emphasis added). Thus, by April 2002—more than four years prior to suit—Foundry not only knew of the existence of the '830 patent, but it also believed that Alcatel had failed to disclose the patent in violation of the IEEE bylaw, and had formulated the same theory that it asserts here—that Alcatel's alleged violation of the IEEE bylaw precluded Alcatel from enforcing its rights under the '830 patent—*no matter what rights Alcatel claimed* in the technology.

3.    **By April 2002, not only was the '090 patent application a matter of public record, but Foundry knew that Alcatel claimed "substantially similar" rights.**

As seen above, from the face of the Amended Complaint it is apparent that, no later than April 2002, Foundry not only knew that Alcatel asserted patent rights with respect to technology relevant to the 802.1X standard, but also believed that Alcatel failed to disclose its patent application in violation of the IEEE bylaw and believed that Alcatel was consequently barred from enforcing those rights. While Foundry alleges that Alcatel's failure to disclose continued thereafter with regard to the '090 patent application and subsequent patent, Foundry could not have been misled by such alleged failure to disclose after April 2002, for at least two reasons. First, the Patent and Trademark Office published the '090 application on April 4, 2002, making it a matter of public record (*see* footnote 4, *supra*). Second, Foundry already knew, as of April 2002 (when Alcatel advised Foundry that it was infringing the '830 patent), that Alcatel claimed rights that Foundry characterizes as "substantially the same" as those claimed in the '090 application. (*See* D.I. 20, Amended Complaint ¶ 28: "The '090 patent application . . . had substantially the same specifications as the '830 patent application."). Nor could Foundry have "detrimentally relied" on any alleged failure by Alcatel to

10

disclose the existence of the '090 patent or application, because from April 2002 Foundry, by its own admission, knew that Alcatel asserted patent rights with respect to technology covered by the IEEE standard, although Foundry believed that it was immune from Alcatel's enforcement efforts, "no matter what rights" it tried to enforce. In short, any alleged failure by Alcatel to disclose the '090 patent or application to Foundry could not have injured Foundry, and therefore cannot serve to re-start the limitations period with respect to Foundry's antitrust claim.

    **4.**    **According to the Amended Complaint, the IEEE adopted the revised standard with actual knowledge that Alcatel asserted rights "substantially the same" as those covered by the '090 application.**

The Amended Complaint shows on its face that the IEEE's subsequent adoption of the revised 802.1X standard could not have been "subverted" by any alleged failure of Alcatel to disclose its patents or applications, for the complaint alleges that the IEEE adopted the revised standard with full and actual knowledge of Alcatel's '830 patent: Foundry admits that Alcatel submitted an "assurance" letter to the IEEE regarding the '830 patent in January 2003, long before the revised standard was adopted. (D.I. 20, Amended Complaint ¶ 40; *see also* ¶ 66 (allegedly delinquent nature of "Alcatel's assurance")).[6] Thus, long before it adopted the revised standard in 2004 (D.I. 20,

---

[6] The Amended Complaint omits the allegation, present in the Original Complaint, that the reason for Alcatel's failure to give an "assurance letter" prior to adoption of the original standard was Alcatel's belief that any patent that might result from its then-pending application was not "essential" within the meaning of the IEEE bylaw requiring disclosure only with respect to patents "essential for compliance" with the standard and therefore that Alcatel was not required to give an assurance with respect to that application.. (*Compare* the current allegation in Amended Complaint (D.I. 20) ¶ 40 *with* Original Complaint (D.I. 1) ¶ 33, which was as follows: ". . . Alcatel asserted that it was not required to provide any assurances, arguing that the '830 patent, which pertains to user authentication, is not 'essential' to practicing the 802.1X standard because that standard applies to authentication by either a user or a computer.").

Amended Complaint ¶ 43), the IEEE had actual knowledge of the '830 patent. It is difficult to imagine how knowledge of the "substantially similar" '090 patent application could have had any bearing on IEEE's decision to adopt the revised standard. Moreover, the '090 patent application had become a matter of public record at least a year before IEEE adopted the revised standard.

     **5.**     **Foundry's claim that it was "first damaged" three years after it discovered Alcatel's alleged wrongdoing is unavailing.**

Foundry seeks to escape the limitations bar by alleging that it was "first damaged" by Alcatel's alleged antitrust violation when Alcatel sued Foundry for infringement in August 2005, more than four years after Alcatel's alleged failure to disclose occurred and more than three years after Foundry claims to have discovered the alleged wrongdoing (D.I. 20, Amended Complaint ¶ 75).[7] This allegation, however, contradicts the litany elsewhere in the Amended Complaint of the supposed effects flowing from Alcatel's alleged nondisclosure: *i.e.*, that Alcatel's alleged failure to disclose the '830 application injured Foundry by denying it "the ability to assess the costs and benefits of the standard before adopting it (*i.e., ex ante*)" and "the opportunity to negotiate royalties *ex ante*, before Alcatel's patents were locked in" (D.I. 20, Amended Complaint ¶ 31); that in the absence of the IEEE's adoption of the standards as a result of Alcatel's alleged wrongdoing, "competition and innovation would have continued in the Technology Market at a much faster pace to the benefit of Foundry" (D.I. 20, Amended Complaint ¶ 67); that "Foundry would have had more options and lower prices with respect to user

---

[7] It is important to note that Foundry does *not* allege that its damages caused by Alcatel's alleged violations were not ascertainable prior to the filing of the infringement suit. Rather, Foundry's position as alleged in the Amended Complaint is that it was not injured at all by Alcatel's alleged wrongdoing until Alcatel filed the patent infringement claim in 2005,.

