## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FOUNDRY NETWORKS, INC.,<br>    a  Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 06-470-SLR |
| ALCATEL USA RESOURCES, INC.<br>    a Delaware Corporation,<br>ALCATEL INTERNETWORKING, INC.,<br>    a California Corporation,<br>COMPAGNIE FINANCIÈRE ALCATEL<br>    a French Corporation, and<br>ALCATEL S.A.,<br>    a French Corporation, | ) ) ) ) ) ) ) ) ) | (JURY TRIAL DEMANDED)<br><br>**PUBLIC VERSION** |
| Defendants. | ) | |

## FOUNDRY'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Of Counsel:
William L. Anthony
Matthew H. Poppe
Michael F. Heafey
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, California  94025
(650) 614-7400

Garret G. Rasmussen
Antony P. Kim
Orrick, Herrington & Sutcliffe LLP
Washington Harbour
3050 K Street, N.W.
Washington, DC 20007-5135
(202) 339-8400

Dated:  November 22, 2006
Public Version: November 30, 2006

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware  19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorneys for Plaintiff*
*Foundry Networks, Inc.*

## TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDING ..........................................................1

II.     SUMMARY OF ARGUMENT..........................................................................2

III.    STATEMENT OF FACTS................................................................................3

IV.     ARGUMENT ...............................................................................................6

        A.    Federal Circuit Law Does Not Apply Because Foundry's
              Sherman Act Claim Does Not "Arise Under" The Patent
              Laws.........................................................................................................6

        B.    Personal Jurisdiction Over Defendants Is Proper Under
              Section 12 of the Clayton Act...................................................................10

              1. The Text and Legislative History of Section 12 Do Not
                 Unambiguously Support an Interpretation that Invoking
                 Worldwide Service is "Subject To" Satisfying the Specific Venue
                 Clause in Section 12............................................................................11

              2. The Alien Venue Statute Properly Establishes Venue For Purposes
                 of Invoking Section 12's Worldwide Service Provision........................13

              3. Analogous Statutory Provisions Support The Third Circuit's
                 Approach In Auto. Refinishing...............................................................16

        C.    Personal Jurisdiction Under the Federal Antitrust Laws Is
              Proper, And Comports With Due Process, Based On
              Defendants' Aggregate Contacts With The United States As
              A Whole, or Alternatively, Based on Defendants' Contacts
              With Delaware. ......................................................................................18

              1. Defendants' Contacts With the United States Provide A Sufficient
                 Basis for the Court to Exercise Specific Personal Jurisdiction..............19

                    a.    Defendants Directed Their Tortious Conduct Toward the
                          United States and Delaware and Their Employees
                          Personally Appeared Here in Connection Therewith ................19

                    b.    Personal Jurisdiction Is Also Proper Under an Agency
                          Theory Because Defendants Acted in The United States
                          and Delaware Through Their Subsidiaries ................................21

2. Defendants' Contacts With the United States Provide a Sufficient Basis for the Court to Exercise General Personal Jurisdiction. .............24

3. Defendants Failed To Show That This Court's Exercise Of Personal Jurisdiction Would Violate Due Process.................................25

D.    Federal Rule of Civil Procedure 4(k)(2) Subjects Defendants To Personal Jurisdiction In This District. ..................................................26

E.    Personal Jurisdiction Over Defendants Is Also Proper Under Delaware's Long-Arm Statute. .................................................................29

F.    Jurisdictional Discovery Is Warranted Should This Court Find That It Lacks The Facts To Deny Defendants' Motion. ............................31

V.    CONCLUSION ......................................................................................................33

## TABLE OF AUTHORITIES

### CASES

*A+ Network, Inc. v. Shapiro,*
    960 F. Supp. 123 (M.D. Tenn. 1997)..............................................................................18

*Access Telecom, Inc. v. MCI Telecomm. Corp.,*
    197 F.3d 694 (5th Cir. 1999), *cert. Denied,* 531 U.S. 917 (2000)........................18, 25

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.,*
    368 F.3d 1174 (9th Cir. 2004) ...............................................................................14, 17

*Aetna Health Inc. v. Davila,*
    542 U.S. 200 (2004)................................................................................................9

*Altman v. Bayer Corp.,*
    125 F. Supp. 2d 666 (S.D.N.Y. 2000)..............................................................................10

*Am. Safety Equip. Corp. v. J. P. Maguire & Co.,*
    391 F.2d 821 (2d Cir. 1968)..............................................................................26

*American Well Works Co. v. Layne And Bowler Co.,*
    241 U.S. 257 (1916)................................................................................................7

*Amtrol, Inc. v. Vent-Rite Valve Corp.,*
    646 F. Supp. 1168 (D. Mass. 1986) ..............................................................................19

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
    772 F. Supp. 1458 (D. Del. 1991)..............................................................................22

*Audio Warehouse Sales, Inc. v. U.S. Pioneer Elecs. Corp.,*
    1975 U.S. Dist. LEXIS 13422 (D.D.C. 1975))..............................................................23

*In re Auto. Refinishing Paint Antitrust Litig.,*
    358 F.3d 288 (3d Cir. 2004)........................................................................... passim

*BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.,*
    229 F.3d 254 (3d Cir. 2000)..............................................................................27

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
    21 F.3d 1558 (Fed. Cir. 1994)..............................................................................31

*Boone v. Oy Partek AB,*
    724 A.2d 1150 (Del. Super. Ct. 1997) ..............................................................................30

*Bulk (Extruded) Graphite Prods. Antitrust Litig.,*
    C.A. No. 02-6030-WHW, 2006 WL 1084093 (D.N.J. Apr. 24, 2006)........................22

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.,*
    406 U.S. 706 (1972)..................................................................................................15, 16

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985).......................................................................................................25

*Calder v. Jones,*
    465 U.S. 783 (1984)..................................................................................................21, 22

*Caribe Trailer Sys., Inc. v. Puerto Rico Maritime Shipping Auth.,*
    475 F. Supp. 711 (D.D.C. Apr. 19, 1979).....................................................................22

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800 (1988).......................................................................................2, 7, 8, 10

*Chrysler Corp. v. Gen. Motors Corp.,*
    589 F. Supp. 1182 (D.D.C. May 29, 1984)....................................................................23

*In re Ciprocloxacin Hydrochloride Antitrust Litig.,*
    166 F. Supp. 2d 740 (E.D.N.Y. 2001) .............................................................................9

*Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.,*
    395 F.3d 1315 (Fed. Cir. 2005)......................................................................................32

*Cumberland Truck Equip. Co., v. Detroit Diesel Corp.,*
    401 F. Supp. 2d 415 (E.D. Pa. 2005) .......................................................................12, 15

*Daniel v. Am. Bd. of Emergency Medical,*
    428 F.3d 408 (2d Cir. 2005)...........................................................................................15

*Dardana Ltd. v. A.O. Yuganskneftegaz,*
    317 F.3d 202 (2d Cir. 2003).....................................................................................18, 27

*Daynard v. Ness,*
    290 F.3d 42 (1st Cir. 2002).............................................................................................22

*DeJames v. Magnificence Carriers, Inc.,*
    654 F.2d 280 (3d Cir. 1981)............................................................................................26

*Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.,*
    982 F. Supp. 1138 (E.D. Va. 1997) ........................................................................14

*Eastman Kodak Co. v. S. Photo Materials Co.,*
    273 U.S. 359 (1927)...............................................................................................22

*EFCO Corp. v. Iowa Ass'c of Bus. and Indus.,*
    No. 4:06-cv-00068-JEG, 2006 WL 2457483 (S.D. Iowa Aug. 23, 2006)..................10

*Engineering Equip. Co. v. S.S. Selene,*
    446 F. Supp. 706 (S.D.N.Y. 1978) ........................................................................26

*First Flight Co. v. Nat'l Carloading Corp.,*
    209 F. Supp. 730 (D. Tenn. 1962) ........................................................................26

*Friedman et al. v. Alcatel, et al.,*
    752 A.2d 544 (Del. Ch. 1999).................................................................................30

*GTE New Media Servs. Inc. v. BellSouth Corp.,*
    199 F.3d 1343 (D.C. Cir. 2000) .............................................................................15

*General Aircraft Corp. v. Air Am., Inc.,*
    482 F. Supp. 3 (D.D.C. 1979).................................................................................13

*Gen. Elec. Co. v. Bucyrus-Erie Co.,*
    550 F. Supp. 1037 (S.D.N.Y. 1982)........................................................................11

*Giusto v. Ashland Chem. Co.,*
    994 F. Supp. 587 (E.D. Pa. 1998) .........................................................................19

*Go-Video, Inc. v. Akai Elec. Co.,*
    885 F.2d 1406 (9th Cir. 1989) .......................................................................... passim

*Hadley v. Shaffer,*
    C.A. No. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003).............................6

*Haisten v. Grass Valley Med. Reimbursement Fund Ltd.,*
    784 F.2d 1392 (9th Cir. 1986) ...............................................................................22

*Hansen v. Neumueller GmbH,*
    163 F.R.D. 471 (D. Del. 1995) ........................................................................31, 32

*Hildebrand v. Steck Mfg. Co.*,
    279 F.3d 1351 (Fed. Cir. 2002)............................................................................9

*IMO Industries, Inc .v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998)...........................................................................22

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
    256 F.3d 548 (7th Cir. 2001) .....................................................................27, 28

*In re ISO*,
    203 F.3d 1322 (Fed. Cir. 2000).......................................................................9

*Icon Indus. Controls Corp. v. Cimetrix, Inc.*,
    921 F. Supp. 375 (W.D. La. 1996)..................................................................15

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
    410 F. Supp. 2d (E.D. Ky. 2006) ....................................................................14