     

authentication technology" (D.I. 20, Amended Complaint ¶ 67); that Foundry might have avoided making investments in alleged reliance on the integrity of the IEEE standards process (D.I. 20, Amended Complaint ¶ 67); that Alcatel sought to coerce Foundry into accepting patent licenses it did not want (D.I. 20, Amended Complaint ¶ 70; *see also* ¶ 38), thereby putting Foundry at a competitive disadvantage (D.I. 20, Amended Complaint ¶ 70). Moreover, it is obvious from the face of the Amended Complaint that Foundry began incurring legal expenses with respect to Alcatel's patents at least as early as April 2002, when it responded to Alcatel's licensing demand by contending that Alcatel's rights were unenforceable because it had failed to comply with the IEEE bylaw. If having to pay lawyers to defend a patent infringement suit is "antitrust injury," then why is having to pay lawyers to respond to an "unreasonable" licensing demand by a "monopolist" not equally "antitrust injury"?

In considering a Motion to Dismiss, the Court is not required to accept as true Foundry's blatant attempt to avoid dismissal of a time-barred claim by adopting the position that its "first injury" occurred some three years after the alleged accomplishment of Alcatel's scheme. *See Morse v. Lower Merion Sch. Dist.*, 132 F3d 902, 906 (3d Cir. 1997) ("But a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." (citation omitted); *cf. Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286 (3rd Cir. 1995) ("But the fact that we must accept the plaintiffs' version of the facts as true does not mean that we must accept plaintiffs' characterization of those facts." (emphasis omitted) (rejecting effort by Chilean grape shippers to avoid "discretionary function" exception to Tort Claims Act by pleading that order banning import of Chilean grapes was the result of alleged negligent testing of

13

grapes). Foundry is not entitled to any presumption of truthfulness when it attempts to carefully plead around the statute of limitations. *Id*. ("We know of no authority for the proposition that plaintiffs, by the manner in which they draft their complaints, may dictate [what] their claims are 'based upon' . . . ."). Because Foundry's characterization of its first injury fundamentally contradicts both common sense and its own allegations of earlier injury elsewhere in the complaint, this Court may disregard the "first damage" allegation and find the antitrust claim barred by limitations.

> **6.     Foundry's Claim for Injunctive Relief is Barred, if not by Limitations, by Laches**

While the Ninth Circuit has held that the four-year antitrust statute of limitations does not govern claims for injunctive relief, *see Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*, 518 F.2d 913, 929 (9th Cir. 1975), *overruled in part on other grounds, California v. American Stores Co.*, 495 U.S. 271 (1990), other courts have assumed that the four-year statute applies equally to claims for injunctive relief. *E.g., Weinberger v. Retail Credit Co.*, 498 F.2d 552, 556 (4th Cir. 1974). In any event, for all the reasons discussed above, Foundry's claim for injunctive relief is barred by laches, if not by limitations. As the leading antitrust treatise observes, "extending the period during which a plaintiff may seek an injunction beyond the four-year statute of limitation should be justified only infrequently." II PHILLIP E. AREEDA, HERBERT HOVENKAMP & ROGER D. BLAIR, ANTITRUST LAW ¶ 320g at 237 (2d ed. 2000). The Court should be especially reluctant to countenance stale claims for injunctive relief where, as here, Plaintiff admits that it not only knew of the alleged wrongdoing, but actually asserted the same theory on which its antitrust suit rests (that Alcatel's failure to disclose rendered its patents

unenforceable; *see* D.I. 20, Amended Complaint ¶ 39), more than four years before filing
suit.

> **B.    Foundry Does Not Allege Facts Sufficient to Show that it Suffered Antitrust Injury Necessary to Establish Standing.**

Standing to sue for either damages under Clayton Act § 4, 15 U.S.C. § 15 (2000),
or injunctive relief under Clayton Act §16, 15 U.S.C. § 26 (2000), requires that an
antitrust plaintiff have suffered (or, for injunctive relief, be threatened with) "antitrust
injury," meaning, "injury of the type the antitrust laws were intended to prevent and that
flows from that which makes defendants' acts unlawful." *Brunswick Corp.*, 429 U.S. at
489 (Clayton Act § 4 damage suit); *see also Cargill, Inc. v. Monfort of Colorado, Inc.*,
479 U.S. 104 (1986) (extending standard to Clayton Act § 16). "[A] district court should
first address the issue whether the plaintiff suffered an antitrust injury. If antitrust injury
is not found, further inquiry is unnecessary." *City of Pittsburgh v. West Penn Power Co.*,
147 F.3d 256, 265 (3d Cir. 1998). Failure to allege facts sufficient to establish antitrust
injury is grounds for Rule 12(b)(6) dismissal. *See, e.g., id.* (upholding Rule 12(b)(6)
dismissal for lack of antitrust injury); *Moore Corp. Ltd. v. Wallace Computer Servs., Inc.*,
907 F. Supp. 1545, 1567 (D. Del. 1995) (granting Rule 12(b)(6) dismissal where the
plaintiff had "not alleged injury 'of the type the antitrust laws were intended to
prevent'"). Count One of Foundry's Amended Complaint should be dismissed for such a
failure.