*LaNuova D & B, S.p.A. v. Bowe Co.*,
    513 A.2d 764 (Del. 1986) ..............................................................................31

*Leasco Data Processing Equip. Corp. v. Maxwell*,
    468 F.2d 1326 (2d Cir. 1972)..........................................................................16

*In re Lupron Mktg. and Sales Practices Litig.*,
    245 F. Supp. 2d 280 (D. Mass. 2003) .............................................................27

*MCI Communications Corp. v. AT&T*,
    1983 U.S. Dist. LEXIS 13066 (D.D.C. Oct. 4, 1983)......................................22

*M & L of Del., Inc. v. Wallace*,
    C.A. No. 03-521-KAJ, 2004 WL 2370708 (D. Del. Oct. 18, 2004).............................6

*MM Global Servs. Inc. v. The Dow Chem. Co.*,
    404 F. Supp. 2d 425 (D. Conn. 2005)..............................................................20

*Martinez v. Bally's La., Inc.*,
    244 F.3d 474 (5th Cir. 2001) .........................................................................28

*McGee v. Int'l Life Ins. Co.*,
    355 U.S. 220 (1957)......................................................................................19

*Mobil Oil Corp. v. Linear Films, Inc.*,
    718 F. Supp. 260 (D. Del. 1989).....................................................................23

*Mulcachey v. Columbia Organic Chemicals Co., Inc.,*
  29 F.3d 148 (4th Cir. 1994) .......................................................................................10

*Myers v. America Dental Associate, V.I.,*
  695 F.2d 716 (3d Cir. 1982)........................................................................................13

*Nobelpharma AB v. Implant Innovations, Inc.,*
  141 F.3d 1059 (Fed. Cir. 1998)....................................................................................9

*One World Botanicals v. Gulf Coast Nutritionals,*
  987 F. Supp. 317 (D.N.J. 1997) ..................................................................................19

*Padcom, Inc. v. NetMotion Wireless, Inc.,*
  C.A. No. 03-983-SLR, 2004 U.S. Dist. LEXIS 9658 (D. Del. May 24, 2004) ...........30

*Paper Sys. Inc. v. Mitsubishi Corp.,*
  967 F. Supp. 364 (E.D. Wis. 1997)........................................................................14, 17

*Perkins v. Benguet Consol. Mining Co.,*
  342 U.S. 437 (1952)....................................................................................................24

*Phoenix Canada Oil Co. v. Texaco, Inc.,*
  842 F.2d 1466 (3d Cir.), *cert. denied*, 488 U.S. 908 (1988).......................................22

*Pinker v. Roche Holdings, Ltd.,*
  292 F.3d 361 (3d Cir. 2002).....................................................................6, 17, 18, 24

*Pure Oil v. Suarez,*
  384 U.S. 202 (1966)....................................................................................................13

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,*
  148 F.3d 1355 (Fed. Cir. 1998)..............................................................................21, 28

*Renner v. Lanard Toys Ltd.,*
  33 F.3d 277 (3d Cir. 1994)..........................................................................................31

*Simon v. Philip Morris, Inc.,*
  86 F. Supp. 2d 95 (E.D.N.Y. 2000) ............................................................................22

*Societe Nationale Industrielle Aerospatiale v. United States,*
  482 U.S. 522 (1987).....................................................................................................32

*STMicroelectronics, Inc. v. Harari,*
  No. C 05-4691 JF, 2006 WL 734401 (N.D. Cal. Mar. 20, 2006) .................................10

*In re Tamoxifen Citrate Antitrust Litigation,*
    466 F.3d 187, 2006 WL 2401244 (2d Cir. 2006) .........................................................8

*Taylor v. Anderson,*
    234 U.S. 74 (1914)...........................................................................................10

*Telcordia Techns., Inc. v. Alcatel S.A.,*
    C.A. No. 04-874-GMS, 2005 WL 1268061 (D. Del. May 27, 2005) .....................27, 29

*In Re Teknek, LLC,*
    No. 05 B 27545, 2006 WL 2959506 (N.D. Ill. Bnkr. Oct. 16, 2006) ..........................22

*Toys "R" Us, Inc. v. Step Two, S.A.,*
    318 F.3d 446 (3d Cir. 2003)................................................................................13, 24

*Union Planters Bank, N.A. v. EMC Mortgage Corp.,*
    67 F. Supp. 2d 915 (W.D. Tenn. 1999).....................................................................13

*United States v. Int'l Bhd. Of Teamsters,*
    945 F. Supp. 609 (S.D.N.Y. 1996) .........................................................................28

*United States v. Margiotta,*
    662 F.2d 131 (2d Cir. 1981), *cert. denied,* 461 U.S. 913 (1983)..................................28

*United States v. McKeon,*
    738 F.2d 26 (2d Cir.1984)......................................................................................28

*United States v. Nat'l City Lines,*
    334 U.S. 573 (1946).............................................................................................12

*United States v. Scophony Corp. of Am.,*
    333 U.S. 795 (1948).........................................................................................13, 22

*United States v. Swiss Am. Bank, Ltd.,*
    191 F.3d 30 (1st Cir. 1999)....................................................................................28

*In re Vitamins Antitrust Litig.,*
    2001 U.S. Dist. LEXIS 25073 (D.D.C. Oct. 30, 2001)...........................................22, 24

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,*
    863 F. Supp. 186 (D. Del. 1993)..............................................................................23

*Williamson v. Petrosakh Joint Stock Co.,*
    952 F. Supp. 495 (S.D. Tex. 1997).........................................................................22

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000).................................................................22

## STATUTES AND RULES

15 U.S.C. § 2................................................................ passim

15 U.S.C. § 12.............................................................. passim

15 U.S.C. § 15...................................................................11

15 U.S.C. § 22 .............................................................10, 11

15 U.S.C. § 26...................................................................11

15 U.S.C. § 78 aa .........................................................16, 17

18 U.S.C. § 1965(a) ............................................................17

18 U.S.C. § 1965(d) ............................................................17

28 U.S.C. § 1295(a)(1)...........................................................7

28 U.S.C. § 1391(d) ..................................................... passim

10 *Del. C.* § 3104(c)....................................................... passim

Fed. R. Civ. P. 4(k)(2)................................................... passim

Fed. R. Civ. P. 12 (b)(2).................................................. passim

Fed. R. Civ. P. 12(b)(6).................................................. passim

## MISCELLANEOUS

AREEDA & HOVENKAMP, ANTITRUST LAW ¶ 271 (2004).....................................18

Irving Scher, ANTITRUST ADVISER § 6:10 (4th ed. 2005) .........................................17

15 Wright & Miller, *Federal Practice and Procedure*, § 3818 at 108-109 (1976).....12, 13

## I.    NATURE AND STAGE OF PROCEEDING

Plaintiff Foundry Networks, Inc. ("Foundry") filed its original Complaint (D.I. 1)

on August 1, 2006 and an Amended Complaint (D.I. 20) on August 16, 2006. The

Amended Complaint alleges an antitrust violation under the Sherman Act, 15 U.S.C. § 2,

and common law fraud. Defendants in the action are Alcatel S.A. ("Alcatel (France)"),

Compagnie Financière Alcatel ("CFA"), Alcatel USA Resources, Inc. ("Alcatel

Resources"), and Alcatel Internetworking, Inc. ("AII"). On October 11, 2006, the Alcatel

entities moved under Rule 12(b)(6) for failure to state a claim, and Alcatel (France) and

CFA (collectively, "Defendants") moved to dismiss under Rule 12(b)(2) for lack of

personal jurisdiction.[1]  For the reasons stated herein, personal jurisdiction over Alcatel

(France) and CFA in this action is entirely proper and the Defendants' motion should be

denied.

## II.    SUMMARY OF ARGUMENT

The Third Circuit clearly holds that under Clayton Act § 12, personal jurisdiction

over a foreign antitrust defendant is proper in *any* U.S. forum provided the defendant has

sufficient *national* (aggregate) contacts with the United States. *See In re Auto.*

*Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 296-97 (3d Cir. 2004). Contrary to

Alcatel (France)'s and CFA's arguments, there is no further requirement that Section 12's

specific venue clause be satisfied. *Id.* As discussed below, Alcatel (France)'s and CFA's

contacts with the U.S. are extensive and more than sufficient for personal jurisdiction to

attach.

---

[1]  Foundry is filing a separate answering brief in response to the 12(b)(6) motion.

Defendants attempt to avoid *Auto. Refinishing* by arguing that Federal Circuit law controls this Court's jurisdictional analysis. However, Foundry's antitrust complaint does not "arise under" the patent laws; nor is a single claim in the complaint created, defeated, or sustained by a construction of the patent laws. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988). Contrary to Defendants' arguments, this Court does *not* have to construe the '830 or '090 patents nor decide whether Alcatel improperly "procured or enforced a patent." Rather, Foundry is alleging that Defendants' deceptive conduct with respect to standard-setting activities at the IEEE resulted in anticompetitive harms that violated Sherman Act § 2.

Moreover, even if Federal Circuit law did control, this Court would still have personal jurisdiction over the Defendants for two reasons. First, there is no basis for the Defendants' bald assertion that the Federal Circuit (which the Defendants concede has never addressed the issue) would reject the Third Circuit's interpretation of Clayton Act § 12 for jurisdiction in federal antitrust cases. Second, even under a narrow local-contacts analysis (as distinct from the applicable national-contacts analysis), Alcatel (France) and CFA have sufficient contacts with Delaware to satisfy the business-transaction and tortious-injury tests under Delaware's long-arm statute. Among other things, the Defendants' Delaware conduct included Alcatel (France)'s assignment of U.S. patent rights to Alcatel Resources, Alcatel (France)'s and CFA's participation in the patent litigation and related settlement negotiations, and Alcatel (France)'s and CFA's common marketing activities in Delaware.