> **1.    Foundry's alleged injury flows from Alcatel's exercise of valid patent rights, which is exempt conduct under the antitrust laws.**

Foundry's standing allegation (D.I. 20, Amended Complaint ¶ 76)—for good
reason—does not assert that Foundry suffered "injury of the type the antitrust laws were
intended to prevent." The crux of Foundry's complaint is that Alcatel denied Foundry

access to Alcatel's patented technology on terms Foundry preferred, and, after Foundry

declined the terms Alcatel offered, has now sued Foundry for infringement. (*See* D.I. 20,

Amended Complaint ¶ 75.).    Foundry's other alleged injuries—foreclosure of

competition and raising rivals' costs (D.I. 20, Amended Complaint ¶ 76)—derive from

the main injury; but for Alcatel's exercise of its rights to exclude under the Patent Act,

none of the secondary alleged injurious conditions would exist.    However, exercise of

legitimate patent rights to exclude others may violate the antitrust laws only in three

"exceptional circumstances"—"illegal tying, fraud in the Patent and Trademark Office, or

sham litigation." *In re Indep. Serv. Orgs. Antitrust Litig. ("In re ISO")*, 203 F.3d 1322,

1326-28 (Fed. Cir. 2000), *cert. denied*, 531 U.S. 1143 (2001).[8]  Foundry alleges none of

the three.  Because Foundry's alleged injuries stem from the enforcement of valid patent

rights—conduct immune from antitrust liability—they are not "antitrust injury."[9]

---

[8] Because Foundry's antitrust claim "necessarily depends on resolution of a substantial
question of federal [patent] law"—*i.e.*, the legality of Alcatel's enforcement of its '830
and '090 patents given its alleged breach of a disclosure duty and the construction of
those patents—the Federal Circuit has appellate jurisdiction.  *Christianson v. Colt
Industries Operating Corp.*, 486 U.S. 800, 808-09 (1988); *accord, Holiday Matinee, Inc.
v. Rambus, Inc.*, 118 Cal App. 4th 1413, 1425-26 (Cal. Ct. App. 2004) (holding claims
alleging violations of state antitrust and unfair competition statutes based on defendant's
alleged enforcement of patents after breaching disclosure duty to standard setting
organization required a showing that the claims were invalid and unenforceable and,
therefore, arose under federal patent law and were subject to exclusive federal
jurisdiction).  "[W]hether conduct in procuring or enforcing a patent is sufficient to strip
a patentee of its immunity from the antitrust laws is to be decided as a question of Federal
Circuit law." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed.
Cir. 1998).

[9] Foundry's allegation that Alcatel engaged in exclusionary conduct that violates § 2 of
the Sherman Act by instituting "hold-up litigation" (*see* D.I. 20, Amended Complaint ¶
69) similarly fails to state an actionable antitrust claim.  *See Abbott Labs. v. Teva
Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 430 (D. Del. 2006) ("[p]laintiffs may not use
litigation conduct to support a claim of an overall scheme to monopolize if they cannot
prove that the litigation was a sham.").

### 2.    No illegal tying is alleged to deny Alcatel antitrust immunity.

Foundry weakly refers to Alcatel's allegedly exclusionary conduct as including "tying practices," and then alleges that Alcatel "tied (i) its [contended essential] '830 and '090 patents . . . to (ii) its other [nonessential] patents." (D.I. 20, Amended Complaint ¶¶ 69 & 70). Foundry's allegations of package licensing practices by Alcatel, however, fall far short of establishing illegal tying as contemplated in *In re ISO* for several reasons.[10]

First, package licensing of essential patents with nonessential packages as alleged by Foundry is not per se illegal, nor is it likely to be illegal under the rule of reason given the recognized efficiencies it generates. *See U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1187-98 (Fed. Cir. 2005) (holding patent misuse not established because the alleged tying of patents essential to the practice of a standard with nonessential patents is not per se illegal, nor was illegality established under a rule of reason); *Globespanvirata, Inc. v. Texas Instruments, Inc.*, No. 03-2854 (GEB), 2006 WL 543155, at *6-10 (D.N.J. March 3, 2006) (applies reasoning of *U.S. Philips* in granting motion to dismiss per se tying claims alleging that a patent essential to the practice of a standard was tied with nonessential patents). Package licensing does not force a licensee to buy a product that it does not want, a central characteristic of illegal tying; rather it provides the licensee with a broad release from suit for infringing any of the patents in the "package." *U.S. Philips*, 424 F.3d at 1189-90. Additionally, the efficiencies and procompetitive benefits inherent in package licensing—*e.g.*, eliminating the need for multiple contracts, reduced transaction costs, and obviation of potential patent disputes—make antitrust condemnation inappropriate. *Id.* at 1192-93.