Moreover, even in the absence of sufficient local contacts for the general jurisdiction of any state, this Court has personal jurisdiction over Alcatel (France) and

CFA pursuant to Federal Rule of Civil Procedure 4(k)(2), which applies to foreign

entities that are not subject to the jurisdiction of courts of general jurisdiction of any state.

## III.    STATEMENT OF FACTS

Foundry alleges that the Alcatel entities violated the Sherman Act and engaged in

common law fraud to the detriment of Foundry by, among other things, breaching the

bylaws of the IEEE in connection with the IEEE's adoption of the 802.1X and 802.1X

REV standards pertaining to authentication for port-based network access to LANs. (*See*

D.I. 20 at Count I & Count II, *passim*.) The IEEE is a New York corporation and the

leading developer of standards that underpin many aspects of the computer industry in

the United States. (D.I. 20 at ¶ 14.) Standards set by the IEEE significantly impact the

computer market in this country and commercial entry into that market. (*See id.* at ¶ 15.)

For example, the IEEE's 802.1X and 802.1X REV standards establish industry-wide

authentication protocols governing port-based network access to computer networks

called "LANs." (*See, e.g., id.* at ¶¶ 34-36.) Because of network effects, companies like

Foundry that want to enter the authentication protocol market in the United States must

comply with the IEEE's 802.1X and 802.1X REV standards to compete. (*Id.* at ¶¶ 14-

15.)

To prevent unfair competitive advantage in the marketplace, the IEEE Bylaws

require that participants in the standard-setting process disclose known patent

applications and patents required to practice a standard under consideration and to grant

assurances that the patent applications and patents will not be enforced or will be licensed

on reasonable and non-discriminatory terms, before the IEEE adopts the standard. (*See

id.* at ¶¶ 16-17.) The Bylaws also require a reaffirmation of these assurances when a

patent application or patent becomes known after a standard is adopted. (*Id.*)

Alcatel (France), CFA, and the other Alcatel entities constitute a telecommunications conglomerate with annual revenues of approximately $17 billion. (*See id.* at 3-4, ¶ 10.) The following jurisdictional facts regarding Alcatel (France) and CFA are not, and cannot be, disputed:

- Alcatel (France) is the ultimate parent entity of CFA, Alcatel Resources and AII (D.I. 31 at 3.)

- Alcatel (France)'s securities are listed on the New York Stock Exchange as American Depository Receipts ("ADRs"). (D.I. 31, Boivin Decl. at ¶ 7.)

- Alcatel (France) prepares a consolidated financial statement for its subsidiaries, including CFA and U.S.-based subsidiaries such as Alcatel Resources and AII. (D.I. 31, Boivin Decl. at ¶ 21.)

- Alcatel (France) and CFA, along with all Alcatel entities, present a common marketing image for purposes of business competition around the world, including in the United States and in Delaware. (Declaration of Philip A. Rovner ("Rovner Decl.") at ¶¶ 3-4, Exs. A and B thereto.)[2]

- Alcatel (France) and CFA, along with other entities, derive a substantial portion of revenues from their participation in the United States market, including in Delaware, for products and technologies related to port-based network access to LANs. (D.I. 20 at ¶ 10.)

- Alcatel (France) and CFA, through its authorized agents, Alcatel Resources and AII, are major if not dominant suppliers of switches, routers, and other communications equipment to telecommunication companies and internet service providers in the U.S. (D.I. 20 at ¶¶ 11-13.)

- Alcatel (France) and CFA, either directly and/or through authorized agents, are members and/or participants in the IEEE, a New York company, including with respect to the 802.1X Working Group that developed the 802.1X and 802.1X REV standards. (D.I. 20 at ¶ 14; Counts I-II.)[3]

---

[2] The Rovner Decl., the Declaration of James E. Parsons ("Parsons Decl.") and the Declaration of Fabio E. Marino ("Marino Decl.") are being filed contemporaneously herewith.

[3] For example, the IEEE's public website reveals that as recently as March 10-12, 2003 an Alcatel employee named Gerard Vergnand (email: gerard.vergnand@alcatel.fr and telephone number: +33 155 665706), along with several other Alcatel employees , participated in the IEEE 802.1 Link Security Executive Committee Study Group in Dallas, TX. *See* IEEE website, *at*

- Alcatel entities, including Alcatel (France), are the assignee(s) on over 4700 United States patents listed on the U.S. Patent & Trademark Office's online database. (Rovner Decl. at ¶ 5, Ex. C thereto.) Alcatel (France) is listed as the assignee on many of these patents, including U.S. patents relating to the market for port-based network access to LANs such as the '830 and '090 patents. (D.I. 31 at 4-5.)

- REDACTED

- On May 10, 2005, "several Alcatel entities," including Alcatel (France), Alcatel Canada, Inc., Alcatel N.V., Alcatel Sel Aktiengesellschaft, and AII, in a coordinated action, assigned their legal interests in a total of nine patents (including the '830 and '090 patents) to a Delaware corporation, Alcatel Resources. (D.I. 31 at 4-5.) The assignment was made for the express purpose of filing an infringement action against Foundry in Delaware on patents including the '830 and '090 patents. (Id.)

- Approximately one month following the patent assignments from the foregoing Alcatel entities, Alcatel Resources, acting on instructions from Alcatel (France), filed suit in the District of Delaware accusing Foundry of infringing a number of Alcatel patents, including the '830 and '090 patents noted above (the "Delaware litigation"). (Rovner Decl. at ¶ 7; Ex. E thereto.)

- CFA directly involved itself in extensive negotiations and meetings with Foundry prior to the Delaware litigation through its authorized employee, David Hawkes (a specialist in intellectual property licensing) regarding licensing terms for the '830 patent. (See D.I. 31 at 5.) (See also Marino Decl. at ¶ 4.) Mr. Hawkes personally attended meetings with Foundry representatives in the United States. Id.

- Alcatel (France) and/or CFA also directly engaged in licensing discussions with Foundry through employee Pascal Chauvin. (Parsons Decl. at ¶¶ 4-6.)

REDACTED

Mr. Chauvin has represented to Mr. Parsons that he has final authority for all litigation settlement decisions on behalf of the Alcatel entities involved in the Delaware litigation. (Id. at ¶ 6.) Mr. Chauvin is French and has represented to Mr. Parsons that he lives in France. (Id. at ¶¶ 7-8.)

---

http://www.ieee802.org/1/linksec/meetings/Mar03/LinkSec Attendance_0303.pdf (last accessed November 21, 2006). (Rovner Decl. at ¶ 6, Ex. D thereto.)

Based on these substantial contacts with the United States and with Delaware,
Defendants cannot escape this Court's exercise of personal jurisdiction over them.

## IV.    ARGUMENT

The plaintiff "need only establish a *prima facie* case" of personal jurisdiction to
proceed. *M & L of Del., Inc. v. Wallace*, C.A. No. 03-521-KAJ, 2004 WL 2370708, at *2
(D. Del. Oct. 18, 2004) (holding that prima facie standard applies where, as here, parties
have not had the "benefit of [party] discovery") (citation omitted). All of the plaintiff's
allegations are accepted as true on a motion to dismiss and disputed facts are construed in
its favor. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Upon
presenting a *prima facie* case, as Foundry has done, "the burden shifts to the defendant to
'present a compelling case that the presence of some other consideration would render
jurisdiction unreasonable.'" *Hadley v. Shaffer*, C.A. No. 99-144-JJF, 2003 WL
21960406, at *2 (D. Del. Aug. 12, 2003) (emphasis added) (citing *Grand Entm't Group
v. Star Media Sales*, 988 F.2d 476, 483 (3d Cir. 1993)).

As demonstrated herein, Foundry has more than met its burden. Because they
have failed to present a "compelling case" against the exercise of personal jurisdiction,
this Court should deny the Defendants' motion or, at a minimum, grant jurisdictional
discovery.

### A.    Federal Circuit Law Does Not Apply Because Foundry's Sherman Act Claim Does Not "Arise Under" The Patent Laws.

Defendants' threshold argument – that Federal Circuit law determines personal
jurisdiction in this antitrust case – is a transparent attempt to avoid the Third Circuit's

controlling (and adverse) holding in *Auto. Refinishing*.[4]  Defendants' arguments in this

regard should be rejected as a matter of law.

"A suit arises under the law that creates the cause of action." *American Well

Works Co. v. Layne And Bowler Co.*, 241 U.S. 257, 260 (1916).  The Federal Circuit's

exclusive jurisdiction is limited to appeals from a district court "if the jurisdiction of that

court was based, in whole or in part, on [28 U.S.C.] section 1338." 28 U.S.C. §

1295(a)(1).  Foundry has alleged no claims under Section 1338.  Rather, Foundry's

antitrust claim arises under Section 2 of the Sherman Act, 15 U.S.C. § 2. (D.I. 20 at ¶ 1.)

*See Christianson*, 486 U.S. at 809 ("The most superficial perusal of petitioners'

complaint establishes . . . that patent law did not in any sense create petitioners' antitrust

or intentional-interference claims.").

Defendants' heavy reliance on *Christianson* is as surprising as it is misplaced.

The Supreme Court in *Christianson* held that the monopolization claim at issue did *not*

arise under the patent laws. *Id.* at 812.  This was because there were "reasons completely

unrelated to the provisions and purposes of federal patent law" that affected whether

plaintiff could recover on its antitrust claim. *Id.* (internal citation and quotes omitted).