---

[10] For these same reasons, Foundry's allegations that Alcatel's "tying practices" constitute exclusionary conduct violative of Sherman Act § 2 fail to state an actionable antitrust claim.

Second, Foundry has failed to allege required elements to establish per se illegal tying. The first required element of per se illegal tying is that a "defendant sells two distinct products." *Gordon v. Lewiston Hosp.*, 423 F.3d 184, 214 (3d Cir. 2005); *see also Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984) ("a tying arrangement cannot exist unless two separate product markets have been linked"). For two products to be distinct, separate demand for the tied product must exist. *See Jefferson Parish*, 466 U.S. at 19-21 (no illegal tying arrangement possible unless "there is sufficient demand for the purchase of [the tied product] separate from [the tying product]"); *see also U.S. Philips*, 424 F.3d at 1193-95 (finding that the ITC's analysis that three nonessential patents "constituted separate products from the 'essential' patents in the package and that the package licensing agreements adversely affected competition in the market for the nonessential technology" was "flawed"). Foundry does not allege: (1) that any actual sale (or licensing) of the '830 and '090 patents with any other products occurred (indeed, Foundry alleges that it refused to agree to the alleged "tie"), (2) that the '830 and '090 patents are distinct products from the other nonessential patents that Alcatel allegedly sought to license in the same package, or (3) that independent demand exists for the unnamed, nonessential patents that Alcatel allegedly sought to include in its package license with the '830 and '090 patents.

Third, Foundry's Amended Complaint lacks the essential allegation necessary to plead illegal tying under the rule of reason: that Alcatel's alleged package licensing has any actual anticompetitive effect in the market for the unnamed, nonessential patents.[11]

---

[11] The central concern with illegal tying is that competition will be foreclosed not in the market in which the seller has market power (the "tying" market), but in the market for the products being tied. *See, e.g., Jefferson Parish*, 466 U.S. at 35 (J. O'Connor

*See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 519 (3d Cir. 1998) ("to succeed on a rule of reason claim the plaintiff must prove that the alleged tie 'unreasonably restrained competition'. . . . [t]his burden 'necessarily involves an inquiry into the actual effect of the [challenged conduct] on competition [in the tied market]'"). Foundry's omission is unsurprising given that tying arrangements frequently are procompetitive.[12]

### 3.    No *Walker Process* fraud or sham litigation is alleged to deny Alcatel antitrust immunity.

Foundry's Amended Complaint also fails to allege any facts to support application of either of the other two "exceptional circumstances" recognized in *In re ISO*. There are no allegations that Alcatel obtained its '830 or '090 patent as a result of fraud upon anyone, including upon the Patent and Trademark Office as deemed illegal in *Walker Process Equipment, Inc., v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965). Nor does the Amended Complaint allege anywhere that Alcatel's suit against Foundry for infringement of its '830 and '090 patents qualifies as "sham," *i.e.,* that it is "'both *objectively* baseless and *subjectively* motivated by a desire to impose collateral, anti-competitive injury rather than to obtain a justifiable legal remedy.'" *In re ISO*, 203 F.3d at 1326 (quoting *Nobelpharma*, 141 F.3d at 1071).[13]

---

concurrence) ("the purpose of tying law has been to identify and control those tie-ins that have a demonstrable exclusionary impact in the tied-product market").

[12] *See, ,e.g., Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 126 S. Ct. 1281, 1292 (2006) ("[m]any tying arrangements, even those involving patents and requirements ties, are fully consistent with a free, competitive market").

[13] The Amended Complaint does refer to Alcatel engaging in "baseless patent litigation" at some unspecified time in the past over some unspecified patent rights against, with one exception, unidentified parties. (D.I. 20, Amended Complaint ¶ 13). These allegations

4.      **Public policy considerations dictate against contravening *In re ISO* to expose alleged failures to disclose patent applications to private antitrust liability.**

Important public policy rationales exist for protecting patent application confidentiality and dictate against contravening *In re ISO* to fashion a new exception in circumstances such as alleged here where *only* confidential patent applications, not issued patents, are not disclosed to a standard setting organization prior to promulgation of a standard. *See* David J. Teece & Edward F. Sherry, *Standards Setting and Antitrust*, 87 Minn. L. Rev. 1913, 1964 (2003). These include:

- Uncertainty as to whether the patent will issue and, if it does, what its scope will be given that "the scope of patent claims is often narrowed (sometimes drastically) during the patent prosecution process." *Id.* at 1965.