The Court further held that, even if an "essential" element of plaintiff's theory was

governed by patent law, the Federal Circuit still lacked jurisdiction:

> The well-pleaded complaint rule . . . focuses on claims, not
> theories, and just because an *element* that is essential to a
> particular theory might be governed by federal patent law
> does not mean that the entire monopolization *claim* "arises
> under" patent law.

---

[4]  Defendants acknowledge in their moving papers that the *Auto. Refinishing* decision
supports a national (aggregate) contacts analysis for personal jurisdiction purposes, as
opposed to the local forum-specific contacts analysis advanced by Defendants. (*See* D.I.
31 at 15-16.)

*Id.* at 811 (internal citations omitted) (emphasis added). Indeed, courts applying *Christianson* require a showing that *each and every* theory that would allow the plaintiff to recover would necessarily rely on patent law. *See, e.g., In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 2006 WL 2401244, at *10 (2d Cir. Aug. 10, 2006) (rejecting Federal Circuit jurisdiction where at least "one alternative theory supporting the claim . . . does not rely on patent law"). These holdings apply with force to the present case.

Foundry has alleged a federal antitrust claim arising under the Sherman Act, not under federal patent law. (D.I. 20 at ¶ 1.) More importantly, Defendants cannot show that *any* theory – much less *every* theory – supporting Foundry's antitrust claim depends on a construction of the patent laws. Defendants' two arguments to the contrary are unavailing. (D.I. 31 at 9-10.)

First, Defendants misleadingly assert that this Court must construe the '830 and '090 patents to decide whether they are "essential" to complying with the 802.1X and 802.1X REV standards. (*Id.* at 9.) To the contrary, Foundry's claims are based on Alcatel's violation of its duty under IEEE policy to disclose and grant assurances on patents and applications that the patent-holder may later claim are infringed by entities using the standard. (D.I. 20 at ¶¶ 16, 56).[5]

Second, Defendants claim that Foundry, in order to prove an antitrust violation, must establish that that Defendants have lost the protection "normally afforded" to patent holders by improperly procuring or enforcing its patents. (D.I. 31 at 9-10.) However,

---

[5]"Alcatel first assumed these duties when it joined the IEEE and/or commenced participation in IEEE activities . . . *because of its belief* that the technology that is the subject of the respective patent applications is essential to practicing the 802.1X standard." (D.I. 20 at ¶ 56) (emphasis added).

this is untrue. Foundry's antitrust claim is not based on Alcatel's acts of procuring or

enforcing patents. Rather, Foundry's claim is based on Alcatel's breach of its duty to

disclose patents and patent applications to the IEEE in connection with the adoption of

industry standards. Alcatel's attempt to enforce its patents against Foundry is relevant

only because that act gives rise to part of Foundry's antitrust injury. It is irrelevant to

Foundry's antitrust claim whether Alcatel's patents are valid or whether Defendants'

patent action against Foundry in Delaware has merit. The case cited by Defendants are

inapposite for the same reasons. Namely, both involved antitrust claims in which the

alleged illegal conduct was the defendant's enforcement of its patents, rather then its

violation of disclosure duties owed to a standard-setting organization. *See In re ISO,* 203

F.3d 1322, 1324 (Fed. Cir. 2000) (challenging patent-holder's right to refuse to sell or

license patented parts to monopolize aftermarket for service); *Nobelpharma AB v.*

*Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998) (challenging patent-

holder's attempt to enforce a patent that defendant allegedly "knew was invalid and

unenforceable").[6]

Simply stated, Defendants have not demonstrated that *each*, let alone *any*, theory

in Foundry's well-pled complaint is dependent upon an aspect of the patent laws.[7]

Consequently, Foundry's antitrust claim is not within the Federal Circuit's exclusive

---

[6] To the extent that Defendants rely on *ISO* and *Noblepharma* for the proposition that
patent law confers a right to enforce a patent, "that smacks of a defense more than of a
failure of [Foundry] to state a viable cause of action" under the federal antitrust laws. *See*
*In re Ciprocloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 748 (E.D.N.Y.
2001). A federal patent law defense does not convert Foundry's well-pled antitrust
complaint into one arising under the federal patent laws. *See Aetna Health Inc. v. Davila,*
542 U.S. 200, 207 (2004) (citing *Taylor v. Anderson,* 234 U.S. 74, 75-76 (1914).

[7] Defendants' citation to *Hildebrand v. Steck Mfg. Co.,* 279 F.3d 1351 (Fed. Cir. 2002)
for the point that "the Federal Circuit applies Federal Circuit law" is therefore irrelevant,
since the Federal Circuit would lack jurisdiction over this case in the first instance.

jurisdiction. *See Christianson,* 486 U.S. at 809, 811.[8] Thus, the law of the Third Circuit

governs this Court's analysis of whether personal jurisdiction over Defendants is proper.

**B.      Personal Jurisdiction Over Defendants Is Proper Under Section 12 of the Clayton Act.**

Section 12 of the Clayton Act provides for personal jurisdiction in antitrust cases,

providing as follows:

> Any suit, action, or proceeding under the antitrust laws against a
> corporation may be brought not only in the judicial district whereof
> it is an inhabitant, but also in any district wherein it may be found
> or transacts business; and all process *in such cases* may be served
> in the district of which it is an inhabitant, or wherever it may be
> found.

15 U.S.C. § 22 (emphasis added).

The Third Circuit holds that "the service of process provision on foreign

corporations [which grants the basis for personal jurisdiction] is *independent of,* and does

not require satisfaction of, the specific venue provision under Section 12 of the Clayton

Act," but can be based on the Alien Venue Statute, 28 U.S.C. § 1391(d), which allows an

alien to be sued "in any district." *Auto. Refinishing,* 358 F.3d at 297 (3d Cir. 2004)

(emphasis added); *see also Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1413 (9th

Cir. 1989). Thus, personal jurisdiction exists as long as the defendant has minimal

contacts with the United States as a whole. *Id.* Accordingly, personal jurisdiction over

Defendants exists where, as here, venue is proper under the Alien Venue Statute, 28

---

[8] *See also Mulcachey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 153 (4th Cir. 1994); *STMicroelectronics, Inc. v. Harari*, No. C 05-4691 JF, 2006 WL 734401, *2-*5 (N.D. Cal. Mar. 20, 2006); *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 669-675 (S.D.N.Y. 2000); *EFCO Corp. v. Iowa Ass'c of Bus. and Indus.*, No. 4:06-cv-00068-JEG, 2006 WL 2457483, (S.D. Iowa Aug. 23, 2006).

U.S.C. § 1391(d), and Alcatel's "aggregate contacts with the United States as a whole"

are sufficient to satisfy Due Process. *See Auto. Refinishing,* 358 F.3d at 298, 298-99.[9]

> 1.    **The Text and Legislative History of Section 12 Do Not Unambiguously Support an Interpretation that Invoking Worldwide Service is "Subject To" Satisfying the Specific Venue Clause in Section 12.**

Contrary to Defendants' arguments, the text of Section 12 does not "clearly and

unambiguously" require that the Section 12 venue clause be satisfied before invoking the

Section 12 worldwide service clause for personal jurisdiction. *See Go-Video,* 885 F.2d at

1410. Indeed, as the Third Circuit observed, at least one court examining the text of

Section 12 has found that a textual analysis "would favor" *separating* the two clauses:

> The word "such" means "the aforementioned," *Webster's Third International Dictionary* (unabr. ed.1963). Thus, when "such" precedes a noun it is assumed to refer to a particular antecedent noun and any dependent adjective or adjectival clauses modifying that noun, but not to any other part of the preceding clause or sentence. Applying this rule to section 12, "in such cases" would refer to "any suit, action, or proceeding under the antitrust laws against a corporation," and not to anything else in section 12's first clause.

*Auto. Refinishing,* 358 F.3d at 295 n.8 (citing *Gen. Elec. Co. v. Bucyrus-Erie Co.,* 550 F.

Supp. 1037, 1042 n.7 (S.D.N.Y. 1982)). Under this approach, Section 12 applies to "any

suit . . . under the antitrust laws" and "in such cases," a defendant may be served

"wherever it may be found." *See* 15 U.S.C. § 22.[10]

---

[9] In addition to Section 1391, the Alien Venue Statute, venue is also proper under any one of the federal antitrust laws' three specific venue provisions applicable here, 15 U.S.C. §§ 15, 22, and 26.

[10] Indeed, Defendants' construction of Section 12 would render the nationwide contacts analysis for Due Process purposes a nullity. As Defendants correctly observe, the Fifth Amendment requires "sufficient contacts with the United States" for personal jurisdiction to attach. (D.I. 31 at 18.) However, Defendants incorrectly argue that Foundry may rely on the "national contacts" test only after fist showing that Defendants are "inhabitants of,

Moreover, the legislative history of Section 12 "reveals that Congress viewed the questions of venue and service of process separately, with the latter issue of subsidiary importance." *Go-Video,* 885 F.2d at 1410. This is consistent with the underlying purpose of the Clayton Act "to provide broader and more effective relief, both substantively and procedurally, for persons injured by violations of its antitrust policy." *United States v. Nat'l City Lines,* 334 U.S. 573, 581 (1946); *see also Cumberland Truck Equip. Co., v. Detroit Diesel Corp.,* 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005) ("Section 12 was intended to remedy the restrictive personal jurisdiction and venue provisions of the Sherman Antitrust Act, which had previously made it difficult to sue multiple defendants in a single venue."); 15 Wright & Miller, *Federal Practice and Procedure,* § 3818 at 108-109 (1976) (venue provisions of the Clayton Act were "clearly broadening."). Accordingly, "courts have viewed [Section 12's] main contribution to be its expansion of the bounds of venue." *Go-Video,* 885 F.2d at 1410 (*citing United States v. Scophony Corp. of Am.,* 333 U.S. 795, 806-08 (1948)). This is particularly important with respect to foreign defendants, such as Alcatel, so as not to impede the ability of plaintiffs to bring legitimate antitrust claims. *See Go-Video,* 885 F.2d at 1410-11. Further, as discussed below, the reading of Section 12 as a mechanism for expanding venue is supported by the courts' routine application of the Alien Venue Statute in antitrust cases under Clayton Act § 12.