- Uncertainty as to "whether a patent application will ultimately mature into a patent that reads on the proposed standard," making it "virtually impossible to set 'reasonable' ex ante licensing terms for the patent *if and when* it issues." *Id.* (Emphasis Added).

- And, the legitimate interest to avoid, at least for a time, a flood of flanking applications by other inventors that "can deprive the initial inventor [who is frequently engaged in multi-faceted research, the results of which develop over time] of the fruits of its invention." *Id.* at 1964.

Public comments filed by the IEEE with the Federal Trade Commission ("FTC") in connection with the FTC and Department of Justice joint public hearings on

---

are merely peripheral noise with no relevance to the objective merits of Alcatel's infringement suit against Foundry or its subjective motivation for bringing the suit.

065537.1001

"Competition and Intellectual Property Law and Policy in the Knowledge-Based Economy" ("Hearings") provide further policy authority against opening the door to private treble-damage and injunctive-relief antitrust claims deriving from failure to disclose patent applications to a standards setting organization such as the IEEE, even if nondisclosure violates the organization's rules. *See* Letter from B.C. Johnson, President, IEEE-SA, to Donald S. Clark in the FTC Office of the Secretary ("IEEE Comment") (April 17, 2002), *available at* http://www.ftc.gov/os/comments/ intelpropertycomments/ ieee.pdf (linking to all public comments received in connection with the Hearings).[14] The IEEE Comment states:

> Standards committees realize that until a patent has been issued there is very little value to disclosure since the scope of valid patent claims has not been determined. This is why it is not appropriate to group issued patents and applications together, especially in the context of antitrust policy where government action could have a significant impact on standards-setting procedures . . . . The assertion of patent rights against the use of a standard after its adoption is neither a violation of the patent holder's rights nor an abuse of the standards-setting process.

IEEE Comment, at 6.

### 5.    FTC law does not support finding antitrust injury.

Finally, Foundry's Amended Complaint foreshadows that it will invoke a body of administrative law promulgated by the FTC[15] that addresses alleged failures to disclose

---

[14] Additionally, the IEEE Comment is referenced in Appendix B of the FTC's published report of the Hearings, *To Promote Innovation: The Proper Balance of Competition and Patent Law and Policy*, A Report by the Federal Trade Commission, October 2003, at A-24, *available at* http://www.ftc.gov/os/2003/10/innovationrpt.pdf. The IEEE Comment is a matter of public record that the court may judicially notice and consider in deciding a motion to dismiss. *See Buck*, 452 F.3d at 260.

[15] The FTC cases are *In re Dell Computer Corp.*, 121 F.T.C. 616 (1996) (consent order); *In re Union Oil Co.*, No. C-4144, 2006 WL 2003349, F.T.C. July 27, 2005 (consent

patent rights to standard setting organizations under the FTC Act § 5, 15 U.S.C. § 45 (2000),[16] in an effort to overcome the correct conclusion that the facts alleged by it do not establish that Alcatel violated antitrust laws giving rise to antitrust injury. (*See* D.I. 20, Amended Complaint ¶ 72). This effort should fail.[17]

As a threshold, this FTC law, which includes two unadjudicated consent orders reflecting negotiated settlements, would not control this court's analysis of whether an assertion of patent rights in the circumstances alleged by Foundry has caused private antitrust injury. The FTC's legal conclusions in *Rambus*, which is still in administrative litigation to adjudicate a remedy, are subject to de novo review by a federal court of appeals. *See Schering-Plough Corp. v. FTC*, 402 F.3d 1056, 1063 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2929 (2006) ("[w]hile we afford the FTC some deference as to its informed judgment that a particular commercial practice violates the FTC Act, we review issues of law de novo;" reversing FTC decision that patent-splitting/reverse payment pharmaceutical patent infringement settlement violated antitrust laws). Indeed, as evidenced most recently by the Eleventh Circuit's rejection of the FTC's antitrust analysis in *Schering-Plough*, pioneering FTC theories of antitrust liability have not received universal acceptance by reviewing courts. *See also, e.g., Cal. Dental Ass'n v. FTC*, 224 F.3d 942 (9th Cir. 2000), *on remand from* 526 U.S. 756 (1999) (instructing

---

order); and, *In re Rambus, Inc.*, No. 9302, 2006 WL 2330117, F.T.C. July 31, 2006 (Commission decision setting aside the ALJ's initial decision) (Public Version issued Aug. 2, 2006).

[16] There is no private cause of action for violating Section 5 of the FTC Act. *See, e.g., Holloway v. Bristol Myers Corp.*, 485 F. 2d 986 (D.C. Cir. 1973).

[17] We know of no court decision that has assigned Sherman Act § 2 liability based upon a failure to disclose patent applications before a standard setting organization.

DB02:5555419.1                                                                                                065537.1001

FTC to dismiss case); *E.I. duPont de Nemours & Co. v. FTC*, 729 F.2d 128 (2d Cir. 1984) (overturning FTC decision). Nor do the two consent orders constitute any form of binding precedent. *See Beatrice Foods Co. v. FTC*, 540 F.2d 303, 312 (7th Cir. 1976) (a consent decree "is not a decision on the merits and therefore does not adjudicate the legality of any action [nor is it] controlling precedent for later [FTC] action").