---

may be found in, or transact business in Delaware." *Id.* at 17-19. The redundancy of this approach is clear. It is unreasonable to believe that Congress required local contacts with a state to be established as a precondition to invoking a "national contacts" test for personal jurisdiction as to the same defendant. The national contacts analysis, which was inserted for the purpose of expanding jurisdiction over foreign antitrust defendants, would be needlessly redundant under Defendants' proposed construction. *See Go-Video,* 885 F.2d at 1410-11.

2. **The Alien Venue Statute Properly Establishes Venue For Purposes of Invoking Section 12's Worldwide Service Provision.**

The Alien Venue Statute provides that "[a]n alien may be sued in any district." 28 U.S.C. § 1391(d).  Alcatel (France) and CFA are French corporations headquartered in Paris and are thus aliens that may be sued in any judicial district in the United States. (D.I. 30 at 3, 5.)  *See e.g. Union Planters Bank, N.A. v. EMC Mortgage Corp.,* 67 F. Supp. 2d 915, 918 (W.D. Tenn. 1999) ("Aliens can be sued in any district in the United States."); *General Aircraft Corp. v. Air Am., Inc.,* 482 F. Supp. 3, 11 (D.D.C. 1979) (venue over alien corporations "is proper in this judicial district under 28 U.S.C. § 1391(d)").  Defendants do not dispute they are alien corporations, nor that Foundry may rely on the Alien Venue Statute. (D.I. 31 at 23.)  Instead, Defendants erroneously claim that the Alien Venue Statute cannot establish venue for purposes of invoking the worldwide service clause of Clayton Act § 12.  *Id.*[11]

Contrary to Defendants' approach, "courts have interpreted special venue provisions to *supplement*, rather than preempt, general venue statutes." *Go-Video,* 885 F.2d at 1409 (emphasis added) (citations omitted).  The Supreme Court itself has noted that, absent contrary restrictions in the special statute, general venue provisions apply. *See Pure Oil v. Suarez,* 384 U.S. 202, 205 (1966).  Thus, courts in the antitrust context routinely hold that personal jurisdiction under Section 12 of the Clayton Act is proper where the Alien Venue Statute is satisfied, notwithstanding Section 12's specific venue clause.

---

[11] Defendants, not Foundry, carry the burden on the issue of venue. *See, e.g., Myers v. Am. Dental Assoc., V.I.,* 695 F.2d 716, 724 (3d Cir. 1982) (citation omitted).

For example, in *Auto. Refinishing,* the Third Circuit held that personal jurisdiction over German defendants was proper pursuant to Section 12, even though the specific venue provision of Section 12 was not satisfied. 358 F.3d at 296-297. Like Alcatel, the defendants in *Auto. Refinishing* were alien corporations subject to the Alien Venue Statute. *Id.* Similarly, in *Go-Video*, the Ninth Circuit held that plaintiff demonstrated that the court could properly exercise personal jurisdiction over Japanese and Korean defendants under the Alien Venue Statute and Section 12's worldwide service provision. 885 F.2d at 1408. *See also Action Embroidery Corp. v. Atlantic Embroidery, Inc.,* 368 F.3d 1174, 1177-78 (9th Cir. 2004) (reaffirming *Go-Video* and holding that the "special venue provision of Section 12 is supplemented by the general provisions of § 1391" and thus, "venue is proper in an antitrust suit if the venue requirements of either Section 12 or 28 U.S.C. § 1391 are satisfied").

Numerous others courts examining the interplay between the Alien Venue Statute and Section 12 embrace the Third and Ninth Circuits' approach. *See, e.g., Paper Sys. Inc. v. Mitsubishi Corp.,* 967 F. Supp. 364, 367 (E.D. Wis. 1997) (holding that plaintiff may rely on Section 12's service of process provision and "rely on 28 U.S.C. § 1391(d) for venue, which states 'an alien may be sued in any district.'"); *Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 982 F. Supp. 1138, 1145 n.12 (E.D. Va. 1997) (holding that because venue and jurisdiction present "two distinct inquiries . . . plaintiffs may avail themselves of § 12 for service purposes and § 1391(d) for venue purposes"); *cf. Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.,* 410 F. Supp. 2d 592, 597-602 (E.D. Ky. 2006) (concluding in antitrust context that Section 12 venue provisions "are not exclusive" and permitting application of general venue provisions in § 1391);

*Icon Indus. Controls Corp. v. Cimetrix, Inc.,* 921 F. Supp. 375, 382 (W.D. La. 1996)

(same).

Defendants misplace their reliance on cases from the D.C. and Second Circuits

that required satisfaction of Section 12's specific venue clause. (*See* D.I. 31 at 11) (citing

*GTE New Media Servs. Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1351 (D.C. Cir. 2000);

*Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 424-25 (2d Cir. 2005)). Both *GTE*

and *Daniel* are readily distinguishable because, unlike Alcatel, neither of the defendants

in those cases were *foreign* corporations subject to the Alien Venue Statute. As the Third

Circuit notes, "[t]he distinction is crucial." *Auto. Refinishing,* 358 F.3d at 297 n.10

(noting that in cases involving domestic, out-of-state defendants, there is no occasion to

consider "the impact of the general [alien] venue statute of § 1391(d)"). Defendants fail

to cite to a single case requiring a plaintiff to satisfy Section 12's specific venue clause

for jurisdiction over a *foreign* antitrust defendant.

Moreover, contrary to Defendants' claims, the *Cumberland* case does not create

an "untenable situation" for district courts in the Third Circuit simply because Section

12's specific venue provision must be satisfied for domestic defendants, but not for

foreign defendants. (*See* D.I. 31 at 16) (citing *Cumberland Truck Equip. Co. v. Detroit*

*Diesel Corp.,* 401 F. Supp. 2d 415, 422-24 (E.D. Pa. 2005)). In *Brunette Mach. Works,*

*Ltd. v. Kockum Indus., Inc.,* the Supreme Court held that a specific venue provision in the

patent venue statute did not take precedence over a contrary provision of § 1391(d)

(applicable to aliens), even though the same statute took precedence over a contrary

provision of § 1391(c) (applicable to corporations generally). 406 U.S. 706, 713-14

(1972). The Court reasoned that § 1391(d), which was enacted separately from the rest

15

of the statute, is "properly regarded . . . as a declaration of the long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special." *Id.* Thus, Congress intended for § 1391(d) to be given the broadest possible application to prevent an alien from "using a narrower venue provision in another statute as a 'shield against suit.'" *Go-Video,* 885 F.2d at 1409-10 (citing *Brunette,* 406 U.S. at 714).

### 3. Analogous Statutory Provisions Support The Third Circuit's Approach In *Auto. Refinishing.*

The Third Circuit's reading of Clayton Act § 12 is supported by prevailing interpretations of similar venue provisions in the Securities and Exchange Act of 1934 (the '34 Act) and the Racketeering Influenced and Corrupt Organizations Act (RICO).

The venue clause of the '34 Act provides as follows:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business and process *in such cases* may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78 aa (emphasis added). The Second Circuit has held that the phrase "in such cases" in the context of Section 27 of the '34 Act operates *independently* of the venue provision and "speaks expressly only to service of process." *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1340 n.10 (2d Cir. 1972). Thus, as with Clayton Act § 12, invoking the worldwide service clause in Section 27 of the '34 Act is not predicated on first satisfying the specific venue clause of that statute.

Similarly, the venue clause in RICO provides that civil actions "may be instituted in the district court of the United States for any district in which such person resides, is

found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Service of process

"may be served on any person in any judicial district in which such person resides, is

found, has an agent, or transacts his affairs." *Id.* at § 1965(d). Courts have held that

because the specific venue statutes *supplement* general venue statutes, a plaintiff may

invoke nationwide service under Section 1965(d) by relying on the Alien Venue Statute.

*See, e.g., Paper Sys. Inc. v. Mitsubishi*, 967 F. Supp. 364, 368 (E.D. Wisc. 1997).

      The Third Circuit's approach to reading Section 12's venue clause as

"independent of" the section's worldwide service clause thus finds ample support in

analogous statutory frameworks. Indeed, Federal Rule of Civil Procedure 4(k)(2)

"resolved the split of authority by codifying the 'national contacts' theory for actions,

such as those under the Sherman or Clayton Acts, which arise under federal law." Irving

Scher, ANTITRUST ADVISER § 6:10 (4th ed. 2005). "[T]he inquiry to determine

'minimum contacts' is thus 'whether [Alcatel] has acted within any district of the United

States or sufficiently caused foreseeable consequences in this country.'" *Action*

*Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)

(citation omitted); *see also, e.g., Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361 at 369,

370 (3d Cir. 2002). Accordingly, Clayton Act § 12 provides a proper basis for personal

jurisdiction over Defendants because they are alien corporations subject to suit in any

U.S. judicial district and may thus be served anywhere in the world.