Additionally, at least two critical factors distinguish the FTC case law for purposes of determining whether Foundry has alleged antitrust injury sufficiently. First, the FTC, which has broad, but different, remedial authority than a private plaintiff,[18] was not required to—and did not—consider whether antitrust injury existed to find a violation of FTC Act § 5 in any of its three standard-setting matters. The FTC did not determine that a patent applicant that allegedly subverts the standard-setting process by not disclosing its applications inflicts antitrust injury upon an infringer when it later enforces its patents. *Rambus* simply establishes that, to the extent certain flagrant conduct by a patent holder in a standard setting environment may offend antitrust laws, it may be punishable—but through the relief available to the FTC under its statutory authority, not by a private plaintiff unable to establish antitrust injury.

Second, important differences distinguish the facts involved in the one administratively-adjudicated FTC case, *Rambus*, from those alleged by Foundry. The offending conduct in *Rambus* included a failure to disclose *issued* patents prior to promulgation of a standard. It was not a case, as is alleged by Foundry, of failing *only* to disclose patent applications prior to standard promulgation. For reasons discussed above,

---

[18] The remedies statutorily available to the FTC are: cease and desist orders, FTC Act § 5(b), 15 U.S.C. § 45(b) (2000); civil penalties, FTC Act §§ 5(l) and 5(m), 15 U.S.C. §§ 45(l) and (m) (2000); consumer redress, FTC Act § 19(b), 15 U.S.C. § 576(b) (2000); and, preliminary and permanent injunctions, FTC Act § 13(b), 15 U.S.C. § 53(b) (2000).

this is a critical distinction with important policy ramifications that weigh against subjecting Alcatel's alleged conduct to private antitrust attack. In addition, *Rambus* involved a factual scenario that includes affirmative acts of deception that far exceed the passive failure to disclose alleged of Alcatel, including: repeatedly evading direct questions about its patent portfolio; attempting to diffuse suspicion, when it arose, through a nonresponsive answer coupled "with a reminder that it previously had disclosed a patent (which lacked any claims then relevant to JEDEC's work)" and, providing "JEDEC with a list of its patents that omitted the one patent Rambus believed covered JEDEC's work." *Rambus*, 2006 WL 2330117 at \*21.

C.    **The Amended Complaint Should be Dismissed for Failure to Allege a Relevant Market.**

1.    **A plaintiff's failure to allege a relevant market with reference to the rule of reasonable interchangeability is grounds for dismissal.**

Defining a relevant market is an essential element of a claim that a defendant has engaged in unlawful monopolization or attempt to monopolize. *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 455 (1993). Without a definition of the relevant market, "there is no way to measure [a defendant's] ability to lessen or destroy competition." *Walker Process Equip.*, 382 U.S. at 177.

Defining a relevant market involves identifying "those groups of producers which, because of the similarity of their products, have the ability—actual or potential—to take significant amounts of business away from each other." *SmithKline Corp. v. Eli Lilly & Co.,* 575 F. 2d. 1056, 1063 (3d Cir.), *cert. denied,* 439 U.S. 838 (1978). This requires assessing the extent to which products are "reasonably interchangeable" with one another in terms of their use. "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-

elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

Plaintiff has the burden of defining the relevant market. *E.g., Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). Failure to carry that burden warrants dismissal under Rule 12(b)(6):

> Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).

### 2. Foundry makes no attempt to allege a relevant market with reference to the rule of reasonable interchangeability.

According to the Amended Complaint, the "market to which the IEEE standard pertains" (D.I. 20, Amended Complaint Intro) and the market that Alcatel has allegedly monopolized or attempted to monopolize (D.I. 20, Amended Complaint ¶¶ 71, 73-74), is "the technology market for user authentication for port-based network access to LANs." (D.I. 20, Amended Complaint Intro). This single assertion is the sole description of the supposedly "relevant market" in the entire Amended Complaint. Aside from asserting that the supposed "market" consists of technology, rather than of products embodying technology, the Amended Complaint says virtually nothing about the "market," such as who the buyers and sellers are other than Alcatel, approximately how large the "market" is, whether substitute technology exists, and why possible substitutes for "user

25

authentication" technology are not reasonably interchangeable with it.[19] Under the rule announced by the Third Circuit in *Queen City Pizza*, it is not enough for a plaintiff to simply assert—as Foundry does—that something is a relevant market. *Queen City Pizza*, 124 F.3d at 436. Rather, Foundry must, in order to avoid dismissal, describe its alleged market "with reference to the rule of reasonable interchangeability"—*i.e.*, it must allege, at a minimum that there is no other technology that is reasonably interchangeable with the technology that it has chosen to identify as its relevant market. *Id.* As the Third Circuit held in *Queen City Pizza,* "a motion to dismiss may be granted" for Foundry's fundamental failing in this respect. *Id.*

### D.  Foundry's Fraud Claims are Time-Barred.

Foundry asserts three instances of fraud in its Amended Complaint: (1) Alcatel's alleged failure to disclose the '830 Patent Application prior to the IEEE's adoption of the 802.1X standard; (2) Alcatel's alleged failure to disclose the '090 Patent Application prior to the IEEE's adoption of the 802.1X standard, and its subsequent revision of that standard; and (3) Alcatel's allegedly false assurance to the IEEE that it would license the '830 Patent on reasonable and nondiscriminatory terms. (D.I. 20, Amended Complaint ¶¶ 79–89). Unfortunately for Foundry, straightforward application of Delaware law requires dismissal of these claims as time-barred.