**C.    Personal Jurisdiction Under the Federal Antitrust Laws Is Proper, And Comports With Due Process, Based On Defendants' Aggregate Contacts With The United States As A Whole, or Alternatively, Based on Defendants' Contacts With Delaware.**

"[W]hen personal jurisdiction is invoked under the Clayton Act, jurisdiction is based on the defendants' contacts with the United States as a whole." *Auto. Refinishing,* 358 F.3d at 297; *id.* at 298 (requiring analysis of "aggregate contacts with the United States").[12] This is consistent with the Third Circuit's holding in *Pinker* that "a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." *Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 369 (3d Cir. 2002). *See also Dardana Ltd. v. A.O. Yuganskneftegaz,* 317 F.3d 202, 207 (2d Cir. 2003) (due process considerations for personal jurisdiction based on a federal long-arm statute are satisfied by nationwide contacts analysis).

Assessing a defendant's aggregate national contacts is also consistent with Due Process under the Fifth Amendment. *See Go-Video,* 885 F.2d at 1416; *see also Access Telecom, Inc. v. MCI Telecomm. Corp.,* 197 F.3d 694, 718 (5th Cir. 1999), *cert. denied,* 531 U.S. 917 (2000) ("When jurisdiction is invoked under the Clayton Act, the court examines the defendant's contacts with the United States as a whole to determine whether the requirements of due process have been met.").

---

[12] *See also* AREEDA & HOVENKAMP, ANTITRUST LAW ¶ 271 (2004) (noting that "national contacts" test is needed, "otherwise a foreign corporation could commit serious torts or contract breaches without having enough contacts with any one forum to give those injured an opportunity to seek redress.") (citations and quotations omitted); *A+ Network, Inc. v. Shapiro,* 960 F. Supp. 123, 125 (M.D. Tenn. 1997) ("When service of process can be made nationally, the defendant no longer needs to have minimal contacts with the forum state for purposes of *in personam* jurisdiction . . . [but] with the United States.").

The relevant analysis regarding contacts is "the familiar 'minimum contacts'

analysis . . . [but] the relevant forum is not [the state in which suit is brought], but rather

the entire United States." *Amtrol, Inc. v. Vent-Rite Valve Corp.,* 646 F. Supp. 1168, 1172

(D. Mass. 1986); *Go-Video,* 885 F.2d 1416 (citing *Amtrol*).  Here, under a minimum

contacts analysis, both "specific" and "general" jurisdiction exists over Defendants.

> **1.    Defendants' Contacts With the United States Provide A
>         Sufficient Basis for the Court to Exercise Specific Personal
>         Jurisdiction**
>
>> **a.    Defendants Directed Their Tortious Conduct Toward
>>         the United States and Delaware and Their Employees
>>         Personally Appeared Here in Connection Therewith**

Foundry's antitrust claim arises out of contacts that Alcatel (France) and CFA

purposefully directed at the United States, including Delaware, thus rendering specific

personal jurisdiction under a national contacts analysis appropriate.  "[W]here the

plaintiff's cause of action is related to or arises out of the defendant's contacts with the

forum, the court is said to exercise 'specific jurisdiction.'" *Pinker*, 292 F.3d at 368

(citation omitted).  A single act may support specific jurisdiction. *See McGee v. Int'l Life

Ins. Co.*, 355 U.S. 220, 223 (1957); *Giusto v. Ashland Chem. Co.*, 994 F. Supp. 587, 592

(E.D. Pa. 1998); *One World Botanicals v. Gulf Coast Nutritionals*, 987 F. Supp. 317,

323-24 (D.N.J. 1997).

In *Pinker*, defendant Roche, similar to Alcatel (France) and CFA, was a "holding

company [with its principal place of business in Switzerland] that conduct[ed] [much of]

its operations through a network of subsidiary corporations." *See id.* at 366.  Pinker's

claims arose under the federal securities laws and personal jurisdiction was proper based

on Roche's sponsorship of ADRs, public trading of those ADRs, and alleged fraudulent

statements about those ADRs.  The Third Circuit held that "[j]ust as solicitation of

business in the forum state is generally sufficient to establish personal jurisdiction over

the defendant for claims arising out of injuries to purchasers within the forum state, so

too is personal jurisdiction appropriate where a foreign corporation has directly solicited

investment from the American market." *Id.* at 371 (citation omitted).  The same result

should apply here.

Accepting the allegations of Foundry's complaint as true and resolving all

disputed fact in favor of Foundry, as is required on a Rule 12 motion, it is clear that

Foundry's antitrust claim arises out of the contacts of Alcatel (France) and CFA with the

United States and, more particularly, with Delaware. *See Pinker,* 292 F.3d at 371; *see*

*also MM Global Servs. Inc. v. The Dow Chem. Co.*, 404 F. Supp. 2d 425, 435 (D. Conn.

2005) (plaintiff's allegations establish that defendant's "contacts 'arise[] out of' the

conduct that underlies the litigation") (alteration in original). Foundry maintains, *inter*

*alia*, that Defendants' nondisclosure of the '830 and '090 patent applications and/or

patents before the IEEE adopted the 802.1X and 802.1X REV standards and Defendants'

subsequent failure to provide the assurances required by the IEEE's bylaws with regard

to these patents caused injury to Foundry under the federal antitrust laws.  The IEEE is a

New York corporation and the leading developer of standards for the computer industry

in the United States.  The IEEE's 802.1X and 802.1X REV standards underpin, and

ultimately, control entry into the authentication protocol market for port-based network

access to LANs in the United States and Delaware.

Moreover, Alcatel (France) and CFA directly participated in Defendants' unlawful

U.S. conduct.  In particular, Alcatel (France) assigned the '830 and '090 patents to

Alcatel USA Resources, a Delaware corporation, without first providing the assurances

required by the IEEE Bylaws. (D.I. 31 at 4-5). Moreover, as Defendants admit, Alcatel
(France) made the assignment for the express purpose of bringing suit against Foundry in
Delaware. (*Id.*) In addition, employees of Alcatel (France) and CFA have extensively
participated in Alcatel's Delaware litigation and/or related settlement discussions. (D.I. 31
at 20-21). (Parsons Decl. at ¶¶ 4-10; Marino Decl. at ¶ 4.)

Participation in settlement negotiations alone can be sufficient for personal
jurisdiction when combined with the other conduct of Alcatel (France) and CFA.
Contrary to Defendants' arguments, the Federal Circuit in *Red Wing Shoe* observed that
"cease-and-desist letters *alone* are often substantially related to the cause of action (thus
providing minimum contacts)." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,*
148 F.3d 1355, 1360 (Fed. Cir. 1998) (emphasis added). To be sure, settlement
negotiations alone may be insufficient to satisfy due process concerns (see *id.*), but
Foundry is relying on more than settlement negotiations.[13] The Alcatel activity noted
above evidences specific contacts with the United States and with Delaware, in addition
to the settlement discussions.

> **b.    Personal Jurisdiction Is Also Proper Under an Agency
> Theory Because Defendants Acted in The United States
> and Delaware Through Their Subsidiaries**

Specific jurisdiction also exists because Foundry's antitrust claim arises out of
Alcatel (France)'s and CFA's contacts with the U.S. and Delaware through its agent,
Alcatel Resources, who filed suit against Foundry in Delaware. Under *Calder v. Jones,*

---

[13]    Indeed, the *Red Wing Shoe* court held that a patentee "should not subject itself to
personal jurisdiction in a forum *solely by* informing a party who happens to be located
there of suspected infringement." *Id.* By contrast, the Defendants here have done much
more than "solely" inform Foundry of its alleged patent rights; rather they have abused
the IEEE standard-setting process in violation of the federal antitrust laws. (*See* D.I. 20
at ¶¶ 38-45.)

465 U.S. 783, 790 (1984), personal jurisdiction is proper if (1) the agent committed an intentional tort,[14] (2) Foundry felt the brunt of the harm in the forum, and (3) the agent aimed its tortious activity at the forum, all of which is satisfied here. *Id.* at \*7 (citing *IMO Indus., Inc .v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998).[15]

    Although Alcatel (France) and CFA contend that they do not transact business in the District of Delaware, a corporation can transact business directly or indirectly through its agents or subsidiaries.[16] *See, e.g., Eastman Kodak Co. v. S. Photo Materials Co.,* 273 U.S. 359, 372-373 (1927); *United States v. Scophony Corp. of Am.,* 333 U.S. 795, 810 (1948); *In re Vitamins Antitrust Litig.,* 2001 U.S. Dist. LEXIS 25073, at \*24 (D.D.C. Oct. 30, 2001); *MCI Commc'ns Corp. v. AT&T,* 1983 U.S. Dist. LEXIS 13066, at \*22-23; *Caribe Trailer Sys., Inc. v. Puerto Rico Maritime Shipping Auth.,* 475 F. Supp. 711, 717 (D.D.C. Apr. 19, 1979). "When a parent and its subsidiary are joined as defendants in an antitrust action," the court may exercise jurisdiction over the parent based on the activities of the subsidiary within the district "if the relationship between the parent and

---

[14] An antitrust violation is considered a tort. *See Bulk (Extruded) Graphite Prods. Antitrust Litig.,* C.A. No. 02-6030-WHW, *2006* WL 1084093, \*7 (D.N.J. Apr. 24, 2006) ("[A]n alleged violation of antitrust law, [is] a tort.").

[15] Physical contact by the principal with the United States or Delaware is not required. *See, e.g., Haisten v. Grass Valley Med. Reimbursement Fund Ltd.,* 784 F.2d 1392 (9th Cir. 1986); *Simon v. Philip Morris, Inc.,* 86 F. Supp. 2d 95, 98, 128 (E.D.N.Y. 2000); *In re Teknek, LLC,* No. 05 B 27545, 2006 WL 2959506, at \*8 (N.D. Ill. Bnkr. Oct. 16, 2006).