---

[19] As noted above in footnote 6, Foundry's Original Complaint (D.I. 1, Complaint ¶ 33) alluded to the existence of "computer authentication" technology and to Alcatel's belief that, since it was possible to comply with the IEEE standards by using computer authentication technology instead of the user authentication technology covered by Alcatel's patents in question, the Alcatel patents were not "essential for compliance" with the standard.  The Amended Complaint (*see* D.I. 20, Amended Complaint ¶ 40) omits these allegations and makes no attempt to allege that computer authentication technology is not reasonably interchangeable with user authentication technology.  If, in fact, computer authentication technology is reasonably interchangeable with user authentication technology, then user authentication technology alone is not a relevant market.

### 1.    Nondisclosure of the '830 Patent Application

Because Foundry is a Delaware citizen, the state's three-year statute of limitations applies to its fraud claims. Del. Code Ann. tit. 10, §§ 8106, 8121 (2006); *Walker v. W. Mich. Nat'l Bank & Trust*, 324 F. Supp. 2d 529, 535 (D. Del. 2004). This statute plainly precludes Foundry's assertion of any claim for fraud arising from Alcatel's alleged failure to disclose the '830 Patent Application. Foundry alleges that the IEEE adopted the 802.1X standard in June 2001. (D.I. 20, Amended Complaint ¶ 28). Foundry further alleges that Alcatel's failure to disclose the then-pending '830 patent application prior to the IEEE's adoption of this 802.1X standard injured Foundry by denying it "the ability to assess the costs and benefits of the standard before adopting it (*i.e., ex ante*)" and "the opportunity to negotiate royalties *ex ante*, before Alcatel's patents were locked in." (D.I. 20, Amended Complaint ¶ 31). But critically, Foundry admits that Alcatel disclosed the '830 Patent to Foundry more than four years before Foundry filed suit in August 2006: "In April 2002, Alcatel for the first time disclosed to Foundry the existence of the '830 Patent and Alcatel's assertion that Foundry's practice of the 802.1X standard infringed its patent." (D.I. 20, Amended Complaint ¶ 38). Foundry's claim for fraud arising from Alcatel's alleged nondisclosure of the '830 Patent Application is time-barred and must be dismissed. *See Teachers' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654, 667 & n.14 (Del. Ch. 2006).

### 2.    Nondisclosure of the '090 Patent Application

Foundry's fraud claim arising from Alcatel's alleged nondisclosure of the '090 Patent Application is similarly time-barred. Under Delaware law, "[i]nquiry notice [of a cause of action] exists where a person has knowledge of such facts as would lead a fair and prudent person using ordinary care to make further inquiries." *Teachers' Ret. Sys. of*

*La.*, 900 A.2d at 667 n.13.  Accordingly, "[i]nquiry notice does not require actual discovery of the reason for the injury.  Nor does it require plaintiffs' awareness of all of the aspects of the alleged wrongful conduct.  Rather, the statute of limitations begins to run when plaintiffs should have discovered the *general fraudulent scheme*."  *Id.* (emphasis added).

Foundry admits that it had knowledge of the '830 patent, and of Alcatel's belief that Foundry's practice of the 802.1X standard infringes the '830 patent, no later than April 2002.  (D.I. 20, Amended Complaint ¶ 38).  As noted earlier,[20] the USPTO published the '090 patent application, which Foundry alleges "had a specification and claims that were substantially similar to those of the '830 patent," that same month.  (D.I. 20, Amended Complaint ¶ 42).  With knowledge of the '830 patent, Foundry could have discovered the published, publicly-available '090 patent application—a continuation of the '830 patent—with minimal effort.  A thirty-second search on the USPTO's web site would have uncovered it.  Given the ease with which Foundry could have discovered the '090 patent application, Foundry unquestionably had constructive knowledge of the application no later than April 2002—again, more than four years before Foundry filed suit in August 2006.  For this reason, Foundry's fraud claim arising from Alcatel's alleged nondisclosure of the '090 patent application must also be dismissed.  *See Van de Walle v. Salomon Bros., Inc.*, 733 A.2d 312, 315 n. 10 (Del. Ch. 1998) (holding that "[i]nquiry notice starts the running of the statute of limitations 'when the victim of the alleged fraud became aware of facts that would have led a reasonable person to investigate whether he might have a claim,' including facts 'available in the public domain'" (citation omitted)).