[16] "[T]wo otherwise independent corporations may develop a restricted agency relationship covering only certain specific transactions." *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1463 (D. Del. 1991) (citing *Phoenix Canada Oil Co. v. Texaco, Inc.,* 842 F.2d 1466, 1477 (3d Cir.), *cert. denied,* 488 U.S. 908 (1988)); *see also Daynard v. Ness,* 290 F.3d 42, 55-60 (1st Cir. 2002); *Williamson v. Petrosakh Joint Stock Co.,* 952 F. Supp. 495, 498 (S.D. Tex. 1997); *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 95 (2d Cir. 2000) (court found personal jurisdiction over the foreign parent where the subsidiary's business was sufficiently important that the foreign parent would have performed a similar function had the U.S. subsidiary been unavailable).

the subsidiary is such that the subsidiary may be considered the agent or the alter ego of

the parent." *See Caribe Trailer,* 475 F. Supp. at 717 (quoting *Audio Warehouse Sales,*

*Inc. v. U.S. Pioneer Elecs. Corp.,* 1975 U.S. Dist. LEXIS 13422 (D.D.C. 1975)).

      Here, Alcatel (France) and CFA not only have the capacity to influence major

business decisions of Alcatel Resources, they have actually done so.  Alcatel (France)

assigned  the '830 and '090 patents to Alcatel Resources without providing the

assurances required by the IEEE's bylaws *and* for the express purpose of bringing the

Delaware litigation.  The assignment of the patents, the subsequent filing of the Delaware

litigation shortly thereafter without compliance with the IEEE bylaws, and participation

in the Delaware litigation by employees of Alcatel (France) and CFA constitute activity

connected with (and in furtherance of) the breach of Alcatel's duties to comply with the

IEEE Bylaws.  *See Chrysler v. Gen'l Motors Corp.,* 589 F. Supp 1182, 1201 (noting that

"the capacity of the absent [parent] corporation to influence decisions of the subsidiary or

affiliate that might have antitrust consequences" is a factor in deciding to attribute

subsidiary's activities to parent) (citations omitted).  As Foundry's antitrust claim arises

out of those breaches, personal jurisdiction is proper in the United States and, in

particular, Delaware based on the activity of Alcatel's agents.  *See Mobil Oil Corp. v.*

*Linear Films, Inc.*, 718 F. Supp. 260, 266 n.10 (D. Del. 1989) (citation omitted); *Wesley-*

*Jessen Corp. v. Pilkington Visioncare, Inc.*, 863 F. Supp. 186, 188-89 (D. Del. 1993).[17]

---

[17]  Moreover, other indicia of agency are present; all Alcatel entities present a common
marketing image and an integrated sales system exists between Defendants, including
Alcatel (France) and CFA, and the U.S. subsidiaries, including its Delaware entity,
Alcatel Resources. (Rovner Decl. at ¶¶ 3-4, Exs. A and B thereto.) *See Chrysler Corp.,*
589 F. Supp. at 1200; *Vitamins,* 2001 U.S. Dist. LEXIS 25073, at *25.

2.      **Defendants' Contacts With the United States Provide a
        Sufficient Basis for the Court to Exercise General Personal
        Jurisdiction.**

Defendants' contacts also evidence substantial, continuous, and systematic

contacts with the United States, thus rendering personal jurisdiction proper in any federal

forum under a national contacts analysis or in Delaware under a state specific analysis.

*See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445-46 (1952) ("substantial . .

. continuous and systematic" contacts provide personal jurisdiction over a defendant even

for causes of action unrelated to those contacts); *see also, e.g., Pinker*, 292 F.3d at 369

n.1; *cf. Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 458 (3d Cir. 2003) (reversing

and remanding for jurisdictional discovery, "the District Court should consider whether

any newly discovered facts will support jurisdiction under traditional jurisdictional

analysis, or [under a national contacts analysis] under Rule 4(k)(2).").

Alcatel (France) not only assigned the '830 and the '090 patents to Alcatel

Resources, but Alcatel (France) and/or CFA employees have also participated in IEEE

standard-setting activities. (*See* Rovner Decl. at ¶ 6, Ex. D thereto.) In addition, Alcatel

(France) has participated in the Delaware litigation. These activities constitute

continuous and systematic activity in the United States and, in particular, Delaware.

General personal jurisdiction is therefore proper.

Moreover, Defendants nowhere deny that they derive a substantial volume of

business from the sale of products and licenses in the United States and in Delaware.

(*See* D.I. 20 at ¶ 10.) Alcatel (France) and/or CFA should not have the ability to

influence and manipulate the authentication protocol market in the United States and

Delaware and avoid having to defend the consequences of its actions in this country.

3.    **Defendants Failed To Show That This Court's Exercise Of Personal Jurisdiction Would Violate Due Process.**

Finally, Defendants have not met the difficult burden they carry to demonstrate that this Court's exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice under the Due Process Clause of the Fifth Amendment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.").

As set forth above, where foreign defendants have sufficient national contacts with the U.S., the requirements of Due Process are satisfied. *See Go-Video,* 885 F.2d at 1216; *see also Access Telecom, Inc. v. MCI Telecomm. Corp.,* 197 F.3d 694, 718 (5th Cir. 1999), *cert. denied* 531 U.S. 917 (2000). As discussed above, Foundry's complaint alleges that the Alcatel entities, including Alcatel (France) and CFA, were involved (either directly or through their authorized agents) in the setting and adopting of the IEEE's 802.1X and 802.1X REV standards and subsequent breaches of the IEEE's Bylaws relating to the standard-setting process. Those standards govern authentication protocols for port-based network access to LANs in the United States and Delaware and significantly impact those markets and present substantial barriers to entry into those markets. Further, as discussed above, Alcatel (France) and CFA involved themselves in the Delaware litigation. This activity in (or directed at) the United States and Delaware renders the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment both fair and reasonable.

25

Alcatel (France) and CFA should not be permitted to avoid this Court's
jurisdiction merely by highlighting that they are alien corporations and claiming that it
would be inconvenient to defend this case in Delaware. "[I]t is now clear that
inconvenience and distance of litigation have no bearing upon the issue of personal
jurisdiction." *First Flight Co. v. Nat'l Carloading Corp.*, 209 F. Supp. 730, 740 (D. Tenn.
1962); *see also id.* at n.35 ("Convenience and inconvenience are immaterial upon the
issue of personal jurisdiction."). "Thus, for example, it would not be unfair under the
fifth amendment to subject a foreign national shipper to suit in New Jersey on the basis of
an admiralty claim that arose in that state, even if the offending ship was the only one
ever to dock in New Jersey[.]" *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280,
292 (3d Cir. 1981) (Gibbons, J., dissenting); *see also Eng'g Equip. Co. v. S.S. Selene*, 446
F. Supp. 706, 710 (S.D.N.Y. 1978).

In sum, Defendants have failed to present a "compelling case" against the
exercise of jurisdiction.[18]

### D.    Federal Rule of Civil Procedure 4(k)(2) Subjects Defendants To Personal Jurisdiction In This District.

Fed. R. Civ. P 4(k)(2) provides an independent basis for personal jurisdiction.
Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the
> Constitution and laws of the United States, serving a
> summons or filing a waiver of service is also effective, with
> respect to claims arising under federal law, to establish
> personal jurisdiction over the person of any defendant who

---

[18] There is a recognized and strong national interest in encouraging private enforcement
of the federal antitrust laws. "A claim under the antitrust laws is not merely a private
matter. The Sherman Act is designed to promote the national interest in a competitive
economy; thus, the plaintiff asserting his rights under the Act has been likened to a
private attorney-general who protects the public's interest." *Am. Safety Equip. Corp. v. J.
P. Maguire & Co.*, 391 F.2d 821, 826-27 (2d Cir. 1968) (citation omitted).

is not subject to the jurisdiction of the courts of general
jurisdiction of any state.

Defendants are subject to personal jurisdiction under Rule 4(k)(2) if (i) Foundry's

claim arises under federal law, (ii) Alcatel (France) and CFA are beyond the

jurisdictional reach of any state court of general jurisdiction, and (iii) the exercise of

personal jurisdiction would not offend the Constitution or other federal law. *BP Chems.*

*Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258 (3d Cir. 2000). Rule 4(k)(2)'s

jurisdictional reach extends to the limits of the Due Process Clause of the Fifth

Amendment. *Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 299 n.14 (3d Cir.

2004) (citing *Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003)). The

United States as a whole is the relevant forum under Rule 4(k)(2). *Dardana*, 317 F.3d at

207; *In re Lupron Mktg. and Sales Practices Litig.*, 245 F. Supp. 2d 280, 302 (D. Mass.

2003).

There is no dispute that the first Rule 4(k)(2) factor is satisfied as Foundry's

claims arise under the federal antitrust laws. The second factor is discussed below. The

third factor regarding due process concerns is satisfied for the reasons stated, *supra.*

While some courts in this District have placed the burden on the plaintiff with

respect to the second factor – whether Defendants are beyond the jurisdictional reach of

any state court of general jurisdiction (*see Telcordia Techs., Inc. v. Alcatel S.A.*, C.A.

No. 04-874-GMS, 2005 WL 1268061, *5 (D. Del. May 27, 2005)), the Third Circuit has

yet to address the issue.[19] Regardless of who bears the burden, Defendants cannot run

---

[19] To avoid game-playing and prevent injustice, the better reasoned cases hold that the
burden should rest with the Defendant. *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
256 F.3d 548, 552 (7th Cir. 2001). Forcing a litigant to prove fifty negatives is a near
impossibility that renders Rule 4(k)(2) jurisdiction a nullity. Consequently, the Court in
*ISI* logically placed the burden on the foreign defendant to set forth a state in which it is

from their own admissions. In their opening brief, Defendants assert that "Alcatel

(France) and CFA do not have sufficient contacts with the United States such that this

Court's assertion of personal jurisdiction over Alcatel (France) and CFA would comport

with the Due Process Clause of the 5th Amendment." (D.I. 31 at 18, citing *Red Wing*

*Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358, n.* (Fed. Cir. 1998)).