---

[20]  This Court may take judicial notice of the '090 Patent Application's publication date of April 4, 2002, and Alcatel requests that the Court do so.  *See supra* note 4.

In any event, the deficiency of Foundry's pleadings mandates dismissal of any fraud claim arising from Alcatel's alleged nondisclosure of the '090 patent application. Foundry asserts that Alcatel's duty to disclose the application arose and was breached no later than June 2001—more than five years before Foundry filed suit. (D.I. 20, Amended Complaint ¶¶ 28, 80). To obtain the benefit of the discovery rule, Foundry must plead "specific facts to demonstrate that the statute of limitations was, in fact, tolled." *In re Dean Witter P'ship Litig.*, No. Civ. A. 14816, 1998 WL 442456, at *6 (Del. Ch. Jul. 17, 1998), *aff'd,* 725 A.2d 441 (Del. 1999). Whether inadvertently or artfully, Foundry's Amended Complaint fails to disclose when Foundry discovered the '090 patent application. The absence of this information raises the possibility that Foundry had actual knowledge of the '090 Patent Application more than three years before it filed suit. This alone requires dismissal of any fraud claim arising from Alcatel's alleged nondisclosure of the '090 Patent Application. *See id.*

### 3. Assurance to the IEEE regarding the '830 Patent

Finally, Foundry alleges that Alcatel committed fraud by lying to the IEEE about its intention to license the '830 Patent: "Alcatel's January 13, 2003, representation to the IEEE providing assurance that it would license its '830 patent technology on reasonable and nondiscriminatory terms was false and misleading and, upon information and belief, was intended to be so." (D.I. 20, Amended Complaint ¶ 86). But Foundry also alleges that Alcatel had previously disclosed the terms on which it was willing to license the '830 Patent to Foundry in April 2002: "Nor did Alcatel offer to license Foundry on reasonable terms. Indeed, Alcatel was willing to consider licensing the '830 patent as part of a package containing other patents that Alcatel does not contend are essential to practicing the 802.1X standard . . . ." (D.I. 20, Amended Complaint ¶ 38). Alcatel made no secret

of the terms on which it was willing to license the '830 Patent—and Foundry was unquestionably aware of those terms well in advance of Alcatel's allegedly false representation to the IEEE in January 2003. For this reason, the three-year statute of limitations for any fraud claim arising from that representation lapsed months before Foundry filed suit in August 2006. *See Teachers' Ret. Sys. of La.,* 900 A.2d at 667 & n.14.

### E.     Alternatively, the Court Should Decline to Exercise Jurisdiction Over Foundry's Fraud Claim.

Given that the Court's jurisdiction over Foundry's fraud claim is founded upon discretionary supplemental jurisdiction, (*see* D.I. 20, Amended Complaint ¶ 2), even if the Court were not to dismiss the fraud claim on limitations grounds, it should decline to exercise jurisdiction over it. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well"). "'Where the federal element which is the basis for jurisdiction is disposed of early in the case, as on the pleadings, it smacks of the tail wagging the dog to continue with a federal hearing of the state claims.'" *Ingram Corp. v. J. Ray McDermott & Co.,* 698 F.2d 1295, 1318-19 (5th Cir. 1983) (quoting *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 616 (8th Cir. 1980)). None of the considerations that have been said to support the discretionary exercise of jurisdiction over state law claims after dismissal of the federal claims in extraordinary cases—such as considerations of judicial economy, convenience and fairness or the existence of important federal policies—would justify a continuation of this lawsuit in a federal forum.

V.     **Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court dismiss

the Amended Complaint.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

ATTORNEYS FOR DEFENDANTS
ALCATEL USA RESOURCES, INC., AND
ALCATEL INTERNETWORKING, INC.

OF COUNSEL
Robert W. Kantner
Mary L. Scott
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6500

G. Irvin Terrell
Rufus W. Oliver III
Scott Partridge
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
(713) 229-1234

Dated:  October 11, 2006

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on October 11, 2006, I caused to be electronically

filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which

will send notification that such filing is available for viewing and downloading to the following counsel

of record:

> Philip A. Rovner, Esquire
> Potter Anderson & Corroon LLP
> 1313 N. Market Street
> Wilmington, DE 19801

I further certify that on October 11, 2006, I caused a copy of the foregoing document to be served

by hand delivery on the above-listed counsel of record and on the following non-registered participants in

the manner indicated:

**BY E-MAIL  ON OCTOBER 11, 2006
AND U.S. MAIL ON OCTOBER 12, 2006**

William L. Anthony, Esquire
*wanthony@orrick.com*
Matthew H. Poppe, Esquire
*mpoppe@orrick.com*
Michael F. Heafey, Esquire
*mheafey@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
650-614-7400

Garret G. Rasmussen, Esquire
*grasmussen@orrick.com*
Antony P. Kim, Esquire
*akim@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
Washington Harbour
3050 K Street, N.W.
Washington, DC 20007-5135
202-339-8400

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
*jingersoll@ycst.com*
John W. Shaw (No. 3362)
*jshaw@ycst.com*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600