This judicial admission is not state specific. It applies across each of the fifty states and

binds Defendants under Rule 4(k)(2) as to the second factor. *See United States v.*

*McKeon*, 738 F.2d 26, 30 (2d Cir. 1984) ("[S]tatements made by an attorney concerning a

matter within his employment may be admissible against the party retaining the

attorney.") (quoting *United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir. 1981), *cert.*

*denied*, 461 U.S. 913 (1983)).[20] Thus, Rule 4(k)(2) provides more than a sufficient basis

for subjecting Defendants to personal jurisdiction in this District. *See United States v.*

*Int'l Bhd. Of Teamsters*, 945 F. Supp. 609, 620-23 (S.D.N.Y. 1996).

In *International Brotherhood of Teamsters*, the United States sought an order to

permit union campaigning on the premises of a Canadian corporation. The court

subjected the corporation to jurisdiction pursuant to Rule 4(k)(2), after finding that New

---

subject to jurisdiction. *ISI*, 256 F.3d at 552 (citation omitted); *see also United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999) ("If the plaintiff makes out his prima facie case, the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient."). Defendants certainly offer no basis in its opening brief or supporting affidavits for the application of the jurisdiction of any of the fifty states.

[20] Defendants' judicial admission, although binding as to Defendants and determinative with respect to this Rule 4(k)(2) issue, does not bind Foundry or govern the actual analysis under the Due Process Clause of the Fifth Amendment. *See Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention.").

York's long-arm statute did not apply. Even though the court found that the Canadian corporation had neither transacted business in the United States nor undertaken an act in the United States that would itself subject the corporation to jurisdiction, the effects of the corporation's actions were felt in the United States such that Rule 4(k)(2) provided personal jurisdiction in that particular instance. *Id.* at 614-15. A similar result should follow here.

Defendants' reliance on *Telcordia* is misplaced. In *Telcordia*, Alcatel (France) was sued for patent infringement, and the Court in that case analyzed only the jurisdictional facts presented with respect to Alcatel (France)'s alleged infringement of the patent-in-suit. *See id.* The Court did not make a universal statement that Alcatel (France) should never be subjected to personal jurisdiction in the United States or Delaware. Nor did it consider the conduct of Alcatel (France) in the United States that is the subject of this case. Accordingly, that case does not preclude a finding of personal jurisdiction over Alcatel (France) in this case pursuant to Rule 4(k)(2).

### E. Personal Jurisdiction Over Defendants Is Also Proper Under Delaware's Long-Arm Statute.

Sections 3104(c)(1), (c)(3) and (c)(4) of Delaware's long-arm statute provide yet another independent basis for subjecting Defendants to personal jurisdiction in this Court. Those provisions state, in relevant part:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State;
>
> *    *    *

> (3) Causes tortious injury in the State by an act or omission in this
> State;
>
> (4) Causes tortious injury in the State or outside of the State by an
> act or omission outside of the State if the person regularly does or
> solicits business, engages in any other persistent course of conduct
> in the State or derives substantial revenue from services, or things
> used or consumed in the State[.]

10 *Del. C.* § 3104(c). Courts in Delaware construe Delaware's long-arm statute "broadly

to confer jurisdiction *to the maximum extent possible* under the due process clause."

*Padcom, Inc. v. NetMotion Wireless, Inc.*, C.A. No. 03-983-SLR, 2004 U.S. Dist. LEXIS

9658, at *5-*6 (D. Del. May 24, 2004) (emphasis added).

As Defendants admit, along with other foreign Alcatel entities, Alcatel (France)

assigned the '830 and '090 patents to its Delaware subsidiary corporation, Alcatel

Resources, for the express purpose of bringing patent litigation against Foundry in

Delaware. This assignment and even the subsequent filing of the Delaware litigation by

Alcatel (France)'s agent constitutes a "business transaction" under Section 3104(c)(1).

*See Boone v. Oy Partek AB*, 724 A.2d 1150, 1158 (Del. Super. Ct. 1997) ("when

analyzing Section 3104(c)(1) it is not important that the [defendant] itself act in

Delaware."); *Friedman et al. v. Alcatel, et al.,* 752 A.2d 544, 549 (Del. Ch. 1999) ("The

formation and operation of a Delaware subsidiary may constitute the transaction of

business in Delaware for the purposes of the long-arm statute.").

Section 3104(c)(3) is also satisfied in this case. Foundry alleges that Alcatel

(France) and CFA, through their U.S. agents, committed common law fraud under

Delaware law and a violation of the federal antitrust laws. As Foundry's claim arises out

of, *inter alia*, tortious acts or omissions in Delaware, personal jurisdiction is therefore

proper under Section 3104(c)(3).

30

Moreover, the Delaware litigation, while filed by Alcatel Resources, was initiated by Alcatel (France), when it assigned the patents at issue, and the action involves employees of Alcatel (France) and CFA. Those actions alone constitute continuing and systematic activity in Delaware subjecting Defendants to personal jurisdiction in Delaware under Section (c)(4). *See LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 769 (Del. 1986) (establishing warrant program, resulting in two warranties being delivered to Delaware, constitutes persistent course of conduct); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994) (indirect shipment into forum sufficient).

Consequently, as discussed *supra*, because the exercise of personal jurisdiction would not offend Due Process, personal jurisdiction is proper in this forum under Delaware's long-arm statute.

### F.    Jurisdictional Discovery Is Warranted Should This Court Find That It Lacks The Facts To Deny Defendants' Motion.

Foundry has set forth facts sufficient for this Court to deny Defendants' motion. However, should this Court conclude that it lacks sufficient facts to deny the motion at this time, Foundry respectfully requests that it be permitted to engage in limited jurisdictional discovery. "Numerous cases have sustained the right of plaintiffs to conduct discovery before the district court dismisses for lack of personal jurisdiction." *See, e.g., Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283 (3d Cir. 1994) (citation omitted); *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995) ("[R]esolution of this motion begins with the presumption in favor of allowing discovery to establish personal jurisdiction.").

Jurisdictional discovery is appropriate in situations where "the plaintiff may be unable to ascertain the extent of the defendant's contacts with the forum state, particularly when the defendant is a corporation, unless some discovery is permitted." *Hansen*, 163 F.R.D. at 473-74; *see also Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323-1324 (Fed. Cir. 2005) (*"CEA"*).  In *CEA*, the Federal Circuit held that the lower court had abused its discretion in denying plaintiff's request for jurisdictional discovery.  Any jurisdictional discovery undertaken by Foundry would be narrowly tailored to explore such things as Defendants' connection to the IEEE and the IEEE's 802.1X and 802.1X REV standards and participation in Alcatel's marketing and sales systems in the United States.

As the Defendants have availed themselves of the laws of this country and the courts of Delaware, in particular, through participation in the IEEE and the assignment of patents for the purpose of bringing litigation in Delaware, this Court should find that the interests of France will not be unduly hampered by proceeding with jurisdictional discovery according to the Federal Rules.  *See Societe Nationale Industrielle Aerospatiale v. United States*, 482 U.S. 522, 544 n.28 (1987).  Discovery under the Federal Rules will prove more efficient in enabling Foundry and this Court to quickly obtain the necessary testimony, documents, and written answers regarding the Defendants' contacts with the United States and Delaware.

32

## V.  CONCLUSION

For all the foregoing reasons, Foundry respectfully requests that this Court deny

Alcatel (France)'s and CFA's motion to dismiss for lack of personal jurisdiction as

personal jurisdiction is entirely proper in this federal forum.


Of Counsel:

POTTER ANDERSON & CORROON LLP

William L. Anthony
Matthew H. Poppe
Michael F. Heafey
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, California  94025
(650) 614-7400

By: /s/ Philip A. Rovner
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, Delaware  19899-0951
    (302) 984-6000
    provner@potteranderson.com

Garret G. Rasmussen
Antony P. Kim
Orrick, Herrington & Sutcliffe LLP
Washington Harbour
3050 K Street, N.W.
Washington, DC 20007-5135
(202) 339-8400

*Attorneys for Plaintiff Foundry Networks, Inc.*

Dated:  November 22, 2006
Public Version: November 30, 2006
764702

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on November 30, 2006, the within

document was filed with the Clerk of the Court using CM/ECF which will send

notification of such filing(s) to the following; that the document was served on the

following counsel as indicated; and that the document is available for viewing and

downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

> Josy W. Ingersoll, Esq.
> John W. Shaw, Esq.
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19899-0391
> jingersoll@ycst.com
> jshaw@ycst.com

I hereby certify that on November 30, 2006 I have sent by E-mail and

First-Class Mail the foregoing document to the following non-registered participants:

Robert W. Kantner, Esq.
Mary L. Scott, Esq.
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, TX 75201-2980
Robert.kantner@bakerbotts.com
Mary.scott@bakerbotts.com

G. Irvin Terrell, Esq.
Rufus W. Oliver, III, Esq.
Scott Partridge, Esq.
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
Irv.terrell@bakerbotts.com
Rufus.oliver@bakerbotts.com
Scott.partridge@bakerbotts.com

> /s/ Philip A. Rovner
> Philip A. Rovner (#3215)
> Potter Anderson & Corroon LLP
> Hercules Plaza
> P.O. Box 951
> Wilmington, Delaware 19899
> (302) 984-6000
> E-mail: provner@potteranderson.com